**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| FTI CONSULTING, INC.,<br><br>                     *Plaintiff*,<br><br>        v.<br><br>JONATHAN M. ORSZAG,<br><br>                     *Defendant*. | Civil Action No.: 8:23-cv-03200-PJM |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

**P**AGE

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................. 1

BACKGROUND ................................................................. 3

    A.    Mr. Orszag's Historical Employment with Compass Lexecon ................. 3

    B.    The 2023 Employment Agreement Negotiations ....................................... 4

    C.    FTI Agrees to New Employment Terms – Allowing Competition............. 5

    D.    Mr. Orszag Calls for Changes in the FTI/Compass Lexecon
          Relationship ....................................................................... 7

    E.    Mr. Orszag's Termination and FTI's Lawsuit ........................................... 8

LEGAL STANDARD ................................................................. 9

ARGUMENT ................................................................. 9

    I.    FTI'S NON-COMPETE CLAIM (COUNT 1) FAILS
        AS A MATTER OF LAW ................................................................. 9

    A.    FTI Fails To Allege That Mr. Orszag Was Terminated for Cause .......... 10

    B.    FTI Has Alleged No Facts That Could Constitute Cause ........................ 10

    C.    California Law Applies and Prohibits Enforcement of the
          Non-Compete ....................................................................... 11

    D.    The Non-Compete Clause Is Unenforceable Under Maryland Law......... 15

    II.    FTI'S NON-SOLICITATION CLAIM (COUNT II) IS DEFECTIVE
        AS A MATTER OF LAW ................................................................. 18

    A.    California Law Prohibits Prospective Enforcement of the
          Non-Solicitation Clauses Here ................................................... 19

    B.    Maryland Law Also Prohibits Prospective Enforcement of the
          Non-Solicitation Clauses Here ................................................... 19

III.   FTI'S ANTICIPATORY BREACH CLAIMS (COUNTS IV AND V) FAIL TO STATE A CLAIM ............................................................ 21

    A.   The Complaint Fails To Allege Any Unconditional Repudiation of the Non-Compete Clause (Count IV) ........................................ 22

    B.   The Complaint Fails To Allege Any Unconditional Repudiation of Non-Solicitation Restrictions (Count V) .................................. 23

IV.   THE BREACH OF NON-SOLICITATION CLAUSE (COUNT III) FAILS TO STATE A CLAIM .................................................... 24

    A.   FTI Fails To Plausibly Allege Facts Establishing That Mr. Orszag Solicited Compass Lexecon Employees for a Possible New Venture ...... 25

    B.   FTI Fails To Allege Damages Resulting from an Alleged Breach of the Non-Solicitation Provision ................................................ 26

V.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY OF LOYALTY (COUNT VI) ................................ 27

    A.   Negotiations for Better Terms, and Preparations for Competition if Terms Are Not Agreed, Cannot Violate a Duty of Loyalty ..................... 27

    B.   Count VI Fails To State a Claim Because FTI Has Suffered No Damages ............................................................................ 29

CONCLUSION ..................................................................................... 30

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
   917 F.3d 206 (4th Cir. 2019) ..............................................................9

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
   153 F. Supp. 3d 1136 (N.D. Cal. 2015) ..............................................26

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ............................................................26

*Albert S. Smyth Co. v. Motes*,
   2018 WL 3635024 (D. Md. July 31, 2018)..............................25, 28, 29, 30

*Allegis Grp., Inc. v. Bero*,
   2023 WL 5989438 (D. Md. Sept. 1, 2023), *appeal pending*, No. 23-2023
   (4th Cir.)..........................................................................................20

*Allied Fire Prot., Inc. v. Thai*,
   2017 WL 4354802 (D. Md. Oct. 2, 2017) ..........................................16, 18, 19

*Ameritox, Ltd. v. Savelich*,
   92 F. Supp. 3d 389 (D. Md. 2015) .......................................................21

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
   239 Cal. Rptr. 3d 577 (Cal. Ct. App. 2018).........................................19

*Application Grp., Inc. v. Hunter Grp., Inc.*,
   72 Cal. Rptr. 2d 73 (Cal. Ct. App. 1998) ............................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................9

*Balding v. Sunbelt Steel Texas, Inc.*,
   718 F. App'x 742 (10th Cir. 2018) ......................................................29

*Barnes Grp., Inc. v. C & C Prods., Inc.*,
   716 F.2d 1023 (4th Cir. 1983)........................................................12, 14

*Baron Fin. Corp. v. Natanzon,*
    471 F. Supp. 2d 535 (D. Md. 2006) ........................................................30

*Becker v. Bailey,*
    299 A.2d 835 (Md. 1973) ........................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).....................................................................9, 24, 25

*Bindagraphics, Inc. v. Fox Grp., Inc.,*
    377 F. Supp. 3d 565 (D. Md. 2019)...................................................17, 20

*City of Fairfax v. Washington Metro. Area Transit Auth.,*
    582 F.2d 1321 (4th Cir. 1978) ................................................................23

*Cloudera, Inc. v. Databricks, Inc.,*
    2021 WL 3856697 (N.D. Cal. Aug. 30, 2021) ........................................26

*Conversion Logic, Inc. v. Measured, Inc.,*
    2019 WL 6828283 (C.D. Cal. Dec. 13, 2019) ........................................19

*Crawford & Co. v. M. Hayes & Assocs., L.L.C.,*
    13 F. App'x 174 (4th Cir. 2001) .............................................................29

*Dern v. Liberty Mut. Ins. Co.,*
    2015 WL 8665329 (D. Md. Dec. 11, 2015).............................................24

*Deutsche Post Glob. Mail, Ltd. v. Conrad,*
    116 F. App'x 435 (4th Cir. 2004) ...........................................................15

*Edwards v. Arthur Andersen LLP,*
    189 P.3d 285 (Cal. 2008) .................................................................13, 14

*Fayetteville Invs. v. Com. Builders, Inc.,*
    936 F.2d 1462 (4th Cir. 1991) ..................................................................4

*Fyfe Co. v. Structural Grp., Inc.,*
    2016 WL 4662333 (D. Md. Sept. 7, 2016) .....................................11, 13, 14

*Hale Trucks of Md., LLC v. Volvo Trucks N. Am., Inc.,*
    224 F. Supp. 2d 1010 (D. Md. 2002).......................................................30

*Hensel Phelps Constr. Co. v. TIG Ins. Co.,*
    2011 WL 13130486 (C.D. Cal. Oct. 5, 2011)..........................................26

*Huong Que, Inc. v. Luu,*
  58 Cal. Rptr. 3d 527 (Cal. Ct. App. 2007) ....................................................27

*Ikon Off. Sols., Inc. v. Rezente,*
  2010 WL 5129293 (E.D. Cal. Dec. 9, 2010) ................................................29

*Inst. of Mgmt. & Admin., Inc. v. Broadband Intel., Inc.,*
  2006 WL 8460966 (D. Md. Jan. 25, 2006).............................................. 25-26

*J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship,*
  2014 WL 3865993 (D. Md. Aug. 5, 2014) .............................................. 22-23

*Mamou v. Trendwest Resorts, Inc.,*
  81 Cal. Rptr. 3d 406 (Cal. Ct. App. 2008) ....................................................28

*Manitowoc Co. v. Lanning,*
  906 N.W.2d 130 (Wis. 2018)........................................................................21

*Maryland Metals, Inc. v. Metzner,*
  382 A.2d 564 (Md. 1978) ................................................................... 28, 29-30

*MCS Servs., Inc. v. Jones,*
  2010 WL 3895380 (D. Md. Oct. 1, 2010) ....................................................17

*Medispec, Ltd. v. Chouinard,*
  133 F. Supp. 3d 771 (D. Md. 2015).......................................................15, 17

*Metal Lubricants Co. v. Engineered Lubricants Co.,*
  284 F. Supp. 483 (E.D. Mo. 1968), *aff'd*, 411 F.2d 426 (8th Cir. 1969) .........................29

*Midfield Concession Enters., Inc. v. Areas USA, Inc.,*
  130 F. Supp. 3d 1122 (E.D. Mich. 2015).....................................................23

*Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.,*
  791 F. Supp. 2d 33 (D.D.C. 2011).........................................................28, 30

*Nix v. NASA Fed. Credit Union,*
  200 F. Supp. 3d 578 (D. Md. 2016)..............................................................27

*Pactiv LLC v. Perez,*
  2020 WL 7123070 (N.D. Ill. Dec. 4, 2020) .................................................14

*Paramount Transp. Logistics Servs., LLC v. Traffic Tech, Inc.*,
    2022 WL 861584 (M.D. Fla. Mar. 23, 2022) ................................................26

