UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| FTI CONSULTING, INC.<br><br>                 Plaintiff,<br><br>v.<br><br>JONATHAN ORSZAG,<br><br>                 Defendant. | Case No. 8:23-cv-03200-PJM |

### REPLY MEMORANDUM IN SUPPORT OF FTI'S MOTION FOR LEAVE TO CONDUCT THIRD-PARTY DISCOVERY

Throughout its selective presentation of facts and law, Mr. Orszag's Opposition does not deny that he engaged in a far-reaching campaign aimed at competing against FTI by taking over substantially all the business and personnel of Compass Lexecon, FTI's wholly owned subsidiary, while serving as its senior executive and fiduciary. From at least May 23, 2023, through at least November 2023, Mr. Orszag engaged in an extensive series of emails, texts, calls, and meetings with third-party investors as well as Compass Lexecon personnel to advance that objective.

Because those actions lie at the center of FTI's pending claims, including its claim for breach of fiduciary duty, this Court has ample cause under the liberal standard for discovery to allow FTI to proceed with third-party discovery at least through the December 17, 2024, motions hearing. ECF No. 62.

    **A.**    **The Court has ample cause to grant leave for third-party discovery.**

In its Second Amended Complaint, FTI alleged that Mr. Orszag breached his employment and fiduciary duties by attempting to incite a mass resignation of Compass Lexecon personnel while starting a new consulting firm to compete against FTI. *See, e.g.,* SAC ¶¶ 67-80 (alleging

detailed facts), 124-29 (breach of non-solicitation covenant), 130-35 (breach of non-compete covenant), 142-46 (breach of fiduciary duty). Among other allegations, FTI summarized Mr. Orszag's plans to establish a new company (NewCo) to compete against FTI "by taking all of Compass Lexecon's then-existing business and personnel." SAC ¶ 75; *see also id.* ¶¶ 76-77.

At a June 13, 2024, hearing on Mr. Orszag's motion to dismiss, the Court weighed arguments from counsel about whether FTI's allegations could overcome Mr. Orszag's motion and allow the parties to proceed with discovery:

- The Court: "[I]f they are right [referring to FTI], that Mr. Orszag was out there promoting a plan to set up his business somewhere, doing the same kinds of things that should legitimately be limited, that maybe there are damages. And I wouldn't say that because that's the prospect, that the case is out of court. I don't see—I don't see a non-suit there." Ex. A (Hearing T.) (June 13, 2024), vol. II, at 10:12-11:12.

- The Court took note of a plan with investors. Mr. Orszag's counsel countered that FTI had not alleged that he sent the plan to anyone other than himself, prompting the Court to inquire: "How do I know all this until we see the proof?"[1] *Id.* 14:7-14.

- The Court, referring to Mr. Orszag's counsel: "[Y]our argument is really a common one, which is we don't have enough. You know, there is a concept in comparative law, which happens to be a sideline of mine, and Brazilian law in particular, that translates 'is'—'is there good smoke in the case?' There is good smoke here. I don't know whether he's going to prove his case in the end or not, but there is good smoke, that maybe there is more that Mr. Orszag who's—did certain things that they think—that they are pretty sure he did. He may have done some more. I mean, that's what time will tell. But, again, this is really just getting the case going. This is not the end of it. You are not entitled to a full proof of their case at this stage. Have they plausibly stated a cause of action? and I think the answer is yes. I mean, I am not making that final decision now. And I—I disagree with you that nominal damages are only available in contract because they are awarded in tort all the time, or however it works. I mean, nominal damages are whenever you can't—when you can prove liability in a case and you can't prove the actual damage . . . ." *Id.* 26:15-27:9.

- The Court pointed out that a leading Maryland case on breach of fiduciary duty, *Maryland Metals v. Metzner*, 382 A.2d 564 (Md. 1978), was decided based on evidence

---

[1] As expected, during his deposition, Mr. Orszag admitted that he had shared or discussed the investor presentation with at least two of his senior colleagues at Compass Lexecon, and had presented it to representatives of at least one major investment bank, prior to the date of his termination for cause.

2

- presented at trial before a judge: "It makes a big difference. We are on a motion to dismiss. We are not there." *Id.* 19:10-15.

