**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| FTI CONSULTING, INC.<br><br>     Plaintiff,<br><br>  v.<br><br>JONATHAN ORSZAG,<br><br>     Defendant. | Case No. 8:23-cv-03200-PJM |

## MEMORANDUM IN SUPPORT OF FTI'S MOTION TO COMPEL DISCOVERY

  Defendant Jonathan Orszag has thus far refused to produce—or even review—any of his text messages with at least two senior Compass Lexecon employees identified in Mr. Orszag's investor presentation as among "the leaders" of his planned new economic consulting firm. *See* Second Am. Compl. ("Compl."), ECF No. 48 ¶¶ 75–76 (discussing the investor presentation). Because Mr. Orszag's communications with his colleagues are at the heart of the allegations in this case, Plaintiff FTI Consulting, Inc. ("FTI") seeks an order compelling Mr. Orszag to search his mobile devices and produce all responsive communications with Compass Lexecon employees.

  Mr. Orszag has not disputed the central relevance of the texts at issue—nor could he, considering the documents he has produced to date. Those documents show that, while serving as a senior management employee of Compass Lexecon, Mr. Orszag engaged in an active campaign to secure third-party investment for a competing venture, using his investor presentation which included certain information maintained as confidential by FTI. The documents manifest Mr. Orszag's intent to compete against FTI by orchestrating a takeover of as much as possible of the business of Compass Lexecon, FTI's wholly-owned subsidiary. Compl. ¶¶ 75–76, 79 (alleging

plans to appropriate all Compass Lexecon personnel and business). From at least May 23, 2023, through at least November 2023, Mr. Orszag engaged in an extensive series of emails, texts, calls, and meetings with potential investors for that competitive purpose—all while serving as a senior executive of Compass Lexecon. And, in his communications with Compass Lexecon colleagues during this time-period, Mr. Orszag reported that at least one major investment bank, after having viewed Mr. Orszag's investor presentation, committed in a term sheet to invest in his NewCo venture. All these actions were undertaken in violation of Mr. Orszag's fiduciary obligations to Compass Lexecon.

To be sure, there is more to discover about these efforts. For instance, although Mr. Orszag produced a preliminary non-binding term sheet he obtained from a major investment bank (which he designated as highly confidential), his counsel refused to allow him to respond to deposition questions about his further discussions with that investor after November 20, 2023, or describe the extent to which he has engaged in discussions about his NewCo venture with other Compass Lexecon employees or clients after the date of his termination (in apparent violation of his non-solicitation obligations under his employment contract).

And, of primary importance for this Motion, FTI is continuing to discover the full extent to which Mr. Orszag communicated with his principal Compass Lexecon colleagues and other Compass Lexecon personnel about his plans for NewCo. Already Mr. Orszag's documents show that he had numerous such communications with those colleagues, which makes his responsive text messages with the senior colleagues identified as principals of NewCo in his investor presentation, as well as other Compass Lexecon employees, critically important to understand how far his efforts reached.

To date, Mr. Orszag has refused to review or produce his text messages with at least two of his senior colleagues, purportedly out of a concern that some of those text messages might contain unresponsive, confidential client information or material that is subject to judicial protective orders in other cases in which he has been retained as an expert witness. To be clear, FTI has no interest in discovery of unresponsive materials about the substance of Mr. Orszag's unrelated third-party expert witness engagements.

During counsel exchanges over many weeks, FTI has sought to accommodate Mr. Orszag's stated concerns through a series of proposed review procedures aimed at avoiding outside disclosure of unresponsive third-party client information, but Mr. Orszag has rejected each such proposal as insufficiently protective. FTI ultimately stated that it was amenable to *Mr. Orszag himself* reviewing his text messages to identify and redact any unresponsive client confidential information or information subject to protective orders, and then providing a set of redacted text messages to his counsel to review for responsiveness. But Mr. Orszag rejected even this proposal on the grounds that it would take too much of his time.

Because Mr. Orszag refuses to produce responsive text messages with the two senior colleagues in question, FTI respectfully moves the Court for an order compelling him to do so.

