## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| FTI CONSULTING, INC.,<br><br>             Plaintiff,<br>   v.<br><br>JONATHAN ORSZAG,<br><br>             Defendant. | Case No. 8:23-cv-03200-BAH |
| JONATHAN ORSZAG,<br><br>             Counterclaim Plaintiff,<br>   v.<br><br>FTI CONSULTING, INC. &<br>STEVEN GUNBY,<br><br>             Counterclaim Defendants. | |

## MEMORANDUM IN SUPPORT OF
## COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS

ZUCKERMAN SPAEDER LLP

William J. Murphy (Fed. Bar No. 00497)
Daniel P. Moylan (Fed. Bar No. 26476)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 949-1146 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com

Ezra B. Marcus (admitted *pro hac vice*)
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800 (office)
(202) 822-8106 (fax)
emarcus@zuckerman.com

WILKINSON STEKLOFF LLP

Brian L. Stekloff (Fed. Bar No. 26835)
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000 (office)
(202) 847-4005 (fax)
bstekloff@wilkinsonstekloff.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 4

ARGUMENT ................................................................................................................. 5

I.      MR. ORSZAG IGNORES THIS COURT'S RULINGS ON CHOICE OF LAW AND
        THE RESTRICTIVE COVENANTS. ..................................................................... 5

II.     EACH OF MR. ORSZAG'S COUNTERCLAIMS FAILS TO STATE A CLAIM. ......... 7

        A.      Mr. Orszag Cannot State a Claim for Fraud (Count I). ......................................... 7

        B.      Mr. Orszag Cannot State a Claim for Wrongful Termination (Count II). ............ 10

        C.      Mr. Orszag Cannot State a Claim Under California Labor Code § 1102.5
                (Count III). ...................................................................................................... 13

        D.      Mr. Orszag Cannot State a Claim for Breach of Contract (Count IV). ............... 14

        E.      Mr. Orszag Cannot State a Claim for Tortious Interference with Business
                Relations (Count V). ......................................................................................... 17

        F.      Mr. Orszag Cannot State a Claim for Unjust Enrichment (Count VI)................. 18

        G.      Mr. Orszag Cannot State a Claim Under the California Business & Professions
                Code (Count VII). ............................................................................................ 20

CONCLUSION............................................................................................................. 22

# TABLE OF AUTHORITIES

Cases

*Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*,
  650 A.2d 260 (Md. 1994) ............................................................................... 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 12

*Baker by Thomas v. General Motors Corp.*,
  522 U.S. 222 (1998) ................................................................................. 21, 22

*Cheney Bros., Inc. v. Batesville Casket Co.*,
  47 F.3d 111 (4th Cir. 1995) .......................................................................... 10

*Clark Cty. Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001) ...................................................................................... 12

*Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*,
  642 F.3d 728 (9th Cir. 2011) ................................................................... 10, 11

*Erhart v. BofI Holding, Inc.*,
  612 F. Supp. 3d 1062 (S.D. Cal. 2020) .......................................................... 13

*Evans v. United States*,
  105 F.4th 606 (4th Cir. 2024) ......................................................................... 7

*First Union Nat. Bank v. Steele Software Systems Corp.*,
  838 A.2d 404 (Md. Ct. Spec. App. 2003) ............................................... 7, 8, 9, 10

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*,
  352 F.3d 367 (9th Cir. 2003) ........................................................................... 7

*Gross v. Sussex Inc.*,
  630 A.2d 1156 (Md. 1993) ............................................................................... 8

*Hill v. Cross Country Settlements, LLC*,
  936 A.2d 343 (Md. 2007) ........................................................................... 19, 20

*Hoffman v. Stamper*,
  867 A.2d 276 (Md. 2005) ................................................................................. 8

*K&K Mgmt., Inc. v. Lee*,
  557 A.2d 965 (Md. 1989) ............................................................................... 18

*Lapchak v. Paradigm Biopharmaceuticals (USA), Inc.*,
  No. 24-CV-143 JLS (DDL), 2025 WL 437904 (S.D. Cal. Feb. 7, 2025).............. 14

*NetRoadshow, Inc. v. Carrandi*,
    2025 WL 99754 (N.D. Ga. Jan, 7, 2025) ........................................................... 6, 21

*Poer v. FTI Consulting, Inc.*,
    2024 WL 4859085 (N.D. Cal. Nov. 20, 2024) ...................................................... 21

*Press v. United States*,
    No. CV JKB-17-1667, 2018 WL 1211537 (D. Md. Mar. 8, 2018) ......................... 17

*Sass v. Andrew*,
    832 A.2d 247 (Mt. Ct. Spec. App. 2003) ............................................................ 8

*Snepp v. United States*,
    444 U.S. 507 (1980) ......................................................................................... 3

*Taylor v. NationsBank, N.A.*,
    776 A.2d 645 (Md. 2001) ................................................................................. 14

*Techno Lite, Inc. v. Emcod, LLC*,
    44 Cal. App. 5th 462 (2020) ............................................................................. 13

*Transamerica Premier Life Ins. Co. v. Selman & Co.*,
    401 F. Supp. 3d 576 (D. Md. 2019) ............................................................... 18, 19

*U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Va., LLC*,
    899 F.3d 236 (4th Cir. 2018) ......................................................................... 5, 14

*Wholey v. Sears Roebuck*,
    803 A.2d 482 (Md. 2002) ................................................................................. 11

*Xia Bi v. McAuliffe*,
    927 F.3d 177 (4th Cir. 2019) ............................................................................ 7

*Yuan v. Johns Hopkins Univ.*,
    157 A.3d 254 (Md. 2017) ............................................................................. 10, 11

<u>Constitutional Provisions</u>

U.S. Constitution, Article IV, Section 1 ...................................................................... 22

<u>Statutes</u>

California Business & Professions Code § 16600 ........................................................ 12

California Business & Professions Code § 16600.1 ................................................... 6, 20

