**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| FTI CONSULTING, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>JONATHAN M. ORSZAG,<br><br>*Defendant*. | Case No. 8:23-cv-03200-BAH |
| JONATHAN M. ORSZAG,<br><br>*Counterclaim Plaintiff*,<br><br>v.<br><br>FTI CONSULTING, INC. AND<br>STEVEN H. GUNBY,<br><br>*Counterclaim Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF COUNTERCLAIM DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

ZUCKERMAN SPAEDER LLP

William J. Murphy (Fed. Bar No. 00497)
Daniel P. Moylan (Fed. Bar No. 26476)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 949-1146 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com

Ezra B. Marcus (admitted *pro hac vice*)
2100 L Street NW, Suite 400
Washington, DC 20037
(202) 778-1800 (office)
(202) 822-8106 (fax)
emarcus@zuckerman.com

WILKINSON STEKLOFF LLP

Brian L. Stekloff (Fed. Bar No. 26835)
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000 (office)
(202) 847-4005 (fax)
bstekloff@wilkinsonstekloff.com

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

LEGAL STANDARD ....................................................................................................................... 4

ARGUMENT ..................................................................................................................................... 5

    I.    FTI and Mr. Gunby Are Entitled to *Noerr-Pennington* Immunity. .................................... 5

    II.    The Sham Exception to the *Noerr-Pennington* Doctrine Does Not Apply. ....................... 6

        1.    Application of the exception requires a showing that the litigation is objectively baseless. ................................................................................................................................ 6

        2.    FTI's litigation against Mr. Orszag is not a sham. ........................................................... 8

CONCLUSION ................................................................................................................................. 11

## **TABLE OF AUTHORITIES**

**CASES**

*Arnett Physician Grp., P.C. v. Greater LaFayette Health Servs., Inc.*,
 382 F. Supp. 2d 1092 (N.D. Ind. 2005) .................................................................................. 11

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
 237 F.3d 394 (4th Cir. 2001) ................................................................................................... 10

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
 81 F. Supp. 2d 602 (D.Md. 2000), *aff'd*, 237 F.3d 394 (4th Cir. 2001) ..................................... 5

*Biltmore Co. v. NU U, Inc.*,
 No. 1:15-CV-00288-MR, 2016 WL 7494474 (W.D.N.C. Dec. 30, 2016) ............................... 8

*Butler v. United States*,
 702 F.3d 749 (4th Cir. 2012) .................................................................................................... 5

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972) .................................................................................................................. 5

*Drager v. PLIVA USA, Inc.*,
 741 F.3d 470 (4th Cir. 2014) .................................................................................................... 5

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
 365 U.S. 127 (1961) .................................................................................................................. 1

*Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*,
 189 F. Supp. 2d 385 (E.D. Va. 2002) ....................................................................................... 5

*Fed. Trade Comm'n v. AbbVie Inc*,
 976 F.3d 327 (3d Cir. 2020) ..................................................................................................... 6

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
 335 F.3d 303 (4th Cir. 2003) ..................................................................................... 1, 5, 6, 7, 8

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
 868 F.3d 132 (3d Cir. 2017) .................................................................................................. 7, 10

*Krasnyi Oktyabr, Inc. v. Trilini Imports*,
 578 F. Supp. 2d 455 (E.D.N.Y. 2008) .................................................................................... 11

*Leading Tech. Composites, Inc. v. MV2, LLC*,
 No. CCB-19-1256, 2019 WL 4962312 (D. Md. Oct. 8, 2019) ............................................... 10

*Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*,
 404 F. Supp. 2d 1214 (E.D. Cal. 2005) .................................................................................... 8

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
   948 F. Supp. 2d 538 (D. Md. 2013) .................................................................................. 7, 11

*Navient Sols., LLC v. Lohman*,
   136 F.4th 518 (4th Cir. 2025) ............................................................................................ 5, 10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ................................................................................................................ 6

*Priority Auto Grp., Inc. v. Ford Motor Co.*,
   757 F.3d 137 (4th Cir. 2014) .................................................................................................. 5