*Paul v. ImpactOffice LLC*,
    2017 WL 2462492 (D. Md. June 6, 2017) ...............................................17, 21

*Philo v. Giftango LLC*,
    2013 WL 12097545 (S.D. Cal. Feb. 7, 2013) .............................................14

*Race Winning Brands, Inc. v. Gearhart*,
    2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ........................................19, 26

*Satvati v. Allstate Northbrook Indem. Co.*,
    634 F. Supp. 3d 792 (C.D. Cal. 2022) ......................................................24

*Seneca One Fin., Inc. v. Bloshuk*,
    214 F. Supp. 3d 457 (D. Md. 2016) ..........................................16, 17, 18, 21

*Shahani v. United Com. Bank.*,
    457 B.R. 775 (N.D. Cal. 2011) .................................................................22

*Sher v. SAF Fin., Inc.*,
    2010 WL 4034272 (D. Md. Oct. 14, 2010) ...............................................27

*Sirius Fed., LLC v. Yoash*,
    2023 WL 4456786 (D. Md. July 11, 2023) ...........................................16, 20

*Stryker Sales Corp. v. Zimmer Biomet, Inc.*,
    231 F. Supp. 3d 606 (E.D. Cal. 2017) ..............................................13-14, 18

*VibrantCare Rehab., Inc. v. Deol*,
    2021 WL 1614692 (E.D. Cal. Apr. 26, 2021) .......................................29-30

*W. Air Charter, Inc. v. Schembari*,
    2017 WL 10638759 (C.D. Cal. Oct. 6, 2017) ...........................................28

**STATUTES**

Ala. Code § 8-1-1 (repealed 2016) ..............................................................12

Cal. Bus. & Prof. Code § 16600 *et seq.*:

    § 16600.........................................................................................12, 13

    § 16600 (eff. Jan. 1, 2024)...............................................................14

§ 16600(b)(1) (eff. Jan. 1, 2024) ................................................................13, 15

§ 16600.5 (eff. Jan. 1, 2024) ...................................................................13, 14

§ 16601 ...............................................................................................15

§ 16602 ...............................................................................................15

§ 16602.5 ............................................................................................15

2023 Cal. Legis. Serv. Ch. 157 ..................................................................14

2023 Cal. Legis. Serv. Ch. 828 ..................................................................14

**OTHER MATERIALS**

Aditi Bagchi, "Fiduciary Principles in Employment Law," *in The Oxford
    Handbook of Fiduciary Law* 187 (Evan J. Criddle, Paul B. Miller &
    Robert H. Sitkoff eds., Oxford Univ. Press 2018) ...........................................28

Restatement (Second) of Conflict of Laws (1971) ...........................................11, 12, 13

## INTRODUCTION

Plaintiff FTI Consulting, Inc. ("FTI") has sued Jonathan Orszag, a former Senior Managing Director of FTI subsidiary Compass Lexecon LLC ("Compass Lexecon").[1]  Mr. Orszag's employment was terminated on November 20, 2023, the same day FTI and Compass Lexecon filed a Complaint against him.  Remarkably, ten days later, Mr. Orszag's employer Compass Lexecon required that it be dropped from the case, and it is no longer a plaintiff.

It is apparent from this curious action as well as the allegations made by FTI that the dispute here is between FTI and Mr. Orszag, and that his actual former employer had no issue with him.  The issue, as FTI makes clear, is that Mr. Orszag requested a restructuring of the FTI/Compass Lexecon relationship to benefit all 800 employees of Compass Lexecon and that he was transparent in his intention to leave and form his own venture – as he was expressly permitted to do under the Agreement and controlling law – if the relationship was not restructured.

In violation of the Agreement, without notice to defendant (or anyone within Compass Lexecon's leadership) and without an opportunity to cure any alleged issues, FTI precipitously terminated Mr. Orszag's employment and filed this action – to place a cloud over him and any new venture that he might form.  Put simply, FTI blindsided Mr. Orszag in an undisguised effort to prevent beneficial and lawful competition.

The Amended Complaint is deficient as a matter of law as well as a transparent instance of bad faith.  Each of its counts fails to state a valid claim.

---

[1] FTI seeks an advisory ruling that restrictive covenants in Mr. Orszag's January 2023 employment agreement ("Agreement") are enforceable and that he has anticipatorily repudiated them, and for alleged breach of non-solicitation and duty-of-loyalty obligations.  The Agreement is incorporated by reference in the Amended Complaint and is attached as Exhibit A to the accompanying declaration.

***The Alleged Non-Compete Obligation Is Inapplicable and Void as a Matter of Law***
***(Count I).***  The Agreement imposes a non-compete obligation *only* after a valid "for Cause"
termination.  Absent Cause, as defined in the Agreement, Mr. Orszag is entirely free to compete
after termination.  But no such "for Cause" termination is alleged in the Amended Complaint,
and no facts are alleged that would provide grounds for a valid for-Cause termination.  Further,
the non-compete is unenforceable as a matter of California law, which applies to this dispute
with a California resident working from California.  And, even if Maryland law applied, the non-
compete is unenforceable because it is not tailored to any FTI-protectable interest and is being
used only to prevent competition.  *See infra* Part I.

***The Alleged Non-Solicitation Obligations Are Void as a Matter of Law (Count II).***  For
the same reasons, the sweeping prohibitions against solicitation of former colleagues and FTI
clients are void as a matter of California law.  Maryland law likewise prohibits enforcement of
these prohibitions, which are not tailored to any legitimate FTI interest.  *See infra* Part II.

***There Has Been No "Anticipatory Repudiation" (Counts IV-V).***  Even if the restrictive
covenants were enforceable (they are not), FTI pleads no facts amounting to repudiation of them.
The non-compete was not even an issue before Mr. Orszag's termination, because it only could
become effective post-termination upon a valid "for Cause" termination.  FTI fired Mr. Orszag
without any notice or chance to cure – none is alleged – and before any repudiation could
possibly occur.  As to the non-solicitation clause, FTI's speculation about Mr. Orszag's "plans"
to solicit are insufficient to make out a plausible claim of repudiation.  *See infra* Part III.

***FTI Has Not Alleged Facts Making a Plausible Claim of Breach (Count III).***  FTI
asserts that defendant "solicited" in violation of the Agreement.  But FTI does not allege, even
conclusorily, that Mr. Orszag solicited any FTI clients.  And its allegations that Mr. Orszag

solicited unnamed employees, at an unidentified time, and in an unidentified manner, are entirely conclusory and insufficient as a matter of law.  *See infra* Part IV.

**FTI Has Not Alleged Facts Making Out a Plausible Claim of Breach of the Duty of Loyalty (Count VI).**  Compass Lexecon obviously had no issue with anything Mr. Orszag did while employed by the firm, and it has been dropped from the case.  His dispute with FTI over terms of the Compass Lexecon/FTI relationship, his alleged statements regarding his intention to leave and start his own firm if that relationship was not rectified, and unidentified preparatory steps to that end fail to state a claim for breach of the duty of loyalty.  The only facts pleaded in the Amended Complaint amount to lawful and protected employee conduct.  Moreover, as with all of its claims, FTI alleges no damages, only that it "may suffer" losses in the future.  The claim lacks an essential element and fails for that reason as well.  *See infra* Part V.

FTI's lawsuit is a patent effort to prevent competition; even meritless allegations such as those made here have the practical effect of sidelining Mr. Orszag and causing harm to him and those who wish to work with him.  A prompt dismissal is necessary to restore Mr. Orszag's rights to compete in the marketplace.

## BACKGROUND[2]

### A.     Mr. Orszag's Historical Employment with Compass Lexecon

FTI is a global consulting firm that advises businesses on a wide range of topics.  Am. Compl. ¶ 15.  Its clients include "law firms, financial institutions, and Fortune 100 companies." *Id.*  FTI acquired two economic consulting firms, Lexecon LLC and Competition Policy Associates, Inc. ("COMPASS"), in 2003 and 2006, respectively, and the two firms combined to

---

[2] The factual allegations described below are taken from FTI's Amended Complaint and materials incorporated by reference therein, and are taken as true solely for purposes of this motion.

3

form Compass Lexecon in 2007. *Id.* ¶¶ 19, 22. Compass Lexecon is a leading economic consulting firm with more than 800 employees worldwide. *Id.* ¶¶ 16-17, 19.

Mr. Orszag, a co-founder of COMPASS, joined Compass Lexecon when it was formed. *Id.* ¶ 19. Thereafter, he was responsible for the firm's day-to-day management. *Id.* ¶ 23. He is a resident of California, *id.* ¶ 10, "with his primary location of employment in Los Angeles County, California," Agreement § 3.

In 2013, Mr. Orszag entered into his fourth employment agreement with FTI (the "2013 Agreement"), which was due to expire on January 1, 2024. Am. Compl. ¶ 25. The 2013 Agreement contained non-competition and non-solicitation provisions. *Id.* ¶ 28.