- Regarding a request to conduct discovery on FTI's breach of fiduciary duty claim, the Court responded, "I think you can conduct some discovery," and it "might be helpful." *Id*. 40:19-25. The Court did not allow discovery at that time on the geographic scope of the restrictive covenants, which would be the subject of further motions practice; however, "if there is something that you say goes to the issue of for cause, is there cause, the kind of internal dissension, if you will, facts, it seems to me that you could embark on discovery on that." *Id.* 42:2-16.

- The Court: "There is a provision under the rules for limited discovery on certain preliminary issues. I am sort of making it clear that I do think that at least the allegations have enough substance to go forward as to the alleged—well, how shall I characterize?—conduct, inappropriate conduct of Mr. Orszag, although there are some issues that are remaining open. And in order to at least get and entitle the plaintiff to some discovery, instead of getting hung up in this long wait-and-see process, I would be inclined to authorize some discovery on that point. I know you may object to it, but that's the way I think I'd prefer to go. This is an unusual case, and I, again, rather than have a clock run out on the case, which one has a feeling is part of what's—what the risk is here, I would say go forward. I think I would allow discovery, limited, not—to the issue of alleged inappropriate conduct, shall we call it, by Mr. Orszag, as set forth in the second amended complaint, and we will see where we go with it." *Id.* 43:7-24.

In its order following the motions hearing, the Court thus allowed discovery into Mr. Orszag's "alleged inappropriate conduct." ECF No. 47, at 2 ¶ 3. The Court further allowed that the limited time-period for discovery could be extended by the Court. *Id.*

In his discovery responses and his deposition, Mr. Orszag has so far identified at least eight Compass Lexecon or FTI personnel, and *more than 30* individual third parties, with whom he communicated, from January 1, 2023, through November 20, 2023, about some or all of: (a) his efforts to restructure the relationship between FTI and Compass Lexecon, (b) his intention to resign from Compass Lexecon if those efforts did not yield the restructured ownership and control over Compass Lexecon that he desired, and (c) his plans to form a new economic consulting firm that contemplated the inclusion of most of Compass Lexecon's senior professionals to compete against

FTI.[2] Through document productions and investigations, FTI has uncovered dozens of emails, texts, and meeting or call invitations between Mr. Orszag and many of the same colleagues and third parties regarding those matters. Among other points, FTI learned that in late August 2023 (around three months before his termination for cause), Mr. Orszag received a non-binding term sheet describing a nine-figure potential investment in NewCo from a major investment bank, which came after Mr. Orszag had walked through his NewCo power point presentation with representatives of that bank. In his NewCo presentation, Mr. Orszag had predicted that all or most of Compass Lexecon's personnel and clients would join NewCo, SAC ¶ 76; further, he advised in the presentation that NewCo's suggested value "is roughly $2 billion," which he computed based upon Compass Lexecon's 2022 earnings multiplied by an average industry multiplier.

To date, FTI has identified important gaps in discovery about the extent of Mr. Orszag's campaign to take over Compass Lexecon. For example, during his deposition, Mr. Orszag refused to answer questions about activities on such matters with FTI or Compass Lexecon employees or clients, or with potential investors, after the date of his termination. And there are gaps in Mr. Orszag's document productions, which may prove significant.[3] FTI anticipates conducting third-party discovery to understand the extent of Mr. Orszag's efforts to raise third-party investment using the investor presentation he developed in July 2023. Mr. Orszag does not seem to challenge

---

[2] FTI does not anticipate that the statements in this paragraph can be disputed, but stands ready to submit Defendant's verified interrogatory responses, samples from his document production, and extracts from his deposition testimony, should the Court find it useful to consider them at this time. Mr. Orszag's citation to testimony from a senior Compass Lexecon professional that there was "no basis" to suspect Mr. Orszag was engaged in wrongdoing is selective and incomplete. Opp. at 4. That same witness stated that he had no previous knowledge of Mr. Orszag's investor presentation or other key documents about Mr. Orszag's efforts to develop and finance NewCo.

[3] In addition to denying any discovery of his post-termination conduct, Mr. Orszag has refused to produce any of his text messages with two senior leaders at Compass Lexecon, which is a matter that FTI anticipates presenting to the Court in accordance with the Local Rules.

FTI's entitlement to such discovery, so much as to propose the same "wait-and-see" approach that this Court has previously indicated it disfavored.