I.  **BACKGROUND**

Based on numerous counsel conferences and emails,[1] the following points frame the discovery issue:

(1)  Mr. Orszag's phone was imaged early in this litigation and is available to be searched for responsive information. Indeed, Mr. Orszag has already produced numerous

---

[1] These efforts are detailed in the accompanying certificate of compliance with L.R. 104.8.

responsive text messages with other individuals about his investor presentation and his plans to form a competing business, including family members, friends, personal financial advisors, and some Compass Lexecon staffers.

(2) Defendant and his counsel have represented that since January 2023, Mr. Orszag has exchanged thousands of texts with the two Compass Lexecon employees in question, both identified as principals of NewCo in his investor presentation.

(3) To date, Mr. Orszag has refused to allow his text messages with these two colleagues to be reviewed by his counsel, so that texts responsive to FTI's discovery requests can be identified and produced.

(4) Mr. Orszag has raised various obstacles to the review and production of his text messages with these two Compass Lexecon employees. In particular, he has claimed that no one else—not even his own counsel—can review those texts without first securing consents or waivers from third-party clients whose confidential information may be contained in some of the unresponsive text messages included on his phone.[2] (As noted above, Mr. Orszag has produced responsive text messages exchanged with various other individuals.)

Taking Mr. Orszag's concerns about client confidentiality at face value, for weeks the Parties' counsel discussed a series of potential compromises that could allow for the collection and review of his texts. *See* L.R. 104.8 Certificate. Among its proposals, FTI was willing to accept a "filter review" process, in which a member of FTI's or Compass Lexecon's conflicts department

---

[2] Mr. Orszag has not shown, beyond his bare assertions, how much of his text message communications contain any protected or confidential third-party client materials. Mr. Orszag uses the broad-brush argument that because some of his texts may contain or reference protected material, he (or his counsel) is unable to review or produce any texts exchanged with the two senior Compass Lexecon colleagues that he identified as principals of NewCo in his investor presentation.

would review the texts for the sole purpose of removing or redacting any third-party client confidential information from the text strings. FTI remains open to this approach.[3]

However, despite early signals that such a filter review might be acceptable, Mr. Orszag insisted that before any such review could proceed, it would first be necessary for FTI or Compass Lexecon to secure waivers from an unspecified number of unidentified third-party clients whose confidential information might have been included in Mr. Orszag's text messages.[4] Such a process would be extremely unwieldy and could prove unworkable if even a single third-party client did not consent. Nonetheless, in Mr. Orszag's view, without consents from each and every client whose confidential information *might* appear in unresponsive text messages with the two Compass Lexecon employees, *nobody* else can review those text messages—not the Court, not FTI's counsel, and not even Mr. Orszag's own counsel.

Striving further for a compromise, FTI proposed that Mr. Orszag simply perform the filter review himself, which would obviate the complications and delays involved in attempting to secure the third-party waivers demanded by Mr. Orszag. But Mr. Orszag refused this proposal as well, citing the burdens it would place on him. FTI pointed out that the relative burden of performing a filter review would be far lower for Mr. Orszag than for anyone else: Mr. Orszag is already permitted to review confidential information about his client engagements; and, owing to his familiarity with those engagements, he presumably can identify third-party client confidences within his texts more far readily than someone else who lacks such familiarity. But Mr. Orszag has

---

[3] During discovery conferences, FTI's counsel informed Mr. Orszag's counsel that it is typical, as part of FTI's standard intake process that includes conflicts checks, for a member of its conflicts department to review client confidential information across all segments of the organization, for the limited purpose of assessing potential conflicts of interest in advance of opening a matter.

[4] FTI does not accept Mr. Orszag's claim, which he has not supported with citations to caselaw nor with reference to any specific engagement agreements or protective orders with which he is concerned, that third-party client consents or waivers are necessary under the circumstances presented.

5

insisted that, because of the professional demands of his ongoing client engagements (in which he is working as an independent consultant with Compass Lexecon), performing a filter review of his text messages with the two individuals at issue would impose too heavy a burden on his time.

FTI remains open to a fair accommodation that will allow for discovery of Mr. Orszag's responsive communications with the two Compass Lexecon employees at issue.[5] But having grown doubtful that any practical compromise will prove acceptable to Mr. Orszag, FTI seeks an order from this Court compelling Mr. Orszag (individually or through his counsel) to review his texts with the two senior colleagues identified in his investor presentation, for the limited purpose of removing or redacting any unrelated third-party client confidences that may be contained within them. Thereafter, all responsive text exchanges should be produced on an expedited basis.