California Business & Professions Code § 16600.5 ........................................... 6, 20, 21, 22

California Labor Code § 1102.5 ............................................................................ 13, 14

Federal Rules of Civil Procedure

Rule 9(b) ............................................................................................................... 7

Rule 12(b)(6) ......................................................................................................... 7

Other Authorities

Maryland Pattern Civil Jury Instruction § 11:3 ................................................. 8

Maryland Pattern Civil Jury Instruction § 11:4 ................................................. 8

**INTRODUCTION**

This case is about Defendant/Counterclaim-Plaintiff Jonathan Orszag's actions, while acting as a senior manager of FTI's subsidiary, Compass Lexecon, to lay the groundwork "to form a directly competing business," with the goal of "exfiltrating a massive number of employees and clients with him." Memorandum Opinion ("MTD Opinion"), ECF No. 80 at 15. As an employee of Compass Lexecon, Mr. Orszag owed a fiduciary duty to put the interests of his employer above his own and not to exploit his employer's confidential information for his own purposes. As FTI will demonstrate in this case, Mr. Orszag deliberately and brazenly violated those obligations.

The limited discovery undertaken to date already has revealed that, during that last year of his employment in 2023, Mr. Orszag "worked in the shadows," *id.* at 4, to set up a competing venture and approached several investment firms seeking funding for a new firm that he would own and control. In his pitch to these funding sources, Mr. Orszag was open about his intentions: he sought to form his new firm by "effectively leech[ing]," *id.* at 5, Compass Lexecon's senior professionals and clients. And to attract potential funding, Mr. Orszag provided financial projections about the potential future value of his new firm. As a senior manager, Mr. Orszag had open access to Compass Lexecon's most sensitive and proprietary information.

As FTI will show, Mr. Orszag abused his position of trust by providing potential investors with such confidential financial information, including details about Compass Lexecon's profitability, cost structure, working capital needs, employees' bonus compensation and repayable loans, and the identity of key employees and clients – all with the aim of benefitting himself at the expense of his employer. Mr. Orszag's abuse of his position of trust was especially egregious because he used Compass Lexecon's confidential information specifically to build the financial

model that he used to attract investors for his competing firm—while still serving as a Compass Lexecon fiduciary.

Immediately after FTI and Mr. Orszag entered into a multiyear contract extension in early 2023, Mr. Orszag began plotting to disrupt Compass Lexecon for his own personal gain. By the fall of 2023, Mr. Orszag's plans were sufficiently advanced that he presented FTI with an ultimatum: either FTI should sell Compass Lexecon to him at a fraction of its market value or Mr. Orszag would establish his competing firm and then proceed to draw away Compass Lexecon's professionals and clients. In other words, *while still an employee* of Compass Lexecon, Mr. Orszag threatened to take actions (and took actions) that he knew would enrich himself, while causing harm to his own employer. Faced with such blatant acts of disloyalty from a senior employee who had been entrusted with management of a significant subsidiary, FTI had no choice but to fire Mr. Orszag in November 2023.

Since the filing of the Second Amended Complaint, Mr. Orszag has continued his efforts to "exploit[]," *id.* at 5, confidential information that he took from Compass Lexecon without permission. Last week, Mr. Orszag announced the launch of his new economic consulting firm. That new firm is the direct product of the scheme that Mr. Orszag tried to hatch in 2023. In recent press statements, he has touted the employees and clients that he already has recruited from Compass Lexecon. And he has made continuing references to his principal funding source, Goldman Sachs, which is the very same investment firm to which he provided confidential information that he took from Compass Lexecon during the summer of 2023.[1] Mr. Orszag has also poached employees by promising them financial benefits based on valuations performed by

---

[1] Indeed, in seeking funding for his new venture in the summer of 2023, Mr. Orszag misrepresented to Goldman Sachs that all of the senior leaders of Compass Lexecon would join his new firm when he knew this to be untrue.

Goldman Sachs – valuations based in part on the confidential information of Compass Lexecon that Mr. Orszag had surreptitiously provided to that firm beginning in the summer of 2023. There is an obvious and causal nexus between Mr. Orszag's new venture and his multiple acts of disloyalty while serving as a leader of Compass Lexecon—including the misappropriation of confidential information.

At the appropriate time, FTI expects to amend its complaint to account for Mr. Orszag's new and continuing breaches of his duties of loyalty as a senior manager of Compass Lexecon, which have continued after the filing of the Second Amended Complaint. In this case, FTI will seek a full recovery of all damages caused by Mr. Orszag's misconduct, including disgorgement of the ill-gotten gains derived from his new venture. *See, e.g.*, *Snepp v. United States*, 444 U.S. 507, 515–16 & n.11 (1980) (explaining that the "customary consequence" of an employee's breach of fiduciary duty by misusing his employer's confidential information for his own gain is "to disgorge the benefits of his faithlessness"—i.e., that "all personal profits gained from the exploitation of such information are impressed with a constructive trust in favor of the employer").

In his Counterclaim, Mr. Orszag continues to press a narrative that the Court previously described as "grossly mischaracteriz[ing] the facts and circumstances of this case." MTD Opinion at 15. As discussed herein, Mr. Orszag's Counterclaim also fails to state plausible claims for relief. His fraud claim (Count I) is based on vague, indefinite, and forward-looking statements made by FTI's CEO Steven Gunby of the sort that courts have repeatedly held are not actionable under a fraud theory—especially in the context of contractual negotiations between sophisticated parties. Mr. Orszag's claims for wrongful termination (Counts II and III) fail to allege any wrongful purpose that plausibly motivated FTI's decision to terminate him. Mr. Orszag's breach-of-contract claim (Count IV) fails to identify any breach by FTI—principally because this Court already has

rejected Mr. Orszag's strained reading of the express terms of his Employment Agreement. Mr. Orszag's claim for tortious interference with business relations (Count V) relies on conduct that is not wrongful, and he gallingly faults FTI for "interfering" with Mr. Orszag's prospective "business relations" with *FTI's own* employees and clients that Mr. Orszag planned to convert. Mr. Orszag's claim for unjust enrichment (Count VI) ignores basic elements of such a cause of action, including the undisputed fact that the parties' relationship was governed by an express contract. Finally, Mr. Orszag invokes California's statutory prohibitions on non-competes (Count VII), but those statutes are inapplicable to an employment relationship that this Court has already determined is governed by Maryland law, and Mr. Orszag's claim also fails on the merits.