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .......................................................................................... 1, 2, 6, 7, 8, 10

*RE/MAX LLC v. M.L. Jones & Assocs., Ltd.*,
   No. 5:12-CV-768-D, 2013 WL 4647517 (E.D.N.C. Aug. 29, 2013) ....................................... 8

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657 (1965) ................................................................................................................ 1

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*,
   728 F.3d 354 (4th Cir. 2013) .................................................................................................. 5

**RULES**

Fed. R. Civ. P. 11 ............................................................................................................... 6, 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 7

Fed. R. Civ. P. 12(c) ............................................................................................................. 2, 7

**INTRODUCTION**

In his Counterclaims, Mr. Orszag alleges that FTI and Mr. Gunby tortiously interfered with his business pursuits by fraudulently misrepresenting FTI's willingness to negotiate with him and then filing a "bad faith" lawsuit when those negotiations broke down. ECF No. 122 at 74. The Court dismissed Mr. Orszag's allegations of fraud, however, leaving as his only justification for the tortious interference claim the allegation arising from FTI's filing of its lawsuit. ECF No. 112 at 16. But a tortious interference claim premised on this allegation alone is barred by the First Amendment of the U.S. Constitution under the *Noerr-Pennington* doctrine. Because FTI and Mr. Gunby raised their First Amendment immunity from this claim as an affirmative defense in their Answer, ECF No. 123 at 22, this issue—which was not before the Court at the motion to dismiss stage—is now squarely presented.

The *Noerr-Pennington* doctrine grants First Amendment immunity to those petitioning the government for redress, including through the filing of a lawsuit. The doctrine shields the plaintiff from allegations that, solely by filing the lawsuit, it has harmed the defendant— including by allegedly tortiously interfering with the defendant's business relations. *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003).[1] The doctrine's narrow "sham" exception provides that immunity does not attach only when the defendant can demonstrate that the underlying lawsuit is objectively baseless—that is, so meritless that "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) (*PRE*).

The *Noerr-Pennington* doctrine squarely applies here, and Mr. Orszag cannot invoke the sham exception. Indeed, he has never claimed that FTI's entire lawsuit is baseless, nor could he,

---

[1] The doctrine stems from the Supreme Court cases in *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965), and *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).

given that FTI has already prevailed at multiple stages of this litigation. In particular, the Court granted a partial declaratory judgment to FTI (over Mr. Orszag's objection) that Maryland law applies to his employment contract, ECF No. 49. The Court then found the non-compete and non-solicitation provisions in that contract facially valid and enforceable against Mr. Orszag. ECF No. 80 at 12-16 (restrictive covenants enforceable as blue-penciled). The Court also found (again over Mr. Orszag's objection) that FTI had plausibly alleged that Mr. Orszag breached those contractual provisions, as well as his fiduciary duty of loyalty to FTI. *Id.* at 16-20. These holdings establish that FTI's lawsuit is far from baseless.

Notably, this conclusion holds regardless of whether Mr. Orszag has alleged facts sufficient to render his claim of "bad faith" facially plausible. *See* ECF No. 112 at 23 n.12 (explaining that a finding that FTI had stated plausible claims did not necessarily establish the implausibility of Mr. Orszag's counterclaims). That is, even if Mr. Orszag "met the . . . requirements necessary to bring a tortious interference claim" based on his allegation that FTI's lawsuit against him was motivated by subjective "bad faith," *id.* at 22-23, his claim still is barred under the *Noerr-Pennington* doctrine unless he can establish that FTI's claims were "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60. Given the Court's rulings to date, he plainly cannot.

Accordingly, the sham exception does not apply, and FTI and Mr. Gunby are immune from Mr. Orszag's tortious interference claim. The Court should therefore dismiss this claim (Count V of the First Amended Counterclaims) under Federal Rule of Civil Procedure 12(c).