**B.    The 2023 Employment Agreement Negotiations**

In April 2021, Mr. Orszag and FTI began negotiating terms of his future employment as well as a structure to govern the FTI/Compass Lexecon relationship. Am. Compl. ¶ 29. With the expiration of his 2013 Employment Agreement looming, and during "heated negotiations" in June 2022, Mr. Orszag allegedly prepared and presented "part" of a PowerPoint titled "A Going-Forward Compensation Proposal" (the "June 2022 Presentation") containing a "best and final offer for a new management and payment structure for Compass Lexecon." *Id.* ¶¶ 33-34.[3] The presentation stated that, if no deal could be reached, "FTI should expect key staff to depart with [senior professionals] or to competitors." *Id.* ¶ 36. Mr. Orszag allegedly stated that senior professionals would be free to "open a new firm," which could be quite successful. *Id.* ¶ 38.

---

[3] The Court may review the actual document, which is incorporated by reference in the Amended Complaint, and need not accept FTI's mischaracterizations of the content. *See Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Contrary to what FTI alleges (at ¶ 34), that presentation was sent on behalf of the entire Compass Lexecon senior leadership team by one of Mr. Orszag's colleagues. *See* Ex. B (May 31, 2022 Email from M. Israel, attaching presentation). The Court does not, however, need to resolve any dispute over the substance of the alleged correspondence in Exhibits B-D, as FTI's allegations are themselves insufficient to state a claim. *See infra* pp. 21-30.

**C.      FTI Agrees to New Employment Terms – Allowing Competition**

The parties executed the new Agreement effective January 1, 2023, Am. Compl. ¶ 43,

which allows Mr. Orszag to resign at any time, without any non-compete restriction on his future

activities.  *See* Ex. A.  A non-compete obligation could arise only if he were properly terminated

"for Cause" in accordance with the Agreement:

> *For the sake of clarity, the parties agree that, unless Employee is terminated for Cause per the terms of this Agreement, there will be no non-compete restrictions under Section 9 applicable to him following the termination of his employment.*

Agreement § 17(c) (emphasis added).

There is "Cause", as defined in the Agreement, "if (and only if) one or more of the

following occur":

i.    Employee's indictment for, conviction of or guilty or *nolo contendre* plea to a crime involving moral turpitude or a felony;

ii.   Employee's failure to satisfactorily perform any material employment or other duties, obligations or responsibilities under this Agreement or any other written agreement with any member of the FTI Group;

iii.  Employee engages in intemperate use of alcohol, use of illegal drugs, or use of drugs prescribed for Employee other than in accordance with medical instructions, which adversely affect in any material respect the performance of his duties for the Company;

iv.   Employee's commission or omission of any act involving material dishonesty, embezzlement, misappropriation of assets, or fraud with respect to the Company or any of its affiliates or any of their respective employees or clients;

v.    Employee's violation of any written policy of the Company or any of its affiliates, which has or could reasonably be expected to adversely affect the Company or any of its affiliates in any material respect (whether business-related, financial, reputational or otherwise), or engaging in any willful misconduct, gross negligence, violation of law or other bad act related to his employment or otherwise which has or could reasonably be expected to adversely affect the Company or any of its affiliates in any material respect (whether business-related, financial, reputational or otherwise);

vi.   Employee's failure to (A) use his reasonable best efforts to perform his material duties and responsibilities to the FTI Group consistent with his efforts and activities prior to the execution of this Agreement (other than as a result of Disability), (B) devote substantially all of his business time, attention

5

and energies to the performance of Employee's duties and responsibilities hereunder, consistent with his efforts and activities prior to the execution of this Agreement (other than as a result of Disability), or (C) comply with any of the restrictions contained in Sections 9 through 16.

*Id.* § 7(b).

If FTI alleges that any such Cause exists, it must provide notice to Mr. Orszag "within 90 days after the discovery by Company of the event or conduct giving rise to grounds to terminate Employee for Cause." *Id.* Additionally, FTI must provide a written statement setting forth "the nature of the act, omission or failure" constituting Cause and "if the action is curable, give Employee at least thirty (30) days from the receipt of such notice to correct the situation (and thus avoid termination for Cause)." *Id.* FTI *does not* allege in its Amended Complaint that Mr. Orszag was provided with notice, does not allege that he was given an opportunity to cure, and does not even allege that his termination was a "for Cause" termination at all.

Upon a valid termination for Cause, meeting the Agreement's substantive and procedural requirements, Mr. Orszag would purportedly be restricted during a "Non-Compete Period" lasting one year after termination. *Id.* § 17(c). During that year, "Employee will not, . . . directly or indirectly on Employee's own behalf or on behalf of any other person, firm or entity," "engage [with]," "manage[ ]," work for, or "own" "any Competing Business in the Market Area." *Id.* § 9(a). The "Market Area" covers the entirety of the United States, the UK, continental Europe (including Scandinavia), China, Singapore, Israel, Chile, Argentina, and anywhere that FTI has an office or "provides Consulting Services to clients in the ordinary course of its business." *Id.* § 17(b). And "Competing Business" is defined broadly in Section 17(a) to include:

> economic, financial, regulatory, corporate and litigation consulting services, including those provided to law firms, corporations and governmental bodies in connection with legal or regulatory proceedings, strategic decision making and/or public policy debates or matters (collectively, "Consulting Services"), and (ii) any

6

other business which is competitive with any business of the FTI Group that (A) involves Employee, (B) is conducted during the term of this Agreement, and (C) Employee was actively involved with or had knowledge of during his employment with the Company.

The Agreement also contains a non-solicitation clause, covering two categories:  clients and employees.  The provision related to clients provides that "Employee will not, directly or indirectly," "solicit business regarding any case or matter upon which Employee worked on behalf of Company" or "solicit any person or entity" for whom the Employee or direct or indirect report had contacted or served or solicited business from.  *Id.* § 11(a)(i)-(ii); *see* Am. Compl. ¶ 56.  For employees, Mr. Orszag may not directly or indirectly:

> solicit, induce or otherwise attempt to influence any person whom the FTI Group employs or otherwise engages to perform services (including, but not limited to, any independent consultants, engineers or sales representatives) or any contractor, subcontractor, supplier, or vendor of the FTI Group, to leave the employ of or engagement with, or discontinue providing services to, the FTI Group . . . .

Agreement § 11(a)(iii); *see* Am. Compl. ¶ 56.  The Agreement clarifies that these restrictions are limited to "affirmative solicitation" and do not prohibit communications with clients or employees who reach out to him in the first instance, and do not prohibit the announcement to clients and employees of his plans following termination.  Agreement § 11(b); *see* Am. Compl. ¶ 58.

**D.    Mr. Orszag Calls for Changes in the FTI/Compass Lexecon Relationship**

In July 2023, Mr. Orszag allegedly told FTI leadership that he planned to call a meeting of Compass Lexecon senior staff to describe "negative synergies" – harm to Compass Lexecon from FTI's control over its operations.  Am. Compl. ¶ 67.  He allegedly told FTI leaders that, if FTI were to terminate him for this planned speech, 800 employees would leave the next day.  *Id.* ¶ 71.  When FTI leadership objected to certain portions of the speech, which had been provided to FTI in advance, Mr. Orszag agreed to remove them.  *Id.* ¶ 73.  Plaintiff does not allege that anything said or done by Mr. Orszag in connection with this July speech amounted to "Cause"

7

for termination, that it ever provided him with notice to that effect, or that it gave him an opportunity to cure any unresolved issues relating to the speech (which occurred more than 90 days before FTI's action in any event).

In October 2023, Mr. Orszag allegedly proposed a restructuring of the relationship between FTI and Compass Lexecon.  *Id.* ¶ 75.  He allegedly gave FTI a choice via email:  change control of Compass Lexecon and sell the Compass Lexecon business for a "fraction of its true value" or he would "depart and start a new firm."  *Id.* ¶¶ 76-77.[4]  Mr. Orszag allegedly reiterated this position in November and gave a deadline of November 27, 2023 for FTI to respond, without objection from FTI.  *Id.* ¶ 78.[5]  Again, FTI does not allege that anything said or done by Mr. Orszag in connection with these communications amounted to "Cause" for termination, that it ever provided him with notice to that effect, or that it gave him an opportunity to cure any supposed "Cause" arising from these communications.