Because discovery concerning Mr. Orszag's efforts to raise investment funding for NewCo is doubtless relevant to FTI's claims for breaches of his employment duties and his fiduciary duty of loyalty, the Court should grant FTI leave to conduct third-party discovery into Mr. Orszag's alleged inappropriate conduct, from January 1, 2023, through the present.

### B. This Court has already considered and rejected Mr. Orszag's argument that discovery is premature while his motion to dismiss remains pending.

Mr. Orszag's lead argument against third-party discovery is that it is premature while his motion to dismiss remains pending. Opp. at 6-8. However, this is no different from the argument that defense counsel made during the June 13, 2024, motions hearing, which the Court rejected.

As summarized above, the Court allowed discovery expressly because it found FTI's pleading sufficient regarding Mr. Orszag's alleged inappropriate conduct. The Court would not entertain a non-suit based on the alleged facts that "Mr. Orszag was out there promoting a plan to set up his business somewhere, doing the same kinds of things that should legitimately be limited." Ex. A, at 10:12-11:12. The Court stated that additional facts were needed before deciding issues about Mr. Orszag's "plan . . . with some investors," and explained that Mr. Orszag's team "are not entitled to a full proof of [FTI's] case at this stage." *See, e.g., id.* at 14:7-14, 26:15-27:9. Noting that *Maryland Metals* was decided after a trial in which evidence was presented to the court, *id.* 19:10-15, the Court concluded that FTI's allegations "have enough substance to go forward as to the alleged—well, how shall I characterize?—conduct, inappropriate conduct of Mr. Orszag," set forth in the Second Amended Complaint. *Id.* 43:7-24.

Mr. Orszag's Opposition isolates a sentence fragment from the hearing—the Court's reference to "for cause, is there cause"—to argue that discovery was limited to whether FTI had

5

sufficient grounds to terminate Mr. Orszag for cause. Opp. at 2. But the discussion of Mr. Orszag's misconduct at the hearing included his alleged use of the investor presentation, *id.* 10:12-11:12, and encompassed FTI's claims for breach of fiduciary duty and breach of the non-solicitation covenant, *see, e.g., id.* 40:19-25; *see also id.* 33:3-16. Indeed, at the hearing, FTI's counsel specifically raised discovery in the context of FTI's breach of fiduciary duty claim:

> Mr. Murphy: Your Honor, as Mr. Hansen pointed out, and it's true, our breach of fiduciary duty claim will extend beyond the—the end date of the non-competition provision, and we would like to—to have the opportunity to conduct some discovery on that claim.
>
> The Court: Well, I think you can conduct some discovery . . . .

*Id.* 40:19-25.

Mr. Orszag argues against discovery of his post-termination conduct, claiming that it is irrelevant and amounts to interference with his plans to compete against FTI. Opp. at 9. But this ignores that FTI's claim for breach of the non-solicitation clause sought injunctive relief prohibiting ongoing acts of solicitation during the restricted period, which extends for a year following the date of Mr. Orszag's termination. SAC ¶ 129; *see also id.* ¶¶ 119-21, 126-28 (alleging ongoing misconduct). The Opposition also fails to engage a key point raised by FTI's counsel at the motions hearing:

> Mr. Murphy: . . . . One, the non-solicitation provision applied while he was employed by Compass and FTI and for a year thereafter, so that non-solicitation provision would be applicable until November of '24.
>
> The breach of a duty of loyalty applied during the period that he was employed. So, in either event, if he is soliciting employees to leave with him and—and then—and is trying to [incite] what we have described in the complaint as a mass resignation of those employees while he's an employee of FTI and Compass or while he's subject to the non-solicitation agreement in this contract, then we would have an actionable claim for damages if, in fact, those employees subsequently leave.

6

Ex. A, at 33:3-16. That is, a continuing breach of Mr. Orszag's contractual and fiduciary duties is relevant to FTI's existing claims, as well as the scope and nature of the relief it may seek based on his violations. *See generally It's My Party, Inc. v. Live Nation, Inc.*, No. CIV. JFM-09-547, 2012 WL 3655470, at *3 (D. Md. Aug. 23, 2012) ("To the extent that plaintiffs seek to introduce post-complaint facts in support of allegations detailed in their complaint, it would be time-consuming and unnecessary to require amendment with regard to Live Nation's alleged continued antitrust conduct. Accordingly, plaintiffs need not seek leave to amend the complaint to introduce post-complaint activities relevant to their claim of ongoing antitrust violations.") (citations omitted).