## II.    APPLICABLE RULES

FTI moves to compel under Federal Rules of Civil Procedure 34 and 37. Rule 37(a)(3)(B)(i) provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." And Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." These rules have been applied in this district to include the production of responsive text messages over reasonable periods of time. *See, e.g., Mod. Remodeling, Inc. v. Tripod Holdings, LLC*, No. CCB-19-1397, 2020 WL 1984338, at *1 (D. Md. Jan. 31, 2020) (ordering production of 10 months' worth of text messages involving three individuals).

---

[5] Mr. Orszag's investor presentation identified a third senior colleague as a principal of NewCo, but based on discovery conducted to date, it appears that the third colleague did not engage in substantive communications with Mr. Orszag via text messages, and determined that he would not become involved as a principal of NewCo.

### III. SUBJECT REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 5:** All Communications between You and any employee or independent consultant of Compass Lexecon LLC relating to the possible termination of his or her employment or consultancy with Compass Lexecon LLC or his or her possible future employment or consultancy with OtherCo.[6]

**OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION NO. 5:** Mr. Orszag incorporates the Objections and Responses above. Mr. Orszag further objects to this Request as it inaccurately assumes facts. Subject to and without waiving the foregoing Objections and Responses, Mr. Orszag will produce non-privileged Communications during the relevant time period in his possession, custody, or control that are responsive to this Request and not already in FTI's possession, to the extent they exist.

### IV. ARGUMENT

As a party to this litigation, Mr. Orszag has a discovery obligation to search for and produce responsive information within his possession, custody, and control, including responsive information contained on his mobile devices. Fed. R. Civ. P. 26(b)(1), 34(b)(2); *Mod. Remodeling, Inc.,* 2020 WL 1984338, at *1. Mr. Orszag has furnished no authority to avoid that obligation given that his phone is available to be searched, contains information sought by FTI, and has already been reviewed at least in part for responsive texts with other individuals.

Mr. Orszag cannot condition his required document review on FTI or Compass Lexecon seeking consents or waivers from third parties whose confidential information *might* appear in Mr.

---

[6] FTI served several other RFPs that also could encompass Mr. Orszag's text communications with his two Compass Lexecon colleagues—for example, to the extent: they became investors or employees of OtherCo, RFP No. 1; his texts concerned efforts to raise investment funding for OtherCo, RFP No. 2; his texts otherwise concerned "the formation, tax structure, capitalization, financing, business plans, or ownership of OtherCo," RFP No. 3; or the texts concerned the investor presentation referenced above, RFP No. 7. Because Mr. Orszag has not so far raised specific objections to producing responsive texts on grounds of relevance, for the sake of brevity, FTI has reproduced just RFP No. 5 as the request that most directly addresses the text communications at issue.

Orszag's text messages, having rejected multiple proposals for addressing any realistic concerns about client confidences that would be far more feasible. Indeed, Mr. Orszag's suggestion that *FTI or Compass Lexecon* must obtain third-party consents is at best an attempt to shift his discovery obligations onto others. If Mr. Orszag believed client waivers were required before anyone else can view his text messages, then he had a choice: He could seek a protective order from this Court for his own counsel to review those text messages and redact any unrelated third-party confidential information; or Mr. Orszag could perform such review himself. Mr. Orszag has provided no legal support for shifting his obligation to another party by demanding that FTI or Compass Lexecon perform predicate acts that he considers necessary to satisfy his own discovery obligations.[7]

Even taking his concerns regarding client confidences at face value, Mr. Orszag has no reasonable objection to a procedure in which *he* would perform a filter review of his own text messages before providing them to his counsel. Instead, he has simply argued that the task would be too burdensome for him to complete given the demands of his current client engagements. However, Mr. Orszag has made no effort to date to substantiate this putative burden, for example by disclosing (a) the number of clients whose confidential information may be contained in his text messages with the two Compass Lexecon employees at issue, (b) which specific clients may have confidential information contained within those texts, (c) which specific confidentiality or protective order terms may apply to those texts, or (d) what estimated volume of texts might contain any client confidential information, if any. Indeed, given the fragmentary nature of text