## BACKGROUND

FTI and Mr. Gunby respectfully refer the Court to the Background section of the MTD Opinion for a summary of the facts and procedural history involved in this dispute. *See* MTD Opinion at 1–9.

In the MTD Opinion itself, the Court concluded that FTI has stated plausible claims for relief against Mr. Orszag in each Count of its Second Amended Complaint (aside from two claims for declaratory relief that have become moot with the passage of time). The claims against Mr. Orszag that the Court allowed to proceed include claims for breach of the restrictive covenants in his Employment Agreement (Counts III–V), and a claim for breach of his fiduciary duties owed to FTI and Compass Lexecon by acting disloyally while in a position of trust as a senior manager of Compass Lexecon (Count VI).

Mr. Orszag has now filed an Answer and Counterclaim to FTI's Complaint. ECF No. 87 ("Counterclaim"). In his Counterclaim, Mr. Orszag asserts seven causes of action against FTI and Mr. Gunby, all of which arise from FTI's decision in November 2023 to terminate and sue Mr.

Orszag for the very conduct that the Court has already concluded supports plausible causes of action against him.

## ARGUMENT

## I.    MR. ORSZAG IGNORES THIS COURT'S RULINGS ON CHOICE OF LAW AND THE RESTRICTIVE COVENANTS.

This Court has already entered a partial declaratory judgment that Mr. Orszag's Employment Agreement with Compass Lexecon and FTI is governed by Maryland law, in accordance with the choice-of-law provision agreed to by the parties. *See* Choice of Law Order; *see also* MTD Opinion at 7 ("Maryland law applies to the parties' dispute."). That decision followed extensive briefing by the parties concerning which state's law applies to Mr. Orszag's Employment Agreement, and in particular its restrictive covenants. *See, e.g.*, ECF No. 18-1 at 11–15; ECF No. 29 at 6–12; ECF No. 33 at 6–8. Applying Maryland law, the Court upheld the restrictive covenants in Mr. Orszag's Employment Agreement as facially and factually enforceable on the present record. *See* MTD Opinion at 11–16. These prior decisions now form the "law of the case." *U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018); *see also id.* ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." (citation omitted)).

Without even a mention of the Court's prior rulings, Mr. Orszag stubbornly insists that California law applies to his Employment Agreement and that the restrictive covenants are invalid under California law. *See* Answer, Sixth Defense. Mr. Orszag further contends that FTI acted in bad faith by seeking to enforce restrictive covenants that it *knows* to be invalid under California law (again ignoring the Court's rulings to the contrary). *See* Counterclaim ¶¶ 109, 144, 159. Mr. Orszag's intransigence notwithstanding, the parties' dispute is subject to Maryland law, as this Court has already determined.

Maryland law applies not only to Mr. Orszag's breach of contract claim that is expressly subject to the choice-of-law provision in the Employment Agreement (Count IV), but to all claims that implicate the Court's prior analysis of the restrictive covenants. For example, Mr. Orszag's claim for tortious interference with business relations (Count V) rests in large part on his theory that FTI acted wrongfully in suing him to enforce restrictive covenants that, according to Mr. Orszag, FTI knew were invalid. *See* Counterclaim ¶ 144. In presenting this framework—which assumes that the restrictive covenants are invalid under California law—Mr. Orszag simply ignores that the Court already has held that the restrictive covenants are governed by Maryland law. Given that holding, it makes no sense to apply California law to Mr. Orszag's tortious interference claim.

Similarly, Mr. Orszag's claim for common law wrongful termination (Count II) relies in part on a theory that FTI terminated him for a purpose that violated California's fundamental public policy against non-compete agreements. But it would be incongruous to accept such a theory when the Court has already held that Mr. Orszag's employment was subject to Maryland law, and that the restrictive covenants in his Employment Agreement are facially valid.

And for similar reasons, the California statutory provisions that ban non-competes in that state are inapplicable and cannot support a cause of action against FTI (Count VII). *See NetRoadshow, Inc. v. Carrandi*, 2025 WL 99754, at *4–5 (N.D. Ga. Jan, 7, 2025) (employee's counterclaim under Cal. Labor Code § 16600.5 necessarily failed in light of court's conclusion that the employment agreement was governed by Georgia law). It would make no sense to hold that the non-compete provision in Mr. Orszag's Employment Agreement is facially valid under Maryland law, but that FTI nonetheless was required to give him notice that it was void, *see* Cal. Labor Code § 16600.1, or that FTI is guilty of a civil violation for attempting to enforce it, *see id.* § 16600.5.

Finally, Mr. Orszag's claim for unjust enrichment against FTI (Count VI) is governed by a Consulting Agreement that, like the Employment Agreement, contains a Maryland choice-of-law provision. *See* ECF No. 30-5 ("Consulting Agreement") at 5. The unjust enrichment claim focuses on the revenue from Mr. Orszag's work as an independent contractor for Compass Lexecon during the year following his termination. *See* Counterclaim ¶¶ 149, 151. But that work occurred pursuant to an express contract—the Consulting Agreement, which Mr. Orszag incorporates by reference—that also is governed by the parties' selection of Maryland law. Just as the choice-of-law provision in the Employment Agreement dictated the application of Maryland law, so too with the choice-of-law provision in the Consulting Agreement that Mr. Orszag willingly accepted.