## BACKGROUND

FTI filed its Complaint against Mr. Orszag in November 2023, ECF Nos. 3 (Complaint), 24 (Second Amended Complaint), and Mr. Orszag moved to dismiss five of the eight counts, ECF Nos. 18 (Motion to Dismiss), 52 (Motion to Dismiss Second Amended Complaint). While

that request was pending, the Court granted partial declaratory judgment in favor of FTI on a disputed choice-of-law question, holding that Maryland rather than California law governs Mr. Orszag's employment agreement with FTI.  ECF. No. 49.  The Court subsequently also ruled on Mr. Orszag's partial motion to dismiss, holding that of the five counts he challenged, two (both requests for declaratory judgment) could be dismissed as moot, and the other three (breaches of contract and fiduciary duty) could proceed, having stated plausible claims for relief.  ECF No. 80.  The Court also held that the restrictive covenants were presumptively valid under Maryland law.  *Id.* at 16; *see also* ECF No. 112 at 11. FTI thus continues to pursue six claims for relief against Mr. Orszag.

In January 2025, Mr. Orszag filed an Answer and Counterclaims.  ECF No. 86.  Among other things, he alleged in Count I that FTI and Mr. Gunby fraudulently represented to Mr. Orszag that they were negotiating with Mr. Orszag "transparently in good faith" regarding FTI's relationship with Compass Lexecon, when in fact they "never intended to and did not negotiate with Mr. Orszag transparently or in good faith."  *Id.*, Counterclaims ¶¶ 108-110.  Mr. Orszag also alleged in Count V that FTI tortiously interfered with his business relationships and efforts to build a competing firm.  *Id.* ¶ 144.  He identified as the underlying tortious conduct (1) the same supposed misrepresentations underlying his fraud claim, and (2) FTI's "bad faith" filing of its lawsuit against him.  *Id.* ¶ 144.  As to the lawsuit, Mr. Orszag alleged that FTI and Mr. Gunby sought "to enforce what Defendants knew to be legally invalid restrictive covenants." *Id.* Ignoring the Court's prior rulings, Mr. Orszag based that assertion on California law and a claim that the covenants were overbroad under Maryland law assuming that California law did not apply.

FTI and Mr. Gunby moved to dismiss, ECF No. 100-1, and this Court granted that request in part, dismissing several of Mr. Orszag's counterclaims, including his fraud claim. ECF No. 112.  The Court found that, even "[a]ssuming the veracity of" Mr. Orszag's allegations, "the relevant statements [by Mr. Gunby] [we]re simply too vague to constitute fraudulent misrepresentation." *Id.* at 16.  On Mr. Orszag's tortious interference claim, the Court explained that because it had dismissed the fraud claim, the tortious interference claim could not rest on that same alleged misconduct. *Id.* at 22.  The Court concluded, however, that this claim could "still move forward based on Orszag's additional allegations that FTI pursued a 'bad faith' lawsuit against him." *Id.*

In August 2025, Mr. Orszag filed a First Amended Answer, Defenses, and Counterclaims, in part to remove the dismissed counts from his Counterclaims.  ECF Nos. 114-2, 114-3, 122.  His tortious interference claim remained unchanged.  In light of the Court's ruling on FTI's motion to dismiss, Mr. Orszag's assertion of "bad faith" litigation is the sole predicate wrongful conduct that supports his tortious interference claim.

FTI and Mr. Gunby filed an Answer, asserting, among other things, that the First Amendment bars Mr. Orszag's tortious interference claim "to the extent that it arises from FTI's filing of this civil action." ECF No. 123 at 22 (Seventh Defense).  Given the Court's ruling on the sole remaining predicate for Mr. Orszag's tortious interference claim, this motion for judgment on the pleadings is now ripe for disposition.

## LEGAL STANDARD

"The standard for Rule 12(c) motions is the same as applied to Rule 12(b)(6) motions, which should only be granted if, accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim

4

entitling him to relief." *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014) (internal quotations omitted). A "Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012)). This motion concerns "[t]he application of *Noerr-Pennington*," which "is a question of law" that is appropriately decided at this stage of litigation. *See IGEN*, 335 F.3d at 310.