### E.     Mr. Orszag's Termination and FTI's Lawsuit

Without advance notice, FTI abruptly terminated Mr. Orszag's employment on November 20, 2023.  Am. Compl. ¶ 79.  Simultaneously, FTI and Compass Lexecon filed suit

---

[4] FTI again mischaracterizes the substance of written correspondence, which is incorporated by reference in the Amended Complaint and attached as Exhibit C.  What the document says is this: Mr. Orszag informed the FTI representative that he wanted to resolve "[t]he lack of trust between myself (and other Compass Lexecon personnel) and FTI arising out of the recent . . . conflict issues and the billing/service issues; the lack of trust between me and FTI resulting from the fact that when I stated, this summer, it was important that I provide our senior folks an accurate account of the issues in the relationship between Compass Lexecon and FTI, a board member threatened to fire me if I proceeded to do so."  The email also notes that, "[g]iven the relative contributions we each make, the present arrangement does not properly reflect the value provided by the various parties. . . . I believe we can find common ground on [the economics issues] that make us all better off (relative to each of our alternatives)."  But as noted above at note 3, the Court need not rely on the incorporated documents in ruling on the instant motion.

[5] A copy of that correspondence, which is incorporated by reference into the Amended Complaint, is attached as Exhibit D (Nov. 6, 2023 Email from J. Orszag to S. Gunby).

against Mr. Orszag in the Circuit Court for Montgomery County, Maryland.  On November 23, Mr. Orszag removed the case to federal court.  *See* ECF No. 1.  On December 1, 2023, FTI amended its complaint, removing Compass Lexecon as a plaintiff.  *See* Am. Compl., ECF No. 7.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted), and that rises "above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard."  *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019).

## ARGUMENT

## I.    FTI'S NON-COMPETE CLAIM (COUNT 1) FAILS AS A MATTER OF LAW

FTI claims in Count I that Mr. Orszag should be barred from competing with FTI from his November 20, 2023 termination until November 20, 2024.  Count I fails to state a claim for four different reasons:  (1) FTI does not allege that Mr. Orszag actually has any non-compete obligation, because it has not pleaded that he was properly terminated "for Cause" in accordance with the Agreement; (2) FTI asserts *no facts* that would rise to a plausible claim that Mr. Orszag had engaged in conduct that would meet the standard for "Cause" set forth in the Agreement; (3) any non-compete obligation is unenforceable as a matter of California law, which governs this dispute between FTI and a California resident employed in California; and (4) even if Maryland law were to apply, the non-compete is likewise unenforceable because it is a naked restriction on competition, and neither narrowly tailored nor necessary to protect any legitimate business interests of FTI.  Protection from competition here by a former employee is not such an interest.

9

A.     **FTI Fails To Allege That Mr. Orszag Was Terminated for Cause**

The Agreement states that, "unless Employee is terminated for Cause per the terms of this Agreement, there will be no non-compete restrictions under Section 9 applicable to him following the termination of his employment."  Agreement § 17(c).  Because the Agreement is incorporated by reference in the Amended Complaint (at ¶¶ 47-61), the Court may consider its terms and need not credit any gloss on those terms provided by plaintiff.  *See supra* note 4.

The Amended Complaint contains *no* allegation that Mr. Orszag was validly terminated for Cause.  Nor could it.  Under the Agreement, an employee can be terminated for Cause only after Compass Lexecon has "specif[ied] in writing to Employee the nature of the act, omission or failure that it deems to constitute Cause and if the action is curable, give[n] Employee at least thirty (30) days from the receipt of such notice to correct the situation (and thus avoid termination for Cause)."  Agreement § 7(b).  FTI does not and cannot allege that any such notice was provided to Mr. Orszag.  Accordingly, there could not have been a for-Cause termination.  FTI alleges only that Mr. Orszag's employment was terminated on November 20, 2023.  Am. Compl. ¶ 79.  That is insufficient to trigger any non-compete obligation.

B.     **FTI Has Alleged No Facts That Could Constitute Cause**

FTI also alleges no facts that could support a termination for Cause.  *See Iqbal*, 556 U.S. at 678 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Only upon a valid termination for Cause, based on conduct proscribed by Section 7(b) of the Agreement, could there be a non-compete obligation.

There are no facts alleged in the Amended Complaint that are cognizable under any of these provisions, and the Amended Complaint does not allege otherwise.  In addition, any termination for Cause is limited to conduct occurring in the 90 days immediately prior to the termination.  *See* Agreement § 7(b).  According to the Amended Complaint, the only conduct

that occurred in the 90 days preceding November 20, 2023 was Mr. Orszag's notice to FTI that

he would exercise his contractual right to leave and "start a new firm" if FTI did not agree to a

satisfactory restructuring of the relationship between FTI and Compass Lexecon.  *See* Am.

Compl. ¶¶ 74-79 & Exs. C, D.  That conduct, taken as true, does not come close to any of the

enumerated "Cause" provisions.  In fact, the Agreement expressly allowed Mr. Orszag to resign

his employment and start a new firm with no post-employment non-compete restriction at all.

Transparently stating that he might do so cannot be Cause.

In short, FTI has not alleged termination for Cause, has not alleged that it followed the

Agreement's procedures for Cause termination, and has not alleged any facts that could have

given rise to a termination for Cause.  It cannot therefore seek to impose a non-compete

provision applicable only in the limited circumstance of a valid for-Cause termination.

### C.     California Law Applies and Prohibits Enforcement of the Non-Compete

Maryland courts follow the Restatement (Second) of Conflict of Laws § 187(2)(b) (1971),

which specifies that the choice of law in a contract should *not* be followed if "application of the

law of the chosen state would be contrary to a fundamental policy of a state which has a materially

greater interest than the chosen state in the determination of the particular issue and which . . .

would be the state of the applicable law in the absence of an effective choice of law by the

parties."  *See Fyfe Co. v. Structural Grp., Inc.*, 2016 WL 4662333, at *3 (D. Md. Sept. 7, 2016).

Mr. Orszag is a California resident, Am. Compl. ¶ 10, with his "primary location of

employment in Los Angeles County, California," Agreement § 3.  During his employment, FTI

was headquartered in Washington, D.C.[6] and Compass Lexecon had an office there.  Am. Compl.

---

[6] *See* FTI Consulting, Home / FTI Consulting Locations / District of Columbia (stating that FTI's headquarters are in Washington D.C.), https://www.fticonsulting.com/locations/district-of-columbia (last visited Dec. 19, 2023); Exs. E, F (FTI securities filings stating that the company's "principal executive offices" are located in Washington, D.C).

¶ 9.  FTI does not allege that any events relating to the dispute occurred in Maryland.  In these circumstances, California's pronounced interest in prohibiting restrictions on post-employment competition for its residents overrides any choice-of-law clause agreed to by the parties.

The Fourth Circuit addressed this issue in *Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1032 (4th Cir. 1983).  There, Alabama salesmen had signed employment agreements with their Ohio-headquartered employer that contained both restrictive covenants and an Ohio choice-of-law clause.  But such non-competes were unenforceable in Alabama.  *See id.* at 1026-32.  Applying Restatement (Second) § 187, the Fourth Circuit explained that, "where the law chosen by the parties would make enforceable a contract flatly unenforceable in the state whose law would otherwise apply, to honor the choice-of-law provision would trench upon that state's 'fundamental policy.'"  *Id.* at 1031 (footnote omitted).  Alabama had a much greater interest "to protect employee-residents from contractually abrogating their ability to earn a livelihood, and to control the degree of free competition in the local economy," than Ohio had "in applying its own law to protect the interstate contracts of its domiciliary," *id.* at 1030.  The Fourth Circuit further held that "[t]o honor the contractual choice of law would make enforceable a contract flatly unenforceable in Alabama, surely impinging upon 'fundamental policy' of Alabama.  It was error, therefore, for the district court to apply Ohio law to determine the enforceability of the Alabama salesmen's covenants not to compete."  *Id.* at 1032.  Alabama's statutory prohibition on non-competes at the time of that decision was virtually identical to California's current statute.[7] Circuit precedent thus compels the application of California law here.

---

[7] *See* Ala. Code § 8-1-1 (repealed 2016) ("Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void."); Cal. Bus. & Prof. Code § 16600 ("[E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.")

California law categorically bars non-compete (and similar) restrictions in employment agreements.  *See* Cal. Bus. & Prof. Code § 16600; *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291 (Cal. 2008) (explaining that § 16600 reflects the strong and "settled legislative policy in favor of open competition and employee mobility").  The California legislature has recently reiterated that this bar has long applied "to void the application of ***any*** noncompete agreement in an employment context . . . no matter how narrowly tailored," subject to sale of business and partnership/LLC exceptions not applicable here.  Cal. Bus. & Prof. Code § 16600(b)(1) (eff. Jan. 1, 2024) (emphasis added); *see also id.* § 16600.5 (eff. Jan. 1, 2024) (precluding employer from seeking to enforce such a contract, and making it a civil violation to enter into such an agreement).  California courts have expressly held that this longstanding policy against non-competes precludes deference to *Maryland* choice-of-law provisions to which employees have agreed.  *See Application Grp., Inc. v. Hunter Grp., Inc.*, 72 Cal. Rptr. 2d 73, 85-86 (Cal. Ct. App. 1998).