To date, discovery has yielded compelling support for FTI's allegations that Mr. Orszag breached his employment and fiduciary duties through his pervasive campaign of engagement with FTI and Compass Lexecon employees and with third parties, all in support of his efforts to wrest control of Compass Lexecon by forming a competing business that would absorb virtually all of Compass Lexecon's senior professionals. Given important gaps in Mr. Orszag's discovery, *see supra* n.3, the Court should reaffirm its earlier rationale and allow third-party discovery of Mr. Orszag's alleged misconduct from January 1, 2023, through present.

### C.    FTI's request for leave to conduct third-party discovery is timely.

Mr. Orszag undercuts his timeliness argument by pointing out that the Court's June 18 order only authorized "limited *party* discovery for a period of 60 days." Opp. at 10 (emphasis in original). In that order, after allowing that discovery may be extended, the Court directed counsel to cooperate as far as interrogatories, depositions, and document productions were concerned. *See* ECF No. 47, at 2 ¶ 3. The order does not refer to subpoenas or otherwise suggest that the parties had leave to conduct third-party discovery. *See id.* Therefore, FTI's motion is timely in that there was no deadline set for the parties to conduct much less complete third-party discovery.

Through party discovery to date—especially Mr. Orszag's document productions and his deposition on September 19, 2024—FTI has been able to identify (among other topics) which third parties may have relevant and probative information beyond what Mr. Orszag has provided to date. As a result, FTI can now focus on a much smaller number of individuals or companies from whom it may seek limited third-party discovery, compared to the list initially furnished by Mr. Orszag in his written discovery responses.[4] Mr. Orszag has not presented any concrete arguments that he will be prejudiced by the conduct of third-party discovery; nor has he denied that third-party discovery is relevant to FTI's claims. And he ignores the prejudice to FTI from waiting months to pursue additional discovery regarding the scope and timing of his misconduct.

Mr. Orszag's argument that FTI is barred from seeking discovery of his post-termination conduct, Opp. at 11 n.8, is inconsistent with the Court's discovery order and its comments at the June 13, 2024, hearing. The Court did not foreclose any topics of discovery after the 60-day period during which it authorized limited discovery. ECF No. 47, at 2 ¶ 3. Nor did it seek to delineate every topic for which discovery was or was not authorized; rather, the Court identified one area on which it allowed preliminary discovery pending its decision on the motion to dismiss, the filing of an answer, and entry of a full scheduling order.

Because FTI is seeking discovery directly related to its claims regarding Mr. Orszag's alleged misconduct, this Court should grant leave for it to conduct third-party discovery, at least through the December 17, 2024, motions hearing. The Court should allow that this discovery may include Mr. Orszag's relevant misconduct from January 1, 2023, through present.

\*    \*    \*    \*

---

[4] Had FTI used Mr. Orszag's written discovery responses to start serving subpoenas on the 30-plus companies or individuals identified within them, it would have led to a highly inefficient process for FTI, the affected third parties, and Mr. Orszag, and could not realistically have been completed within 60 days.

## **CONCLUSION**

For the reasons set forth in FTI's cumulative briefing, this Court should grant FTI's motion for leave to conduct third-party discovery.

Date: October 28, 2024

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

   */s/ William J. Murphy*
William J. Murphy (Fed. Bar No. 00497)
Daniel P. Moylan (Fed. Bar No. 26476)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 949-1146 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com

Ezra B. Marcus (admitted *pro hac vice*)
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800 (office)
(202) 822-8106 (fax)
cmehta@zuckerman.com
emarcus@zuckerman.com

WILKINSON STEKLOFF LLP

Brian L. Stekloff (Fed. Bar No. 26835)
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000 (office)
(202) 847-4005 (fax)
bstekloff@wilkinsonstekloff.com

*Counsel for Plaintiff FTI Consulting, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that today the foregoing was served via CM/ECF on all counsel of record.

Date: October 28, 2024

                                         */s/ William J. Murphy*

                                     William J. Murphy (Fed. Bar No. 00497)

                                     *Counsel for Plaintiff FTI Consulting, Inc.*