---

[7] So, too, Mr. Orszag cannot avoid producing responsive information based upon his unsupported claim set forth in his discovery responses that such information is within Compass Lexecon's or FTI's possession, custody, or control. *See Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 410 (E.D.N.C. 2014), *aff'd sub nom., Beach Mart, Inc. v. L&L Wings, Inc.*, 784 F. App'x 118 (4th Cir. 2019), *and judgment entered*, No. 2:11-CV-44-FL, 2021 WL 5237967 (E.D.N.C. Mar. 29, 2021) ("[T]he rule is that even where a requesting party already has documents in its possession, or could otherwise access those documents, the disclosing party may not withhold those documents.") (citation omitted).

messages, for most professionals, texting would be a highly unusual method of communicating confidential information that is subject to a Protective Order governing the exchanges of information relevant to the performance of a complex expert witness assignment.

Although Mr. Orszag has complained of the burden of such a review, requiring Mr. Orszag to undertake that effort is reasonable given the centrality of the communications to this case. Moreover, the burden is modest compared to the overall volume of document discovery in this case: the text messages at issue are between Mr. Orszag and just two Compass Lexecon employees, and the review would only go back to January 1, 2023.[8] Even assuming Mr. Orszag is correct that he has exchanged thousands of text messages overall with the two colleagues in question since 2023, it is not excessively burdensome for Mr. Orszag to review those texts simply to eliminate from further review or redact any that may contain client confidential information. Imposing that limited burden on Mr. Orszag is certainly preferable to the unknown complications and delays that could be associated with the alternative approaches that Mr. Orszag is demanding.

In short, this Court should order Mr. Orszag to search for and produce his text messages[9] with the two Compass Lexecon employees at issue that are responsive to FTI's discovery requests. Given the importance of this discovery and the extended time-period that these issues have remained unresolved, the Court should order Mr. Orszag to produce all responsive text messages with Compass Lexecon employees within 14 days of its order.[10]

---

[8] FTI is reviewing and producing tens of thousands of pages of documents over the same period—including any responsive text messages—from at least four document custodians.

[9] For avoidance of doubt, the Court's order should specify that the term "text messages" includes any app by which individuals may exchange messages using mobile devices, such as the default messaging app as well as similar apps such as WhatsApp, Signal, or any substantial equivalent. Also, given Mr. Orszag's refusal to provide discovery on his-post-termination dealings with investors and colleagues, the Court's order should specify that this production must include responsive post-termination texts.

[10] As counsel for FTI informed counsel for Mr. Orszag, because these text messages were not produced in advance of his deposition, which took place on September 19, 2024, FTI should be entitled to

**CONCLUSION**

      For the foregoing reasons, FTI's Motion to Compel should be granted.

Date: September 24, 2024                 Respectfully submitted,

                                             ZUCKERMAN SPAEDER LLP

                                             */s/ William J. Murphy*
                                             William J. Murphy (Fed. Bar No. 00497)
                                             Daniel P. Moylan (Fed. Bar No. 26476)
                                             100 East Pratt Street, Suite 2440
                                             Baltimore, MD 21202-1031
                                             (410) 949-1146 (office)
                                             (410) 659-0436 (fax)
                                             wmurphy@zuckerman.com
                                             dmoylan@zuckerman.com

                                             Ezra B. Marcus (admitted *pro hac vice*)
                                             1800 M Street NW, Suite 1000
                                             Washington, DC 20036
                                             (202) 778-1800 (office)
                                             (202) 822-8106 (fax)
                                             cmehta@zuckerman.com
                                             emarcus@zuckerman.com

                                             WILKINSON STEKLOFF LLP

                                             Brian L. Stekloff (Fed. Bar No. 26835)
                                             2001 M Street NW, 10th Floor
                                             Washington, DC 20036
                                             (202) 847-4000 (office)
                                             (202) 847-4005 (fax)
                                             bstekloff@wilkinsonstekloff.com

                                             *Counsel for Plaintiff FTI Consulting, Inc.*

---

resume Mr. Orszag's deposition for additional questioning about any relevant texts with the two senior colleagues that eventually are produced pursuant to the Court's order on this motion to compel.