## II.    EACH OF MR. ORSZAG'S COUNTERCLAIMS FAILS TO STATE A CLAIM.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Evans v. United States*, 105 F.4th 606, 616 (4th Cir. 2024) (citation omitted). Furthermore, claims of fraud—such as the claim that Mr. Orszag asserts in Count I of the Counterclaim—are subject to the heightened pleading standard set forth in Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud." *Xia Bi v. McAuliffe*, 927 F.3d 177, 182 (4th Cir. 2019) (quoting Fed. R. Civ. P. 9(b)).

### A.    Mr. Orszag Cannot State a Claim for Fraud (Count I).

Mr. Orszag's fraud claim is based entirely on "vague, general, or indefinite statements" that are not actionable as a matter of law—especially in the context of an arms-length negotiation between sophisticated parties. *First Union Nat. Bank v. Steele Software Systems Corp.*, 838 A.2d 404, 442 (Md. Ct. Spec. App. 2003) (citation omitted).[2]

---

[2] Similarly, under California law, a fraud claim cannot proceed based on "generalized, vague and unspecific assertions." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (dismissing

To state a claim for common law fraud, a plaintiff must plausibly allege that:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

*Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005). "Moreover, the false statement must be of a material fact." *Gross v. Sussex Inc.*, 630 A.2d 1156, 1161 (Md. 1993).[3] "A fact is material if under the circumstances a reasonable person would rely upon it in making his or her decision." Md. Pattern Civil Jury Instruction § 11:4; *accord Sass v. Andrew*, 832 A.2d 247, 260 (Mt. Ct. Spec. App. 2003).

"Overly vague statements of expectation" are not material, and thus are not actionable as fraud, especially in the context of an arms-length negotiation between sophisticated parties. *First Union Nat. Bank*, 838 A.2d at 442. Put another way:

> [R]epresentations to be material, must have been in respect of ascertainable facts . . . . A representation which merely amounts to a statement of opinion, judgment, probability or expectation, or is vague and indefinite in its nature and terms, or is merely a loose, conjectural, or exaggerated statement, goes for naught, though it may not be true; for a party is not justified in placing reliance on such statement or representation.

*Id.* (citation omitted); *see also id.* ("[T]he representation must be definite, and mere vague, general, or indefinite statements are insufficient, because they should, as a general rule, put the hearer upon inquiry, and there is no right to rely upon such statements." (citation omitted)). So, too, a party

---

fraud claim based on several statements by the defendant—a manufacturer of film editing systems—including "assurances that it placed a 'high priority' on system upgrades, and that it intended to allocate all necessary resources to ensure improvement of the Lightworks system").

[3] In Maryland, materiality is generally understood as a component of the "false representation" element of a fraud claim. *See, e.g.*, Maryland Pattern Civil Jury Instruction § 11:3 ("A false representation is a statement, conduct, or act by which one intentionally misleads another person about a *material* fact." (emphasis added)); *Sass v. Andrew*, 832 A.2d 247, 260 (Md. Ct. Spec. App. 2003) (similar).

engaged in a negotiation cannot reasonably rely on omissions from the counterparty about its approach to the negotiation or the consequences of not reaching mutually acceptable terms.

Mr. Orszag's supporting theory of an actionable fraud perpetrated by FTI and Mr. Gunby is that, during fall 2023, when Mr. Orszag "attempt[ed] to negotiate a resolution with FTI" that he hoped would involve "restructuring the relationship between Compass Lexecon and FTI," Counterclaim ¶¶ 67, Mr. Gunby "falsely represented . . . that he would negotiate with Mr. Orszag in 'good faith,'" while he was in fact planning to terminate Mr. Orszag instead. *Id.* at ¶¶ 108–09. If Mr. Orszag's claim is allowed to proceed, Defendants will demonstrate that Mr. Gunby *was* negotiating with Mr. Orszag in good faith. But even accepting Mr. Orszag's allegations as true, he fails to plead an actionable fraud because he has not identified any material falsehood on which he reasonably could have relied in his decision making.

All of the supposed false representations that Mr. Orszag identifies are the sort of "vague, general, or indefinite statements" or aspirational statements that cannot support a fraud claim as a matter of law. *First Union Nat. Bank*, 838 A.2d at 442 (citation omitted). According to Mr. Orszag, while he was attempting to negotiate a restructuring of the relationship between Compass Lexecon and FTI, Mr. Gunby made the following representations:

- "FTI and Mr. Gunby were negotiating with him 'transparently and in good faith'";

- "FTI and Mr. Gunby . . . welcomed and encouraged an open exchange of positions, and sought a resolution that would lead Mr. Orszag to stay at Compass Lexecon";

- Mr. Gunby "'would work with [Mr. Orszag] expeditiously and without delay,' and hoped to find a path forward for [Mr. Orszag] to remain at the firm' – but needed more time 'to think about all of this.'"

Counterclaim ¶ 108.

None of these alleged statements is a "definite" representation of any "ascertainable fact," as required by *First Union National Bank*. Mr. Orszag cannot seriously contend that he was defrauded by Mr. Gunby stating that he was negotiating "transparently and in good faith." As a sophisticated party represented by counsel, Mr. Orszag cannot plausibly contend that he relied on Mr. Gunby or FTI to share their full negotiating positions with their counterparty in the negotiation, especially as Mr. Orszag did not do so in the same negotiation.[4] Similarly, Mr. Gunby's vague, qualified, and aspirational statements that he "hoped to find a path forward," and "sought a resolution" that would involve Mr. Orszag staying at Compass Lexecon, are not the type of concrete, definitive representations of fact that could support actionable fraud. *See Cheney Bros., Inc. v. Batesville Casket Co*, 47 F.3d 111, 115 (4th Cir. 1995) (rejecting fraud claim under South Carolina law based on "[a] few generalized comments indicating a basic intention to continue a voluntary business association"). Mr. Orszag has failed to allege a material misrepresentation on which he had a right to rely to his detriment, and his fraud claim therefore must be dismissed.