**ARGUMENT**

**I.     FTI and Mr. Gunby Are Entitled to *Noerr-Pennington* Immunity.**

The *Noerr-Pennington* doctrine "safeguards the First Amendment 'right to petition the government for a redress of grievances,' U.S. Const. amend. I, by immunizing citizens from the liability that may attend the exercise of that right." *Navient Sols., LLC v. Lohman*, 136 F.4th 518, 522 (4th Cir. 2025) (quoting *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 362 (4th Cir. 2013)). The right to petition, and the corresponding immunity under *Noerr-Pennington*, "extends to petitioning the courts," *i.e.*, the filing of a lawsuit. *Id.*; *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

Although "originally developed in the antitrust context, the [*Noerr-Pennington*] doctrine has now universally been applied to business torts," including claims of tortious interference. *IGEN*, 335 F.3d at 310; *see also Baltimore Scrap Corp. v. David J. Joseph Co.*, 81 F. Supp. 2d 602, 620 (D.Md. 2000), *aff'd*, 237 F.3d 394 (4th Cir. 2001) (*Noerr–Pennington* immunity extends to common law claims); *Eurotech, Inc. v. Cosmos Eur. Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 392 (E.D. Va. 2002) (the doctrine extends to "a variety of tort claims, including claims of tortious interference and abuse of process").

5

Here, as noted, the only remaining allegedly tortious activity underlying Mr. Orszag's claim of wrongful interference with his business opportunities is FTI's filing of its lawsuit against him. *See* ECF 112 No. at 22. Under a straightforward application of *Noerr-Pennington*, FTI and Mr. Gunby are immune from that claim, and this Court should therefore dismiss that count.

## II.     The Sham Exception to the *Noerr-Pennington* Doctrine Does Not Apply.

### 1.     Application of the exception requires a showing that the litigation is objectively baseless.

The *Noerr-Pennington* doctrine allows for a limited exception to its otherwise broad grant of immunity: claims like Mr. Orszag's—alleging injury due solely to the filing of a lawsuit—may proceed only upon a showing that the lawsuit is a "sham." *IGEN*, 335 F.3d at 312 (burden lies with the party asserting the exception). The Supreme Court has emphasized that this exception is "narrow . . . to avoid chilling the exercise of the First Amendment right to petition the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014). Thus, the party seeking to establish that the sham exception applies "faces 'an uphill battle.'" *Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 361 (3d Cir. 2020) (citation omitted).

A determination whether the exception applies proceeds in two steps. *PRE,* 508 U.S. at 60. First, the party asserting it must show that the litigation as a whole is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* A litigation is not objectively baseless where it "was arguably 'warranted by existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.'" *Id.* at 65 (quoting Fed. R. Civ. P. 11). Failing proof of objective baselessness, the analysis stops: As long as the court finds "that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under [*Noerr-Pennington*]." *Id.* at 60.

6

It is only after finding that a suit is objectively baseless that a court proceeds to the second step—examining "the litigant's subjective motivation." *Id*. If a party cannot show the litigation is objectively baseless, however, then the court may not assess the subjective motivation behind the litigation. *Id.*; *see also IGEN*, 335 F.3d at 312 ("even litigation that is deceitful, underhanded, or morally wrong will not defeat immunity unless it satisfies the objective baselessness requirement"). In short, as long as the litigation is "objectively reasonable," it cannot be deemed a sham, "regardless of subjective intent." *PRE*, 508 U.S. at 57 (footnote omitted).[2]

Moreover, litigation need not be successful to be deemed objectively reasonable. Even a losing party may be entitled to *Noerr-Pennington* immunity because "the essential question is not whether the suit succeeds, but whether the suit was a sham at the time it was filed." *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 148-49 (3d Cir. 2017); *see also PRE*, 508 U.S. at 65 (holding that the losing party was entitled to immunity where its action "was an objectively plausible effort to enforce rights"). Thus, even if some of the claims are later dismissed, as long as the party initiating the lawsuit held a "reasonable belief that" its claims might succeed when filed, the litigation is not baseless. *PRE*, 508 U.S. at 62. Applying this test, district courts across this Circuit have consistently held on the pleadings that *Noerr-Pennington* immunity shields litigants from claims that, merely by filing the underlying lawsuit in the case, they have improperly injured another party. *See, e.g.*, *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 557 (D. Md. 2013) (immunity from antitrust liability); *Biltmore Co. v. NU U, Inc.*, No. 1:15-CV-00288-MR, 2016 WL 7494474, at