In *Fyfe*, this Court honored California's fundamental policy against non-competes; it enjoined enforcement of a post-employment non-compete despite a contractual Delaware choice-of-law provision.  2016 WL 4662333.  After conducting Maryland's customary choice-of-law analysis under Restatement (Second) § 187 and weighing the contract's Delaware choice-of-law provision against California's public policy, the Court held that California's strong public policy controlled.  It recognized that California statutory law "undisputedly establishes a specific interest in protecting . . . [a] California resident[ ] employed within that state, from restrictions on [his] ability to seek employment of [his] choice."  *Id.* at *5.

Other courts have reached the same conclusion.  *See Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 231 F. Supp. 3d 606, 621 (E.D. Cal. 2017) ("§ 16600 represents a fundamental public policy interest in California . . . that . . . should override contractual choice-of-law

13

provisions at least with respect to such restrictive covenants.") (collecting cases); *see also Philo v. Giftango LLC*, 2013 WL 12097545, at *3 (S.D. Cal. Feb. 7, 2013); *Pactiv LLC v. Perez*, 2020 WL 7123070, at *6 (N.D. Ill. Dec. 4, 2020) (applying California law despite Illinois choice-of-law provision and granting motion to dismiss claim for breach of non-compete clause).

If anything, the California public policy interest in protecting its residents from post-employment restrictions has become stronger. The California legislature just this year adopted a new statute emphasizing that restrictive covenants are categorically unenforceable.

> [E]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void. . . . This section shall be read broadly . . . to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter.

2023 Cal. Legis. Serv. Ch. 828 (A.B. 1076) (amending Cal. Bus. & Prof. Code § 16600 (eff. Jan. 1, 2024)).[8]

Applying California law, as *Barnes Group* requires, the non-compete in Mr. Orszag's Agreement is invalid. *See Edwards*, 189 P.3d at 293 (California's prohibition on non-competes is "unambiguous" and "represents a strong public policy . . . which should not be diluted by judicial fiat" with no "narrow-restraint exception").

FTI cannot circumvent California's strong public policy simply because it alleges that Mr. Orszag was "represented by sophisticated legal counsel during the negotiation and drafting of" the Agreement. Am. Compl. ¶ 45. This allegation does not negate the required conflict-of-law analysis mandated by *Barnes Group* and *Fyfe* and the resulting application of California law. The California legislature has confirmed that its longstanding (codified) policy bars *all* non-

---

[8] Restrictive covenants are so offensive to California public policy that its legislature created a civil cause of action to void them and authorized employees to recover their costs and attorney's fees in challenging such unenforceable restrictions. *See* 2023 Cal. Legis. Serv. Ch. 157 (S.B. 699) (adding Cal. Bus. & Prof. Code § 16600.5 (eff. Jan. 1, 2024)).

competes in the employee context, no matter how narrowly tailored, unless they satisfy one of the narrow exceptions in the pertinent Business & Professions Code chapter for the sale of a business (§ 16601), the dissolution of a partnership (§ 16602), or the dissolution of an LLC (§ 16602.5), none of which FTI does or could allege to be applicable here.  *See* Cal. Bus. & Prof. Code § 16600(b)(1) (eff. Jan. 1, 2024).  There is no exception in the pertinent "chapter" for allegedly represented employees.

Put simply, the California legislature has made crystal clear that, under its longstanding policy, there is no exception that would allow enforcement of a non-compete restriction here.

### D.    The Non-Compete Clause Is Unenforceable Under Maryland Law

Even if the Court were to apply Maryland law to this dispute between a California employee and a company based in Washington, D.C., the non-compete is facially overbroad and unenforceable.  The Agreement contains a blunderbuss, one-year prohibition without limitation of any kind.  It fails multiple tests under Maryland law.

The enforceability of a restrictive covenant under Maryland law depends "on the scope of each particular covenant itself."  *Becker v. Bailey*, 299 A.2d 835, 838 (Md. 1973).  A restrictive covenant cannot be enforced unless:  (1) the employer possesses a legally protected interest; (2) the covenant is no wider in scope and duration than is reasonably necessary to protect the employer's interest; (3) the covenant does not impose an undue hardship on the employee; and (4) the covenant does not violate public policy.  *See Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 773-74 (D. Md. 2015).  A covenant that does not meet all of these requirements, and does not have reasonable restrictions that can readily be severed from the offending restrictions, must be struck down entirely.  *See Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 441 (4th Cir. 2004) (per curiam) (applying Maryland law).

15

Here, the non-compete clause is vastly overbroad and clearly intended to prohibit effective competition rather than to protect a legitimate interest.  Among other flaws, Section 9:

- *Is not tailored to prevent loss of legally protected goodwill.*  Under the Agreement, Mr. Orszag was free to resign for any reason and compete at any time – he merely needed to provide 90 days' prior written notice.  Likewise, if Compass Lexecon terminated him without Cause, he was free to compete the next day.  Those provisions necessarily demonstrate that no post-termination non-compete is necessary to protect Compass Lexecon's goodwill.  Instead, the non-compete clause is only punitive:  a sanction for certain actions during employment.  That runs afoul of Maryland law.  *See Allied Fire Prot., Inc. v. Thai*, 2017 WL 4354802, at *5 (D. Md. Oct. 2, 2017) ("[A] restrictive covenant will be construed as overly broad if it goes beyond what is needed to safeguard the employer's legally protected interest in . . . goodwill.").[9]

- *Operates as a ban on all employment by Mr. Orszag, in any capacity, with virtually any consulting firm*.  The covenant prohibits Mr. Orszag from working in *any capacity* or even holding more than a 5% ownership in any company in the Market Area that offers "economic, financial, regulatory, corporate and litigation consulting services."  Agreement § 17(a) (defining "Competing Business").[10]  In particular, if a firm exclusively offers any or all of those broad range of services, the Agreement purports to exclude Mr. Orszag from working for the firms *at all*, even, for example, if he would only be providing administrative services.  *See id.* §§ 9(a),

---

[9] *See also Seneca One Fin., Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 465 (D. Md. 2016) (the only "interest protectable by a non-compete provision is the goodwill that the *employee* creates with the customer while working for the employer") (emphasis in original); *Sirius Fed., LLC v. Yoash*, 2023 WL 4456786, at *5 (D. Md. July 11, 2023) ("The activities prohibited by a restrictive covenant must be specifically targeted at activities that would jeopardize the goodwill the defendant created on behalf of his former company.").

[10] The only exception is if the Competing Business had a separate line of business and Mr. Orszag worked solely therein without providing any "Consulting Services," a term of unlimited scope. Agreement §§ 9(a), 17(a).

17(a).  Maryland courts routinely strike down non-compete restrictions that sweep so broadly.

*See*, *e.g.*, *Bindagraphics, Inc. v. Fox Grp., Inc.*, 377 F. Supp. 3d 565, 572 (D. Md. 2019) (holding

non-compete clause unenforceable on motion to dismiss because it was "not confined to sales

positions or work akin to [employee's] duties on behalf of [employer]," "render[ing] the

restriction wider than reasonably necessary to forestall the loss of customer goodwill"); *Paul v.

ImpactOffice LLC*, 2017 WL 2462492, at *4 (D. Md. June 6, 2017) (non-compete was

unenforceable because "[t]he scope of the proscribed activity [wa]s not limited to employment in

positions similar to that which [employee] held at [employer]").[11]

- *Prevents Mr. Orszag from competing for companies he did not personally serve.*  If

Mr. Orszag did not work for a particular client while at Compass Lexecon, he is not advantaged

by his prior employment.  Hence the clause does not protect goodwill.  The non-compete broadly

prohibits Mr. Orszag from offering Consulting Services to anyone, *not* just to clients he

personally served (or even clients Compass Lexecon has ever served).  *See* Agreement § 9(a).

Maryland courts regularly strike down non-compete provisions with such sweeping restrictions.

*See*, *e.g.*, *Seneca One*, 214 F. Supp. 3d at 462 (non-compete provision was too broad when it was

not targeted at activities that would "enable [employee] to use any contact she had with actual

customers to [employer's] detriment"); *ImpactOffice*, 2017 WL 2462492, at *5 (non-compete

was unenforceable where it would restrict activities that would not leverage employee's

"personal relationships with customers that he had developed while at [employer]"); *see also

infra* pp. 19-20 (noting that non-solicitation clauses are routinely voided for similar reasons).