### B. Mr. Orszag Cannot State a Claim for Wrongful Termination (Count II).

A common law claim for wrongful termination operates as an "exception" to the general rule of at-will employment, which is that either party can terminate the relationship at any time for any non-discriminatory reason. *Yuan v. Johns Hopkins Univ.*, 157 A.3d 254, 262 (Md. 2017). The exception applies only "when the motivation for the discharge contravenes some clear mandate of public policy." *Id.*; *accord Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 748–49 (9th Cir. 2011). To establish a claim for wrongful termination, "the employee must

---

[4] Throughout the negotiation at issue, Mr. Orszag was planning at the same time to launch his competing venture in the event negotiations with FTI failed. He, of course, never intimated to Mr. Gunby or others at FTI that before or during these "transparent negotiations" with FTI he had been providing confidential information about Compass Lexecon's financial condition to attract investors for his planned new venture. *See* Introduction, *supra*.

be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Yuan*, 157 A.3d at 262; *accord Lucent Techs, Inc.*, 642 F.3d at 748–49.

Mr. Orszag asserts two theories of wrongful termination, and both fail. First, Mr. Orszag claims that FTI discharged him in retaliation for his complaints about FTI's public filings. Counterclaim ¶ 119(a). But under applicable Maryland law and policy, a wrongful termination claim based on an employee's whistleblowing conduct can succeed, if at all, only if the employee reports alleged misconduct *externally*, "to the appropriate law enforcement or judicial official." *Wholey v. Sears Roebuck*, 803 A.2d 482, 496 (Md. 2002). It is not sufficient to "merely investigate suspected wrongdoing and discuss that investigation with co-employees or superiors." *Id.* Because Mr. Orszag does not (and cannot) allege that he was terminated for reporting any supposed wrongdoing to any government agency, his whistleblowing theory of wrongful discharge fails as a matter of law.

Furthermore, Mr. Orszag's Counterclaim does not support—and indeed, directly negates— any plausible inference that FTI decided to terminate him because of his complaints about FTI's public filings. Mr. Orszag defeats his own wrongful termination theory by affirmatively alleging a *different* purpose for FTI's decision to terminate him: to "prevent or delay Mr. Orszag from launching a competing venture." Counterclaim ¶ 103; *see also id.* ¶¶ 76, 79, 99, 100, 105. Mr. Orszag depicts FTI's alleged decision-making process in detail, focusing entirely on FTI's alleged consideration of "the benefits to FTI economically if it could sideline Mr. Orszag for a year," *id.* ¶ 76, without any suggestion of FTI having considered Mr. Orszag's complaints about its public filings, *see id.* ¶¶ 73–79. Mr. Orszag cannot proceed on a theory of wrongful termination based on his complaints about FTI's public disclosures when he himself asserts that FTI discharged him for

a different reason. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (courts can draw upon "context" and "common sense" when assessing whether plaintiff states a plausible claim for relief).[5]

Mr. Orszag's second theory of wrongful termination fares no better. Mr. Orszag alleges that FTI terminated him "in retaliation for indicating that he intended to exercise his right to compete consistent with fundamental California public policy, including California Business & Professions Code § 16600 *et seq.*" Compl. ¶ 119. As an initial matter, this theory contravenes the Court's prior rulings that Mr. Orszag's Employment Agreement is governed by the law of Maryland—not California—and thus California's public policy against non-compete agreements is irrelevant as a matter of law.

Moreover, Mr. Orszag's statements of his intentions—even under his own allegations—went far beyond the free competition that California has a policy of protecting. Mr. Orszag did not merely state his intent to compete, but rather, while still an employee, used the threat of a mass departure of Compass Lexecon employees to try to pressure FTI to cede control of Compass Lexecon. *See* Counterclaim ¶¶ 64–65 (Mr. Orszag acknowledging his threat that, if FTI did not accede to his demands for "structural changes" in the relationship between FTI and Compass Lexecon, then it would "force" him "to depart and start a new firm," in which case "the entire Compass Lexecon business would depart with him"). As Judge Messitte recognized, Mr. Orszag

---

[5] Even aside from his affirmative allegations that he was terminated for a different reason, Mr. Orszag alleges no facts to support a plausible inference that he was terminated because of his complaints about FTI's public filings. There is no allegation, for example, that FTI terminated Mr. Orszag very soon after his complaints. Given that he was not terminated until November 20, 2023, *id.* at ¶ 126, alleging that the complaints occurred "in 2023" is not sufficient to support an inference of a causal link. *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding, under Title VII of the federal Civil Rights Act, that adverse employment action must be "very close" in time to the protected activity to support an inference of retaliation based on temporal proximity, and citing cases in which 3-month and 4-month periods were not sufficient).

"grossly mischaracterizes" his own conduct in describing it as "merely intend[ing] to go into a competing business that engaged in economic consulting." MTD Opinion at 15. Even under California law, "no firmly established principle of public policy authorizes an employee to become his employer's competitor while still employed." *Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462, 473–74 (2020); *see also id.* ("Section 16600 is not an invitation to employees to bite the hand that feeds them."). No public policy of California's would be contravened by terminating an employee for such conduct, even if California law applies.

Mr. Orszag has failed to allege that FTI's decision to terminate him was motivated by any purpose that violated a clear mandate of public policy, and thus his common law claim for wrongful termination must be dismissed.

### C.    Mr. Orszag Cannot State a Claim Under California Labor Code § 1102.5 (Count III).

California's whistleblower statute prohibits, among other things, retaliating against an employee for disclosing information that the employee reasonably believes shows a violation of federal or state law. *See* Cal. Labor Code 1102.5(b). To plead a retaliation claim under California Labor Code § 1102.5, a plaintiff must plausibly allege that: "(1) the plaintiff engaged in protected activity, (2) the defendant subjected the plaintiff to an adverse employment action, and (3) there is a causal link between the two." *Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1108 (S.D. Cal. 2020). Mr. Orszag's theory is that FTI discharged him for his complaints about FTI's public filings. Counterclaim ¶ 127.