---

[2] This motion addresses only the objective baselessness element of *Noerr-Pennington*. Because the Rule 12(c) motion applies the same standard as a Rule 12(b)(6) motion, Defendants do not address in this motion the Court's motion-to-dismiss ruling accepting Mr. Orszag's conclusory and disputed allegations of subjective bad faith.

7

\*5 (W.D.N.C. Dec. 30, 2016) (immunity from claims of unfair competition and unfair and deceptive trade practices); *RE/MAX LLC v. M.L. Jones & Assocs., Ltd.*, No. 5:12-CV-768-D, 2013 WL 4647517, at \*4 (E.D.N.C. Aug. 29, 2013) (immunity from claims of unfair and deceptive trade practices).

### 2. FTI's litigation against Mr. Orszag is not a sham.

Mr. Orszag has not alleged, let alone shown, that FTI's lawsuit is objectively baseless—nor could he given FTI's repeated success in several critical aspects of this litigation.

Instead, Mr. Orszag focuses only on FTI's supposedly "bad faith" motivations for filing suit. ECF No. 122 at 74. But allegations about FTI's motivations are irrelevant under the first step of the sham exception analysis: Mr. Orszag still bears the burden of showing that FTI's claims were objectively baseless, which he has not done. *See IGEN*, 335 F.3d at 312.

Further, even if his counterclaim were read to assert the baselessness of *some* of FTI's claims, Mr. Orszag has never alleged that *all* of FTI's grounds for litigation lack merit. As the Supreme Court underscored, the necessary "[p]robable cause to institute civil proceedings requires no more than a reasonable belief that there is a chance that *a claim* may be held valid upon adjudication." *PRE*, 508 U.S. at 62 (emphasis added and alterations omitted). But Mr. Orszag moved to dismiss only five of FTI's initial eight counts in the operative Complaint and he has never sought dismissal of the other three (anticipatory breach of contract regarding his non-solicit obligations and claims arising from his failure to repay promissory notes). *See* ECF Nos. 52, 80 at 10. That, on its own, is fatal under *Noerr-Pennington*. *PRE*, 508 U.S. at 60 ("the *lawsuit* must be objectively baseless" (emphasis added)); *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) (an "allegation that a single

8

claim is objectively baseless does not bring [the] filing of the entire complaint within the sham exception").

Regardless, even if Mr. Orszag had alleged that FTI's litigation as a whole was baseless, his claim would still be barred. The favorable decisions FTI has already secured conclusively establish the objective reasonableness of these claims, notwithstanding what may transpire in the remainder of this case.

FTI's victories directly rebut Mr. Orszag's primary allegation in support of his tortious interference claim—that it was improper for FTI to seek "to enforce what [FTI and Mr. Gunby] knew to be legally invalid restrictive covenants." ECF No. 114-2 ¶ 120, at 74. This argument is premised on Mr. Orszag's persistent—but mistaken—view that the restrictive covenants in his employment contract should be governed by California law, under which he asserts they are invalid. But he has lost that argument at every turn. The Court has consistently—and "unambiguously"—held that Maryland, not California, law applies to Mr. Orszag's employment agreement, granting a partial declaratory judgment on this issue to FTI. ECF No. 112 at 10-11; ECF No. 49. And the Court has repeatedly rejected Mr. Orszag's facial challenges to the restrictive covenants. ECF No. 80 at 16-19. Further, when ruling on Mr. Orszag's partial motion to dismiss, the Court found plausible FTI's allegations that Mr. Orszag had breached both restrictive covenants, allowing these claims to proceed. *Id.* (noting that, "[r]emarkedly," even at this stage, Mr. Orszag "still insists [that] he does not have to follow the Non-Compete covenant").