---

[11] *See also Medispec*, 133 F. Supp. 3d at 775 (non-compete clause was unenforceable at motion-to-dismiss stage because it prevented "Defendant from taking any job, no matter how unrelated to his prior sales work, with a company that indirectly competes with [employer] or its affiliates"); *MCS Servs., Inc. v. Jones*, 2010 WL 3895380, at *4 (D. Md. Oct. 1, 2010) (similar).

- *Prevents Mr. Orszag from working for companies virtually anywhere in the world.*

Non-compete provisions must be reasonably tailored in geographic scope. *See Allied Fire*, 2017 WL 4354802, at *7. Here, the geographical scope of the restraint is staggeringly overbroad, covering, *inter alia*, multiple continents and "any other location [on the six continents] in which the FTI Group has an office,"[12] even if FTI does not provide Consulting Services there. Agreement § 17(b). FTI does not and cannot allege that Mr. Orszag ever provided services in these areas. The covenant is not narrowly tailored at all, much less restricted to protect Compass Lexecon goodwill that could unfairly be used by Mr. Orszag in competition. *See*, *e.g.*, *Allied Fire*, 2017 WL 4354802, at *7 (non-compete that was not tied to geographical area served by employee was unenforceable); *Seneca One*, 214 F. Supp. 3d at 463 (same).

## II.     FTI'S NON-SOLICITATION CLAIM (COUNT II) IS DEFECTIVE AS A MATTER OF LAW

FTI also claims that Mr. Orszag should be prevented from soliciting clients and employees of FTI for a year after his termination. *See* Count II. But non-solicitation clauses are also void as a matter of California law and fundamental public policy, and must be applied here in light of the clear conflict with Maryland law, which allows non-solicitation clauses in limited circumstances. *See Stryker Sales*, 231 F. Supp. 3d at 621-22 (non-solicitation clause involving a California employee cannot be enforced, even if another State's law is selected in choice-of-law provision). And even if Maryland law were to apply, FTI's sweeping non-solicitation provisions cannot be enforced because they suffer from the same fatal flaw as the non-compete. *See supra* pp. 15-18. They are neither narrowly tailored nor necessary to protect any legitimate business interests of the employer.

---

[12] *See* FTI Consulting, FTI Consulting Locations (FTI has "more than 8,000 employees located in 31 countries on six continents"), https://www.fticonsulting.com/locations (last visited Dec. 19, 2023).

### A. California Law Prohibits Prospective Enforcement of the Non-Solicitation Clauses Here

Section 11 of the Agreement purports to prohibit post-termination solicitation of FTI's clients.  That is invalid as a matter of California law because it restrains an employee's ability to meaningfully practice his chosen profession.  *See*, *e.g.*, *Conversion Logic, Inc. v. Measured, Inc.*, 2019 WL 6828283, at *5 (C.D. Cal. Dec. 13, 2019) ("[S]ection 16600 bar[s] a court from specifically enforcing . . . a contractual clause purporting to ban a former employee from soliciting former customers.") (ellipsis in original).  For the same reason, California law prohibits enforcement of post-termination restrictions on an employee soliciting employees of their former employer, like Section 11(a)(iii).  *See AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 239 Cal. Rptr. 3d 577, 589-90 (Cal. Ct. App. 2018); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *10 (C.D. Cal. Apr. 21, 2023) (voiding non-solicitation clause similar to Section 11; collecting cases).

### B. Maryland Law Also Prohibits Prospective Enforcement of the Non-Solicitation Clauses Here

Under Maryland law, non-solicitation clauses are subject to the same limitations as non-competes.  *See Allied Fire*, 2017 WL 4354802, at *5.  Such restrictions can be no broader than necessary to protect the employer's legitimate interest.  Among other obvious flaws, Section 11:

- *Prevents defendant from soliciting clients he did not personally serve.*  Fencing off all clients of FTI that contacted one of the hundreds of employees at Compass Lexecon, on any matter, serves no legitimate corporate interest.  The restriction here prohibits Mr. Orszag from soliciting any FTI client that had ever been contacted by any of his indirect reports.  *See* Agreement § 11(a)(ii) (prohibiting solicitation of "any person or entity . . . who is or was a client of the business of FTI Group . . . which employee . . . had contact with (either directly or through any direct *or indirect reports*)") (emphasis added).  The Amended Complaint alleges that roughly

19

796 out of the 800 employees at Compass Lexecon are "direct or indirect reports" of Mr. Orszag. *See* Am. Compl. ¶¶ 17, 46 (alleging Mr. Orszag is on the Executive Committee responsible for managing the internal operations of Compass Lexecon). Mr. Orszag has no advantage, in goodwill or otherwise, in seeking to serve that expansive and undefined set of potentially thousands of companies, and his serving them does not take unfair advantage of any benefit he received from his former employment. The restriction is simply a naked prohibition beyond FTI's protectable interests, which Maryland courts have recognized in striking similar restrictions. *See*, *e.g.*, *Allegis Grp., Inc. v. Bero*, 2023 WL 5989438, at *29 (D. Md. Sept. 1, 2023) (invalidating 18-month non-solicitation clause that prohibited solicitation of companies the employee had any "business-related contact with **or** obtained Confidential Information about" in the preceding two years) (emphasis added), *appeal pending*, No. 23-2023 (4th Cir.); *Bindagraphics*, 377 F. Supp. 3d at 574 (striking non-solicitation provision that was "not narrowly drawn to cover only those with whom [employee] had contact"); *Sirius Fed.*, 2023 WL 4456786, at *4 (same).

- *Prevents defendant from seeking work from any FTI client he indirectly solicited business from – but did not work for – while at Compass Lexecon.* The Agreement purports to bar Mr. Orszag from soliciting any company that he indirectly solicited business from or that any of his indirect reports "otherwise had contacted," so long as the company had *ever* been a client of FTI or its various subsidiaries in the 40 years preceding the Agreement. *See* Agreement § 11(a)(ii) (prohibiting solicitation of "any person or entity . . . who is or *was* a client of the business of FTI Group") (emphasis added).

That restriction plainly goes too far. "[C]ourts generally find that non-solicitation provisions are unreasonable to the extent that they bar employees from soliciting prospective customers, as opposed to actual customers." *Bero*, 2023 WL 5989438, at *33-34 (voiding clause, which extended to prospective customers that employee "was involved" in pursuing);

*ImpactOffice*, 2017 WL 2462492, at *6 (finding similar restriction unenforceable; "[a] prospective customer, under the plain meaning of the term, . . . would not have been the subject of customer goodwill generated by a[n] [employee]"); *Seneca One*, 214 F. Supp. 3d at 464 (identifying "no authority that would support a right to protection of potential customers").

- *Prevents defendant from contacting thousands of FTI and Compass Lexecon employees.* The Agreement purports to prohibit solicitation of all non-clerical employees of FTI, which employs more than 8,000 employees. *See* Agreement § 11(a)(iii). This sweeps in thousands of FTI employees Mr. Orszag never worked with or even met. That is obviously too broad. *See Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 400 (D. Md. 2015) (denying preliminary injunction to enforce non-solicitation clause where the clause was "not narrowly tailored to preventing [the employee] from trading on his goodwill" as it barred employee from soliciting "any employee at any level in any location").[13]

## III.   FTI'S ANTICIPATORY BREACH CLAIMS (COUNTS IV AND V) FAIL TO STATE A CLAIM

FTI alleges that Mr. Orszag "anticipatorily breached" his post-termination non-compete and non-solicitation obligations. Because the non-compete is inapplicable and the restrictive covenants are invalid as a matter of law, these counts fail. *See supra* Parts I, II. The Amended Complaint fails to make a plausible claim that Mr. Orszag repudiated those provisions of his Employment Agreement in any case.

---

[13] As the Supreme Court of Wisconsin aptly explained in striking down a similar non-solicitation clause, "[o]rdinarily, a stranger may entice [the employer's] employees to accept employment with a competitor of the Company," so "[a]n employer is not entitled to be protected against legitimate and ordinary competition of the type that a stranger could give." *Manitowoc Co. v. Lanning*, 906 N.W.2d 130, 140, 143-44 (Wis. 2018) (last alteration in original).

Both California and Maryland law require facts that FTI does not even attempt to furnish. To establish an anticipatory breach of contract under Maryland law, "there must be a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract." *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 2014 WL 3865993, at *5 (D. Md. Aug. 5, 2014).  California likewise requires a party to "absolutely and unequivocally refuse[] to perform" to establish an anticipatory breach. *Shahani v. United Com. Bank*, 457 B.R. 775, 783 (N.D. Cal. 2011).  FTI does not come close to meeting this standard.