Even assuming that Mr. Orszag's alleged complaints regarding FTI's public disclosures were protected activity under California Labor Code § 1102.5(b), his claim fails for the reasons discussed above in connection with his common law claim for wrongful termination: he alleges no facts plausibly suggesting that his termination was causally related to his complaints about FTI's

public filings—and indeed, he affirmatively alleges that he was terminated for other reasons. *See supra* at 11–12; *see also, e.g.*, *Lapchak v. Paradigm Biopharmaceuticals (USA), Inc.*, No. 24-CV-143 JLS (DDL), 2025 WL 437904, at *7 (S.D. Cal. Feb. 7, 2025) (dismissing § 1102.5 claim because the complaint was "devoid of facts to support a causal link between the protected activity and the adverse action").

### D. Mr. Orszag Cannot State a Claim for Breach of Contract (Count IV).

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Mr. Orszag contends that FTI breached his Employment Agreement by improperly terminating him for cause, asserting four different theories as to how FTI supposedly violated Section 7(b) ("Termination by Company for Cause"). *See* Counterclaim ¶¶ 136–39. Each of Mr. Orszag's four theories fails on the face of the Counterclaim.

Mr. Orszag's first two theories both relate to the procedures associated with a termination for cause. First, Mr. Orszag claims that FTI was required to, but did not, give him advance notice of such a termination. *Id.* ¶ 136. Second, Mr. Orszag faults FTI for not giving him a 30-day opportunity to "cure" the issue constituting the cause for his termination, which the Employment Agreement required if the cause was "curable." *Id.* ¶ 137; *see* Employment Agreement § 7(b).

Mr. Orszag's first theory is directly precluded by this Court's MTD Order—which Mr. Orszag never mentions.[6] In the context of FTI's Complaint, the parties extensively briefed the issue of whether—apart from the requisite 30-day opportunity to cure any issue that was "curable"—FTI was separately required to give Mr. Orszag advance notice of *any* termination for

---

[6] Absent colorable or timely grounds for reconsideration, this Court's earlier orders are law of the case. *See U.S. Tobacco Cooperative, Inc.*, 899 F.3d at 256–57.

cause. *See* ECF No. 52-1 at 8–11; ECF No. 59 at 2–4; ECF No. 61 at 2–5. The Court rejected Mr. Orszag's plea for such a notice requirement, interpreting the Employment Agreement not to require any advance notice if the issues constituting cause were "incurable." MTD Order at 11–12. This ruling directly forecloses Mr. Orszag's first breach-of-contract theory.

Mr. Orszag's second theory fares no better because he has failed to plausibly allege that the issues constituting cause were in fact "curable"—which is necessary to trigger FTI's obligation to provide a 30-day opportunity to cure. *See* Employment Agreement § 7(b). The only allegation that Mr. Orszag offers in this regard is that "Defendants have conceded that the purported Cause was curable because Mr. Gunby could have told Mr. Orszag at any time to stop negotiating and to stop requesting any restructuring of the relationship between FTI and Compass Lexecon." Counterclaim ¶ 137. Mr. Orszag's logic does not follow: the fact that he could have stopped making improper threats and demands that were blatantly inconsistent with his duty of loyalty to Compass Lexecon and FTI does not amount to a "conce[ssion] that the purported cause was curable." *Id.* The issues constituting cause were *in*curable—as FTI expressly stated in the Notice of Termination (which is incorporated by reference)—because Mr. Orszag's threats and demands were incompatible with conduct of a fiduciary. Mr. Orszag "demonstrate[d] [his] willingness to cause material harm to the Company" and "that [he had] no intention of complying with the terms of [his] Employment Agreement." Notice of Termination, ECF No. 24-4. These issues obviously would not have been "cured" simply by Mr. Orszag ceasing his threats and demands. Mr. Orszag has failed to plausibly plead that the circumstances constituting cause were curable, such that FTI would have owed him a contractual duty to provide a 30-day opportunity to cure.[7]

---

[7] Furthermore, Mr. Orszag's "opportunity to cure" theory is defeated by his own allegations, which make clear that he admittedly would not have taken advantage of any opportunity to cure. Mr. Orszag alleges that, if Mr. Gunby had advised him that FTI intended to terminate him for cause, Mr. Orszag would have

Mr. Orszag's third breach-of-contract theory is that FTI wrongfully terminated him for cause when in fact no cause existed within the meaning of the Employment Agreement. Counterclaim ¶ 138. But the provision of the Employment Agreement defining "Cause" is not, in and of itself, the sort of direct contractual obligation that can support a breach claim. Under the Employment Agreement, a termination "for Cause" under Section § 7(b) has no consequences in and of itself, separate and apart from terminating the employment relationship. A "for Cause" termination does have consequences under *other* provisions of the Agreement, but in each case the consequences depend on the alternative to a for-cause termination. For example, under Section 8 ("Payments on Termination of Employment"), FTI owed Mr. Orszag the same compensation and benefits in the event of a termination by the Company for cause and a resignation by the Employee without "Good Reason." Mr. Orszag does not claim that FTI *breached* any of those other provisions; and to adequately state any such claim, Mr. Orszag would need to spell out what alternative to a termination for cause should have occurred. Mr. Orszag presumably has sought to avoid committing to any specific theory in this regard, but in doing so, he has rested his breach-of-contract claim on a provision of the Employment Agreement—the definition of "Cause"—that does not impose any relevant actionable obligation on FTI.