While Mr. Orszag does not reference FTI's other grounds for relief in his tortious interference claim, the proceedings to date establish that those too are objectively reasonable. For example, in its ruling on Mr. Orszag's partial motion to dismiss, the Court affirmed the

9

viability of FTI's breach of fiduciary duty claim, observing that Mr. Orszag did not even "appear to dispute" the existence of a fiduciary relationship or his breach of that duty. ECF No. 80 at 19-20; *see also Navient*, 136 F.4th at 524 (granting *Noerr-Pennington* immunity where "defendants filed a series of actions with regard for the merits, i.e., to adjudicate *plausible* claims that Navient violated the TCPA" (emphasis added)). Mr. Orszag's decision not to move to dismiss several other claims likewise suggests that those counts are, at a minimum, not baseless. *See* ECF No. 80 at 10; *see also* ECF No. 52 (Orszag Motion to Dismiss); *see also Leading Tech. Composites, Inc. v. MV2, LLC*, No. CCB-19-1256, 2019 WL 4962312, at *5 n.6 (D. Md. Oct. 8, 2019) (noting that a "claim of baselessness is somewhat belied by the fact that MV2 did not file a motion to dismiss LTC's complaint and instead chose to proceed to discovery").

      As previously noted, it is irrelevant for present purposes whether FTI will ultimately prevail on its outstanding claims. Rather, the immunity inquiry under the *Noerr-Pennington* doctrine turns on whether FTI's suit was a sham "at the time it was filed." *In re Wellbutrin XL*, 868 F.3d at 148-49. At a minimum, FTI's lawsuit was, and remains, "arguably 'warranted by existing law' or at the very least . . . based on an objectively 'good faith argument for the extension, modification, or reversal of existing law.'" *PRE*, 508 U.S. at 65 (quoting Fed. R. Civ. P. 11). That the Court has already—over Mr. Orszag's objections—effectively enforced the restrictive covenants and found a number of FTI's other allegations plausible demonstrates conclusively that the lawsuit was not a sham when filed. *See, e.g.*, *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 400 (4th Cir. 2001) (survival of a motion to dismiss demonstrated "a reasonable basis for the litigation"); *Metro. Reg'l Info. Sys., Inc.*, 948 F. Supp.

2d at 557 (denial of motion to dismiss and grant of preliminary injunction sufficient for *Noerr-Pennington* immunity).[3]

## CONCLUSION

The *Noerr-Pennington* doctrine immunizes FTI and Mr. Gunby from Mr. Orszag's claims premised on FTI's filing of its lawsuit against him. Because this is the sole surviving predicate for Mr. Orszag's tortious interference claim, the Court should dismiss that claim under Rule 12(c).

Date: October 6, 2025

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

  */s/ William J. Murphy*
William J. Murphy (Fed. Bar No. 00497)
Daniel P. Moylan (Fed. Bar No. 26476)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 949-1146 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com

Ezra B. Marcus (admitted *pro hac vice*)
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800 (office)
(202) 822-8106 (fax)
emarcus@zuckerman.com

WILKINSON STEKLOFF LLP

Brian L. Stekloff (Fed. Bar No. 26835)
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000 (office)

---

[3] *See also Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008) (litigation was not objectively baseless where, though ultimately unsuccessful, plaintiff's claims survived a motion to dismiss); *Arnett Physician Grp., P.C. v. Greater LaFayette Health Servs., Inc.*, 382 F. Supp. 2d 1092, 1097 (N.D. Ind. 2005) (federal claim was immune under *Noerr Pennington* doctrine where state "trial court has twice rejected motions to dismiss the action under Indiana Trial Rule 12(b)(6)").

11

(202) 847-4005 (fax)
bstekloff@wilkinsonstekloff.com

*Counsel for FTI Consulting, Inc. & Steven Gunby*

**CERTIFICATE OF SERVICE**

I certify that on October 6, 2025, I caused the foregoing paper to be served via CM/ECF on all counsel of record.

                                                  */s/ William J. Murphy*
                                                  William J. Murphy

                                                  *Counsel for FTI Consulting, Inc. & Steven Gunby*