### A.    The Complaint Fails To Allege Any Unconditional Repudiation of the Non-Compete Clause (Count IV)

FTI alleges that Mr. Orszag stated in October 2023 that "he w[ould] 'depart and start a new firm' " if he remained unsatisfied with FTI's management and that he "intended to . . . compete against Compass Lexecon the moment that he left the firm."  Am. Compl. ¶¶ 63, 77. This does not amount to anticipatory repudiation of the non-compete covenant.

When the alleged statement was made, Mr. Orszag was entitled to resign at any time (with 90 days' notice) and to compete the day after he left the firm.  *See* Agreement § 17 (no non-compete unless Employee is terminated for Cause in accordance with Agreement).  Mr. Orszag's alleged statement is thus entirely consistent with an intent to abide by the Agreement.

FTI fails to allege *any* "positive statement or act" by Mr. Orszag repudiating a post-termination non-compete obligation that could be applicable only after a valid for-Cause termination.  The Amended Complaint makes no allegation that a for-Cause termination was ever discussed or that Mr. Orszag ever made any statement of any kind regarding what he would do in that circumstance.  *See*, *e.g.*, *J.E. Dunn*, 2014 WL 3865993, at *5-6 (granting motion to dismiss because plaintiff did not allege "a definite, specific, positive, and unconditional

repudiation of the contract by one of the parties to the contract," and instead simply "inferred" repudiation from defendant's "expression of doubt" as "to whether it could perform").[14]

## B.    The Complaint Fails To Allege Any Unconditional Repudiation of Non-Solicitation Restrictions (Count V)

FTI does not allege any "positive statement or act" of repudiation by Mr. Orszag regarding the non-solicitation clause either.  *J.E. Dunn*, 2014 WL 3865993, at *6.  FTI only makes the conclusory allegation that Mr. Orszag "inten[ded]" to "solicit[ ] FTI and Compass Lexecon employees" upon his departure, and set up his own firm.  Am. Compl. ¶ 117.  But the Amended Complaint does not plead *any* facts indicating that Mr. Orszag made any statement, at any time, indicating that he *would affirmatively* solicit FTI employees or clients in the event he left Compass Lexecon.  Speculation about future "intentions" is a far cry from a positive statement or act making clear that Mr. Orszag was repudiating non-solicitation obligations.  *See Midfield Concession Enters., Inc. v. Areas USA, Inc.*, 130 F. Supp. 3d 1122, 1137 (E.D. Mich. 2015) ("To determine whether or not a repudiation occurred, the Court must look to the party's intentions as manifested by *acts and words*, not any clandestine motive that might be at play.") (emphasis added); *see also City of Fairfax v. Washington Metro. Area Transit Auth.*, 582 F.2d 1321, 1326, 1327 (4th Cir. 1978) ("[t]he strictness of this requirement of an absolute and unequivocal refusal to perform" must rely on either "spoken words" or acts whereby the individual "plac[es] himself in a position in which performance would be impossible") (cleaned up).

---

[14] FTI's allegation that Mr. Orszag stated in June 2022 that he would seek to invalidate *different* non-compete restrictions in a *previous* agreement, Am. Compl. ¶¶ 62, 117, 123, is irrelevant.  That cannot amount to an unambiguous repudiation of a different clause in a later agreement.

IV.    **THE BREACH OF NON-SOLICITATION CLAUSE (COUNT III) FAILS TO STATE A CLAIM**

FTI claims that Mr. Orszag violated the non-solicitation clause of the Agreement while he was employed.  The subject clause (Section 11) prohibits "affirmative" solicitation of FTI clients or employees.  But FTI does not assert – even in conclusory terms – that Mr. Orszag solicited any clients of FTI for a competing venture.  And it does not allege *any* facts supporting its conclusory assertion that Mr. Orszag solicited FTI employees.  FTI does not identify the individuals who were allegedly solicited, the time of those solicitations, or the content of such solicitations.  The mere conclusory assertion of breach is plainly insufficient as a matter of law. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (first alteration added).[15]  Additionally, FTI does not allege any damages from such unidentified solicitations.  FTI merely asserts that it "*may* suffer substantial damages, including lost revenues and employees*."  Am. Compl. ¶ 112 (emphasis added).  That failure to allege harm is an independent basis for dismissal.[16]

---

[15] Under California law, "[t]o plead a breach of contract claim a plaintiff must allege (1) a contract existed, (2) plaintiff performed or is excused for nonperformance, (3) defendant breached, and (4) plaintiff was damaged." *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 797 (C.D. Cal. 2022).  Under Maryland law, "a plaintiff alleging a breach of contract 'must of necessity allege with *certainty and definiteness facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'"  *Dern v. Liberty Mut. Ins. Co.*, 2015 WL 8665329, at *4 (D. Md. Dec. 11, 2015) (emphasis added in part; citation omitted).

[16] Given California's fundamental interest in protecting California employees against restrictive covenants, and the conflict between California's contractual requirement to plead damages for a breach-of-contract claim and Maryland's requirement that only duty and breach need to be alleged, the Court should apply California law here.  However, Count III fails to state a claim under either California or Maryland law.

**A.      FTI Fails To Plausibly Allege Facts Establishing That Mr. Orszag Solicited Compass Lexecon Employees for a Possible New Venture**

FTI makes the conclusory assertion that defendant "solicited" employees for a threatened new venture that *might* be formed if FTI refused to make changes in the governance structure of Compass Lexecon.  FTI does not identify the individuals allegedly solicited, when they were solicited, or the content of any such solicitation.  After *Twombly,* merely incanting a conclusion like "he solicited employees" is insufficient.  *See Twombly*, 550 U.S. at 555; *see also Albert S. Smyth Co. v. Motes*, 2018 WL 3635024, at *9 (D. Md. July 31, 2018) (conclusory assertions of solicitation that did not specify "when or how these employees were solicited, or even who most of them are," failed to state a claim for breach of the duty of loyalty under Maryland law).

The *facts* cited by FTI do not show solicitation at all:  giving a speech about "negative synergies" – after approval by FTI no less – has no logical connection to solicitation.  And predicting departures of employees in the event changes were not made is likewise a *non sequitur*, as is Mr. Orszag's supposed "intent" to solicit employees.  These allegations are the only allegations regarding actions by Mr. Orszag since the Agreement was executed, and they do not come close to alleging or even suggesting that he solicited employees to join some unformed, unidentified new venture.

Courts applying Maryland law, California law, and the laws of many other States routinely dismiss such groundless assertions.  For example, in *Albert S. Smyth*, even when a group of employees had all left the company at the same time, the Court held that the plaintiffs failed to state a claim for breach of a non-solicitation clause, where, as here, the plaintiffs failed to allege details like "when or how these employees were solicited, or even who most of them are."  2018 WL 3635024, at *8-9; *see also Inst. of Mgmt. & Admin., Inc. v. Broadband Intel., Inc.*, 2006 WL 8460966, at *6 (D. Md. Jan. 25, 2006) (dismissing alleged violation of non-compete clause,

because discussing defendant's alleged "intent" to compete and "conclusorily stating" that defendant engaged in that act were insufficient to state a claim); *Cloudera, Inc. v. Databricks, Inc.*, 2021 WL 3856697, at *6 (N.D. Cal. Aug. 30, 2021) (conclusory assertion that party induced individual to solicit specific employee and other "unnamed" employees to leave former employer in violation of non-solicitation clause failed to state a claim under California law).[17]

**B.      FTI Fails To Allege Damages Resulting from an Alleged Breach of the Non-Solicitation Provision**

To state a claim for breach under California law, plaintiff must allege "resulting damages" stemming from the breach.  *Race Winning Brands*, 2023 WL 4681539, at *8; *see Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage.").  Failure to claim damages requires dismissal.  *See Race Winning Brands*, 2023 WL 4681539, at *5, *9, *11 (dismissing claim against former employee where "[p]laintiff has not sufficiently alleged damages flowing from the asserted breaches of contract"; allegations in complaint that plaintiff had "suffered damages, including and without limitation, in excess of $75,000" were conclusory and insufficient).  *See also Hensel Phelps Constr. Co. v. TIG Ins. Co.*, 2011 WL 13130486, at *4 (C.D. Cal. Oct. 5, 2011) (finding generic allegations of damages insufficient to state a claim); *Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1146 (N.D. Cal. 2015) (same).

FTI has not alleged any present harm, much less damages resulting from defendant's actions.  It merely asserts that in the future it "*may* suffer substantial damages, including lost

---

[17] *See also*, *e.g.*, *Paramount Transp. Logistics Servs., LLC v. Traffic Tech, Inc.*, 2022 WL 861584, at *5 (M.D. Fla. Mar. 23, 2022) (granting motion to dismiss employer's claim of breach of non-solicitation agreement "because of the absence of factual allegations" where employer "d[id] not identify specific clients or disclose the form or content of the 'solicitation communications'" and instead "simply state[d]" that the employee engaged in solicitation communications to take clients from the company).

revenues and employees." Am. Compl. ¶ 112 (emphasis added). The failure to plead facts supporting a necessary element of FTI's breach claim requires dismissal.