In his fourth and final breach-of-contract theory, Mr. Orszag repeats that FTI had no cause to terminate him and also faults FTI for allegedly "fail[ing] to specify the actual basis for [his] termination." Counterclaim ¶ 139. But FTI *did* set forth the "actual basis" for Mr. Orszag's termination in the Notice of Termination for Cause—that is, the basis on which FTI was relying under Mr. Orszag's Employment Agreement. *See* ECF No. 24-4. FTI was under no contractual

---

*resigned* and implemented his plan to start a new business that would seek to appropriate the employees and clients of Compass Lexecon. Counterclaim ¶ 112.

obligation to do more. The Agreement requires only that one or more specified circumstances constituting cause must "occur," and that the Company must "specify in writing to Employee the nature of the act, omission or failure that it deems to constitute Cause." Employment Agreement § 7(b). If these conditions are met, there is no impediment under the Employment Agreement to proceeding with a termination for cause. And the Notice of Termination provided to Mr. Orszag satisfied the notice provision of the Employment Agreement.

E.    **Mr. Orszag Cannot State a Claim for Tortious Interference with Business Relations (Count V).**

A claim for tortious interference with business relations requires: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff; (3) done to cause damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) damage resulting. *Press v. United States*, No. CV JKB-17-1667, 2018 WL 1211537, at *8 (D. Md. Mar. 8, 2018). Mr. Orszag's theory is that FTI and Mr. Gunby acted tortiously by terminating him and filing this lawsuit in order to interfere with his "relationships with potential investors, lenders, employees, and clients" so that FTI would not have to compete with Mr. Orszag's planned new venture. Counterclaim ¶ 144. Mr. Orszag fails to state a claim for tortious interference.

Mr. Orszag's double standard is unstated but clear: his attempts to interfere with *FTI's and Compass Lexecon's* existing business relations beginning in 2023 were lawful, but since he failed, FTI must have acted tortiously. He boasts that "every single one" of the clients that he worked with would have followed him if he launched a competing company following his termination, conveniently omitting the fact that these were *Compass Lexecon's* clients. Counterclaim ¶ 146. Mr. Orszag's allegations of FTI's efforts to protect *its own* clients (and the clients of its wholly owned subsidiary) cannot support a claim for tortious interference.

Nor has Mr. Orszag identified any "tortious" conduct by FTI or Mr. Gunby. In attempting to plead tortious conduct, Mr. Orszag highlights FTI's and Mr. Gunby's supposedly fraudulent statements to him during negotiations in the fall of 2023, *see* Counterclaim ¶ 144, but as explained above, Mr. Orszag's allegations of fraud fail. *See supra* § II.A.

Mr. Orszag also claims that FTI and Mr. Gunby acted tortiously by "fil[ing] a lawsuit against [him] in bad faith, seeking to enforce what Defendants knew to be legally invalid restrictive covenants." Counterclaim ¶ 144. This allegation attempts to seize on cases holding that the requisite wrongful conduct for a tortious interference claim can be "the institution or threat of groundless civil suits or criminal prosecution in bad faith." *E.g.*, *K&K Mgmt., Inc. v. Lee*, 557 A.2d 965, 979 (Md. 1989). But FTI's lawsuit against Mr. Orszag obviously was not "groundless" in light of the Court's ruling that the restrictive covenants are facially valid and that FTI's claims should be allowed to proceed. Acting to enforce restrictive covenants that the Court determines are facially valid is not "tortious." *See, e.g.*, *Alexander & Alexander Inc. v. B. Dixon Evander & Associates, Inc.*, 650 A.2d 260, 269 (Md. 1994) ("Participants in the economic marketplace are expected to act aggressively in seeking business and furthering their own position in the market.").

### F.    Mr. Orszag Cannot State a Claim for Unjust Enrichment (Count VI).

As to both FTI and Mr. Gunby, Mr. Orszag's allegations simply do not fit within the basic elements of an unjust enrichment claim. "Unjust enrichment is a quasi-contractual cause of action that is a remedy 'to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided.'" *Transamerica Premier Life Ins. Co. v. Selman & Co.*, 401 F. Supp. 3d 576, 597 (D. Md. 2019). "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Id.* (citation omitted). To state a claim for unjust enrichment, a plaintiff must plausibly plead three elements:

1.  A benefit conferred on the defendant by the plaintiff;

2.  An appreciation or knowledge by the defendant of the benefit; and

3.  The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007).

Mr. Orszag's claim for unjust enrichment categorically fails. As to FTI, the unjust enrichment claim purportedly arises from Mr. Orszag's continuing work for FTI's clients after his termination as a Compass Lexecon employee, which he performed "as an independent contractor." Counterclaim ¶ 149. Mr. Orszag's theory is that FTI was unjustly enriched by "revenue generated on [Mr. Orszag's] matters that would have gone to Mr. Orszag and his new venture but for [Defendants'] wrongdoing." *Id.*; *see also id.* at ¶ 106.

The fatal problem with this theory is that an express, written contract between the parties— the Consulting Agreement—governed Mr. Orszag's work as an independent contractor, including how the revenue from his work would be allocated. *See id.*; *see also id.* at ¶¶ 97–98. The Consulting Agreement is explicitly incorporated by reference in Mr. Orszag's Answer, *see* Answer at ¶¶ 87– 88, and Mr. Orszag previously attached it to one of his pleadings in this case, *see* ECF 30-5. The Consulting Agreement sets forth a precise formula to determine how much of the revenue from Mr. Orszag's matters would be paid to him as compensation. *See* ECF No. 30-5 at 2–3. Because the parties entered into an express agreement governing Mr. Orszag's work as an independent contractor, which specifically addressed how the revenue from his matters would be allocated, Mr. Orszag cannot now seek to *re*-allocate that revenue under a quasi-contract theory. *See* Counterclaim ¶ 149; *see also Transamerica Premier Life Ins. Co.*, 401 F. Supp. 3d at 597 ("The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'").