## V.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE DUTY OF LOYALTY (COUNT VI)

FTI asserts that defendant violated his duty of loyalty during his employment by Compass Lexecon. Am. Compl. ¶¶ 127-130. But empty conclusions aside, the Amended Complaint alleges no *facts* that could establish a plausible claim for such a breach. FTI asserts only that, during negotiations, Mr. Orszag sought better terms of employment for the 800 Compass Lexecon professionals, *threatened* to resign and compete if demands for revision of the FTI/Compass Lexecon relationship were not met, and took unspecified preparatory steps to that end. But negotiation and preparation to compete does not breach a duty of loyalty, and the Amended Complaint fails to assert that any such actions resulted in harm to FTI (or Compass Lexecon). For both reasons, Count VI should be dismissed.[18]

### A.   Negotiations for Better Terms, and Preparations for Competition if Terms Are Not Agreed, Cannot Violate a Duty of Loyalty

FTI pleads on "information and belief" that Mr. Orszag took unspecified steps to prepare to compete while still employed by Compass Lexecon. Am. Compl. ¶ 83. But FTI pleads no facts as to any steps taken by Mr. Orszag to prepare for future competition. And even if Mr. Orszag did make such plans, preparation to compete in the future does not give rise to a breach-of-loyalty claim. Under the laws of both California and Maryland, employees may "prepare or make arrangements to compete with their employers prior to leaving the employ of

---

[18] The elements of a duty-of-loyalty claim are virtually identical under California and Maryland law. Under both, a plaintiff must allege "(1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that breach." *Huong Que, Inc. v. Luu*, 58 Cal. Rptr. 3d 527, 535 (Cal. Ct. App. 2007); *accord Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 591 (D. Md. 2016). Because the elements are the same, "it is unnecessary to conduct a choice of law analysis." *Sher v. SAF Fin., Inc.*, 2010 WL 4034272, at *11 (D. Md. Oct. 14, 2010).

their prospective rivals without fear of incurring liability for breach of their fiduciary duty of loyalty." *Maryland Metals, Inc. v. Metzner*, 382 A.2d 564, 568-69 (Md. 1978); *accord Mamou v. Trendwest Resorts, Inc.*, 81 Cal. Rptr. 3d 406, 433 (Cal. Ct. App. 2008) (employee "may plan and prepare to create a competitive enterprise prior to their termination, without revealing their plans to their employer," and the "mere formation of a potentially competing corporation does not breach a duty to his employer").

In order to foster employee mobility and promote competition, employees are entitled to prepare for a competing venture by taking out loans, opening a bank account, renting office space, purchasing a rival business, and more – all without breaching a duty of loyalty. *See*, *e.g.*, *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33, 49-50 (D.D.C. 2011) (collecting cases including in Maryland); *W. Air Charter, Inc. v. Schembari*, 2017 WL 10638759, at *5 (C.D. Cal. Oct. 6, 2017) (dismissing as insufficient allegations that former employee "registered a domain name for his competing company" and "organized a parent company that would serve as the vessel for his competition").[19]  Thus, FTI's conclusory claims of unspecified preparations to compete fail to state a claim. *See W. Air Charter*, 2017 WL 10638759, at *5; *Albert S. Smyth*, 2018 WL 3635024, at *9 (where company's COO quit along with 13 employees to start a competing business, generic allegation of preparations to compete were insufficient to state a claim for breach of the duty of loyalty under Maryland law).

Similarly, FTI's allegations that Mr. Orszag requested a restructuring of the corporate relationship, and threatened to resign and start his own firm if an agreement were not reached, do not come close to stating a claim for breach of the duty of loyalty.  Because employees are free

---

[19] *See also* Aditi Bagchi, "Fiduciary Principles in Employment Law," *in The Oxford Handbook of Fiduciary Law* 187, 193-94 (Evan J. Criddle, Paul B. Miller & Robert H. Sitkoff eds., Oxford Univ. Press 2018) (same).

to prepare to compete, they have every right to negotiate for better terms and to threaten to leave

if their requests are not met.  *See, e.g.*, *Albert S. Smyth*, 2018 WL 3635024, at *9 (failure to state

claim of breach of duty of loyalty when COO quit in the midst of negotiations over compensation);

*Balding v. Sunbelt Steel Texas, Inc.*, 718 F. App'x 742, 752 (10th Cir. 2018) (O'Brien, J.,

concurring) ("[A]n employee may demand a raise (or other changes) and may walk away without

consequence if the demand is not met. . . .  There is no requirement that demanded or imposed

changes be agreeable to the other party, or negotiable, or fair or even reasonable.").[20]  FTI's

assertion that employees are vassals, whose duty of loyalty prevents them from requesting what

they believe they and their colleagues deserve, does not pass the straight-face test.

FTI's conclusory allegation that Mr. Orszag "self-interestedly solicited Compass Lexecon's

senior professionals and employees," Am. Compl. ¶ 128, also fails to state a claim for breach of

the duty of loyalty.  The allegation is devoid of facts and so cannot be credited.  *See supra* pp. 24-26.

### B.      Count VI Fails To State a Claim Because FTI Has Suffered No Damages

Damages are a necessary element of a breach-of-loyalty claim under both California and

Maryland law.  *See Ikon Off. Sols., Inc. v. Rezente*, 2010 WL 5129293, at *5 (E.D. Cal. Dec. 9,

2010) (dismissing claim for failing "to allege damages resulting from any breach of the duty of

loyalty"); *VibrantCare Rehab., Inc. v. Deol*, 2021 WL 1614692, at *4 (E.D. Cal. Apr. 26, 2021)

(same); *Maryland Metals*, 382 A.2d at 571 (employer must demonstrate conduct by employee

---

[20] *See also Metal Lubricants Co. v. Engineered Lubricants Co.*, 284 F. Supp. 483, 484-86, 489
(E.D. Mo. 1968) (no breach of the duty of loyalty when employee told management he would resign if
changes were not made, and planned with other employees to leave and compete with the employer,
because "[t]hese facts do not make out a breach of [the employees'] fiduciary obligations"), *aff'd*, 411
F.2d 426 (8th Cir. 1969); *Crawford & Co. v. M. Hayes & Assocs., L.L.C.*, 13 F. App'x 174, 177 (4th Cir.
2001) (per curiam) (under Maryland law, former employee "did not breach any fiduciary duty by recruiting
the mid-level managers who formed her team of supervisors" or by working "with the other departing
managers in forming [a] competing business" because the company "was aware of the possibility that [the
employee] might resign and form such a business," and she "perform[ed] her job . . . in a satisfactory
manner").

29

"which impacted on the economic interest of [the employer] in some detrimental fashion");

*Albert S. Smyth*, 2018 WL 3635024, at *9 (failure to allege that "preparation substantially

hindered [plaintiffs'] business" was insufficient to state to a claim for breach of the duty of

loyalty); *accord Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) (similar

on tortious-interference claim).[21]

FTI not only fails to allege that it *has* suffered damages, but admits that there is only the

*possibility* that it *may* sustain damages in the future.  *See* Am. Compl. ¶ 130 ("FTI may suffer

substantial financial damages and other losses.").  The lack of claimed damages confirms that

FTI has only pleaded that Mr. Orszag threatened to compete or may have made unspecified

preliminary preparations to compete – actions that are lawful and that did not cause harm to FTI.

Count VI should therefore be dismissed for this additional reason.

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint.

---

[21] *See also Nat'l R.R. Passenger*, 791 F. Supp. 2d at 49 ("In determining whether an act is a breach
or constitutes mere preparation, courts assess whether the employee . . . caused 'injury' to his employer.");
*Hale Trucks of Md., LLC v. Volvo Trucks N. Am., Inc.*, 224 F. Supp. 2d 1010, 1023-24 (D. Md. 2002)
("[T]he employee can plan to compete as long as those plans do not cause harm to the original employer.").

DATED:  December 21, 2023                    Respectfully submitted,

                                        By:  */s/ Mark C. Hansen*

                                             Mark C. Hansen (State Bar No. 12266)
                                             James M. Webster, III (State Bar No. 23376)
                                             KELLOGG, HANSEN, TODD,
                                               FIGEL & FREDERICK, P.L.L.C.
                                             1615 M Street, N.W., Suite 400
                                             Washington, D.C. 20036
                                             Tel.:  (202) 326-7900
                                             Fax:  (202) 326-7999
                                             Email:  mhansen@kellogghansen.com
                                             Email:  jwebster@kellogghansen.com

                                             *Counsel for Defendant Jonathan M. Orszag*