Mr. Orszag's unjust enrichment claim against Mr. Gunby fares no better. With respect to Mr. Gunby, Mr. Orszag cannot plead the first and most basic element of an unjust enrichment claim: "a benefit conferred on the defendant *by the plaintiff*." *Hill*, 936 A.2d at 351 (emphasis added). Mr. Orszag's theory is that Mr. Gunby personally benefitted from his stock sales. Counterclaim ¶ 150. But even accepting this allegation, Mr. Orszag cannot allege that *he* conferred the proceeds of those stock sales on Mr. Gunby. The lack of any alleged "benefit conferred on the defendant *by the plaintiff*," *Hill*, 936 A.2d at 351 (emphasis added), is fatal to Mr. Orszag's unjust enrichment claim against Mr. Gunby.

### G. Mr. Orszag Cannot State a Claim Under the California Business & Professions Code (Count VII).

In Count VII, Mr. Orszag asserts a claim under California statutes that ban non-compete provisions in employment agreements. In particular, the California statutes provide that, subject to certain exceptions, it is "unlawful to include a non-compete clause in an employment contract," California Business & Professions Code § 16600.1, and "[a]n employer that . . . attempts to enforce a contract that is void under this chapter commits a civil violation," *id.* § 16600.5. Mr. Orszag's basic contention in Count VII is that FTI committed a civil violation of California law *by filing this lawsuit*. Counterclaim ¶¶ 155–59.

As previously explained, these statutes plainly do not apply to Mr. Orszag's Employment Agreement given this Court's prior rulings that (i) the Employment Agreement is governed by Maryland law, and (ii) under Maryland law, the non-compete provision is facially valid. Given that the non-compete provision in Mr. Orszag's Employment Agreement is facially valid under Maryland law, FTI could not have been required to notify Mr. Orszag that it was void, *see* Cal. Labor Code § 16600.1, nor could FTI be guilty of a civil violation for attempting to enforce it, *see*

*id.* § 16600.5; *see also NetRoadshow*, 2025 WL 99754, at *4–5 (dismissing employee's counterclaim under § 16600.5 for this reason).

Even if the California statutory prohibitions on non-competes could somehow coexist with this Court's prior rulings, Mr. Orszag's claim would still fail because California Business & Professions Code § 16600.5 does not apply under the circumstances of this case, and if it did apply here, it would be invalid. Section 16600.5 does not apply because it does not encompass non-California employers like FTI. The statute provides that "[a]n employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California." Cal. Bus. & Prof. Code § 16600.5(b). As at least one court has observed, "implicit in th[is] provision is that *the employer who cannot enforce the noncomplete is a California-based employer*," because "[t]o interpret the provision otherwise would mean section 16600.5 protects a non-California citizen working for a non-California-based employer at an office outside California." *Poer v. FTI Consulting, Inc.*, 2024 WL 4859085, at *11 (N.D. Cal. Nov. 20, 2024) (emphasis added). "There is no indication the California legislature intended such a result, let alone that it has the authority to require such a result for non-California employers." *Id.*

Even if § 16600.5 *were* intended to encompass non-California employers like FTI, and if it applies where, as here, the "attempt to enforce" a non-compete was the filing of a lawsuit in the courts of a different State, then the statute would exceed California's power and would be invalid. A California statutory provision that would purport to sanction a non-California company for filing a lawsuit in Maryland would amount to an unlawful regulation of a party's access to Maryland courts—which is no business of California's. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 238 (1998) ("Most essentially, Michigan lacks authority to control courts elsewhere

. . . ."); *see also id.* at 235 (collecting cases in which "[o]rders commanding action or inaction have been denied enforcement in a sister State when they . . . interfered with litigation over which the ordering State had no authority"). Mr. Orszag is seeking to use § 16600.5 to do exactly what the Supreme Court's decision in *Baker* forbids: "interfere[] with litigation over which [California] ha[s] no authority." *Id.* at 235.[8]

## CONCLUSION

For the reasons stated herein, Counterclaim Defendants FTI and Steven Gunby request that the Court grant their Motion to Dismiss and enter an Order dismissing with prejudice each count of the Counterclaims filed by Defendant/Counterclaim Plaintiff Mr. Orszag for failure to state claims upon which relief can be granted.

Date: February 28, 2025                    Respectfully submitted,

                                           ZUCKERMAN SPAEDER LLP

                                           ___/s/ William J. Murphy___
                                           William J. Murphy (Fed. Bar No. 00497)
                                           Daniel P. Moylan (Fed. Bar No. 26476)
                                           100 East Pratt Street, Suite 2440
                                           Baltimore, MD 21202-1031
                                           (410) 949-1146 (office)
                                           (410) 659-0436 (fax)
                                           wmurphy@zuckerman.com
                                           dmoylan@zuckerman.com

                                           Ezra B. Marcus (admitted *pro hac vice*)
                                           1800 M Street NW, Suite 1000
                                           Washington, DC 20036

---

[8] The expansive interpretation of § 16600.5 advanced by Mr. Orszag in his Counterclaim could also implicate the Full Faith and Credit in Article IV, Section 1 of the U.S. Constitution. The Full Faith and Credit Clause provides as follows: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." If § 16600.5 were read to penalize the act of filing a lawsuit by a company based in Maryland in a Maryland court, then the California statute would fail to give "full faith and credit" to the "judicial proceedings" of Maryland. Given the Supreme Court's holding in *Baker*, there is no need for this Court to decide how the Full Faith and Credit Clause might be applied to the extraterritorial application of the California statute that Mr. Orszag advances in Count VII.

(202) 778-1800 (office)
(202) 822-8106 (fax)
emarcus@zuckerman.com

WILKINSON STEKLOFF LLP

Brian L. Stekloff (Fed. Bar No. 26835)
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000 (office)
(202) 847-4005 (fax)
bstekloff@wilkinsonstekloff.com

*Counsel for FTI Consulting, Inc. & Steven Gunby*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 28, 2025, I caused the foregoing paper to be served via CM/ECF on all counsel of record.

_____/s/ William J. Murphy_____
William J. Murphy

*Counsel for FTI Consulting, Inc. & Steven Gunby*
