**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| FTI CONSULTING, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> JONATHAN M. ORSZAG, <br><br> *Defendant*. | Case No. 8:23-cv-03200-BAH-AAQ |
| JONATHAN M. ORSZAG, <br><br> *Counterclaim Plaintiff*, <br><br> v. <br><br> FTI CONSULTING, INC. AND STEVEN H. GUNBY, <br><br> *Counterclaim Defendants*. | |

**COUNTERCLAIM PLAINTIFF JONATHAN M. ORSZAG'S**
**OPPOSITION TO COUNTERCLAIM DEFENDANTS'**
**<u>RENEWED DISMISSAL MOTION</u>**

## INTRODUCTION

In their belated motion, FTI Consulting, Inc. ("FTI") and Steven H. Gunby (together, "Defendants") ignore or mischaracterize the facts alleged in Jonathan Orszag's counterclaims, as well as this Court's ruling that these facts state a plausible claim that FTI and Gunby tortiously interfered with Orszag's opportunity to start a new economic consulting business. There is good reason why they did not make this argument in their Rule 12(b)(6) motion: it is meritless.

The counterclaims allege detailed facts establishing a multi-faceted scheme to prevent Orszag from leaving FTI subsidiary Compass Lexecon ("CL") and competing, which he had every right to do under his contract with FTI. FTI and Gunby lured Orszag into a pretend negotiation over a change of control of CL, which they had no intention of agreeing to; they advised their board members of the need to slow Orszag down so that he would not leave and compete; and then, after freezing him in place with disingenuous promises of continued "good faith" negotiations, they ambushed him with a bogus "Cause" termination for which they had no cause. That termination alone, without more, placed a purported one-year non-compete obligation on Orszag and created a cloud that prevented him from exercising his right to leave and start a competing firm. After that, FTI iced the poisoned cake by *suing* him without any basis—according to the Chairman of his employer CL (who demanded that FTI strike CL as a party from a complaint that he considered groundless), after a termination that had no valid "Cause."

FTI returns to Court again seeking dismissal of the tortious-interference claim (this time under Rule 12(c) instead of 12(b)(6)—although the standards for both are identical). FTI now contends that Orszag's tortious-interference claim is based solely on FTI's bogus lawsuit, that this lawsuit was not dismissed and is therefore "objectively reasonable," and that FTI cannot be

1

held liable under the *Noerr-Pennington* doctrine, which protects legitimate petitioning to government authorities under the First Amendment.

FTI and Gunby are wrong on all three points. The counterclaims are based on a constellation of facts that, taken as true, establish the wrongful-conduct element of a tortious-interference claim. Conduct does not need to rise to the level of fraud to be wrongful, and Orszag's particularized allegations are sufficient to plead that element even without the sham lawsuit. But the lawsuit *was* a sham. Orszag pleaded facts establishing that FTI's lawsuit *was* "objectively baseless" (and the Court agreed). The fact that FTI's complaint was not dismissed does *not* prove otherwise because the facts FTI pleaded are *false* and FTI *knows* they are false: as Orszag's counterclaims allege, he did *not* breach his employment agreement, did not solicit CL employees to leave and join a non-existent competitive venture, and did not misuse CL confidential information. FTI made false claims to the contrary as part of its campaign to "slow him down" as a likely competitor—the very definition of a sham lawsuit. Indeed, Mr. Gunby admitted on numerous occasions "that the lawsuit was originally filed to keep Mr. Orszag from leaving, and continues to be prosecuted to prevent Mr. Orszag from ever competing against FTI." Counterclaims ¶ 106. FTI's belated attempt to wrap itself in the constitutional protection of *Noerr-Pennington* fails in every respect.

The afterthought dismissal motion is no better supported than its predecessor. It should be denied. *See* ECF No. 112 at 9 (citing *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014)); *see also Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002) (same standard governs motions under Rule 12(b)(6) and Rule 12(c)).

## BACKGROUND

A.    **Factual Background**

The counterclaims recount facts regarding the bad-faith efforts of FTI and Gunby to prevent Orszag from exercising his contractual right to resign and compete with FTI in the market for economic consulting services. Orszag co-founded CL (a wholly owned subsidiary of FTI) decades ago and served as its co-leader from its creation until November 2023. Counterclaims ¶¶ 27-28. Despite CL's spectacular success, its relationship with FTI was fraught in the years following Gunby's ascension as President and CEO. *Id.* ¶¶ 4-7, 29. Tensions reached a breaking point in 2023, after FTI made a series of disastrous decisions that materially impaired the business and prospects of CL and its professionals. *Id.* ¶¶ 6, 53-62.

Orszag and his CL colleagues protested FTI's actions and sought to undo them. *Id.* ¶¶ 6, 57, 60. Hoping to find a path forward, Orszag initiated negotiations with FTI, but made clear that if they were unable to find a solution, he would exercise his contractual right to depart and then to pursue his career elsewhere. *Id.* ¶¶ 63-72. Through early November 2023, Gunby encouraged those discussions—meeting with Orszag in person to assure Orszag that he and FTI "hope[d] we can find a path forward for you to remain at the firm" and that Gunby "intend[ed] to continue our discussions transparently and in good faith and hope[d] [Orszag] will too." *Id.* ¶¶ 67-70. Orszag took Gunby at his word, working on existing engagements and pitching new ones to potential clients. *Id.* ¶ 83. But in truth, Gunby was laying a trap—the first stage of a scheme to kneecap Orszag as FTI's potential competitor.

At the next stage, FTI and Gunby exploited Orszag's cooperation by fabricating "Cause" to fire him. His employment contract left him free to quit and (on 90 days' notice) compete with FTI. *Id.* ¶¶ 38, 41 & Ex. A § 7(a). The only exception would arise if he were validly terminated for "Cause"; that would trigger a provision barring him from competing with FTI for a year. *But*

*see id.* ¶ 37 (noting that such a restriction would be unlawful in California, where Orszag lives). Further, the contract restricted Cause to egregious conduct, e.g., criminal misconduct, substance abuse, or fraud, *id.* ¶ 42 & Ex. A § 7(b), and it imposed conditions on CL's right to terminate even for Cause. First, a time limit: if CL discovered it had Cause, it had to provide prior written notice of that basis within 90 days or forfeit the right to terminate him. *Id.* ¶ 44 & Ex. A § 7(b). Second, a right to cure: with the exceptions of criminal activity and Cause found to be "incurable," CL was bound to give Orszag "at least thirty (30) days from the receipt of such notice to correct the situation (and thus avoid termination for Cause)." *Id.* ¶ 45 & Ex. A § 7(b).

While they lulled Orszag into inaction with promises of negotiation, FTI and Gunby prepared their trap. During an FTI board meeting held on November 17—just two weeks after Gunby had made his assurances of FTI's "good faith" intent to continue negotiations "transparently"—Gunby misrepresented Orszag's conduct to FTI's board of directors and "█████████████████████████████████████████████████████████ █████████████████████████████████████████" *Id.* ¶ 76. Lacking any genuine basis for finding Cause, the board nevertheless decided "████████████████████████████████████████ ██████" *Id.* ¶ 77. Three days later (on November 20), Gunby ambushed Orszag with a letter purporting to terminate him for Cause. *Id.* ¶¶ 78, 81-82, 88. FTI's written "Notice of Termination" was based only on rank mischaracterizations of the same negotiations Gunby had encouraged; FTI neither explained how the actions the Notice listed constituted "Cause" nor offered Orszag any opportunity to cure those actions. *Id.* ¶¶ 80-82.

This specious "Cause" termination was effected for the express purpose of placing Orszag under a one-year non-compete obligation, which could be imposed only upon termination for "Cause" as that term was defined in the employment agreement (and which FTI made no

4

effort to support with facts even purporting to show that Orszag had violated one of the enumerated obligations). *Id.* ¶¶ 79-82. At this point, FTI had succeeded in its wrongful campaign to sideline Orszag and prevent him from forming the new venture that, with complete transparency, he had told FTI he planned to form if negotiations failed. As FTI well knew, by slapping a claimed non-compete clause on Orszag, it made both clients and employees unlikely to join a venture under such a cloud. *Id.* ¶ 79. Indeed, that was FTI's real reason for its surprise "Cause" termination. *Id.*

Then came the scheme's final stage: FTI filed its specious, bad-faith lawsuit. As Orszag has alleged, the evidence will show that FTI's claims have no merit. Gunby has "conceded that the conduct alleged in the Notice of Termination did not amount to Cause for termination." *Id.* ¶ 81. Further, as the Counterclaims note, "Compass Lexecon's Chairman testified under oath" not only "that he knew of no Cause for Mr. Orszag's termination" but also "that at all times 'what [Orszag] was doing was trying to further the best interests of Compass Lexecon in a way that was perfectly appropriate.'" *Id.* ¶ 1 (citation omitted). Discovery already has shown that FTI was secretly planning to litigate since at least *September* 2023—showing Gunby's protestations of Defendants' "good faith" and "transparen[cy]" in *November* 2023 were false. *Id.* ¶ 73. Discovery has also revealed that Gunby affirmatively lied to FTI's Board (repeatedly) to orchestrate the sham "Cause" termination. *Id.* ¶ 75. This was the implementation of the plan, as Gunby once admitted to the CL Chairman, to "bury [Orszag] in litigation" if he ever tried to leave. *Id.* ¶¶ 1, 35, 90-91, 100, 103-104, 106.

**B.    Procedural Background**

Orszag removed FTI's suit to federal court, and FTI then amended its complaint twice. *See* ECF Nos. 1, 7, 48. Orszag moved to dismiss FTI's Second Amended Complaint, and the Court granted in part and denied in part that motion. *See* ECF Nos. 52, 80, 81. On January 17,

5

2025, Orszag filed his answer, affirmative defenses, and counterclaims against FTI and Gunby. *See* ECF Nos. 87, 88, 89. On February 28, 2025, FTI and Gunby moved to dismiss Orszag's counterclaims. *See* ECF No. 100.

On July 24, 2025, the Court denied the motion as to Orszag's tortious-interference and breach-of-contract claims. *See* ECF No. 113. The Court dismissed the fraud claim on the ground that Gunby's statements to Orszag in November 2023 were "too vague to constitute fraudulent misrepresentation." ECF No. 112, at 16. But it upheld the claim that FTI and Gunby had tortiously interfered with Orszag's business opportunities based on their campaign to cause him professional harm, "done baselessly for the purpose of causing him financial and reputational damage," "result[ing] in actual damage." *Id.* at 22-23.

The Court held that Orszag plausibly pleaded a breach-of-contract claim, because "he never engaged in any of the behavior alleged as grounds for his termination" and because "his conduct during the negotiations, at a minimum, did not violate the non-compete or non-solicitation provisions of the Employment Agreement and so was not subject to the 'immediate' termination effects of those provisions." *Id.* at 21. Ergo, the Court held that Orszag had pleaded facts that, if true, established that he had not acted wrongfully and had given no cause for his termination without warning or opportunity to cure. The same facts, and additional facts pleaded in the counterclaims, establish that FTI's lawsuit against Orszag was pretextual, objectively baseless, and in bad faith—"sham" litigation.

After the Court decided the motion to dismiss, Orszag amended his counterclaims with the consent of FTI and Gunby, to clarify certain allegations bearing on the breach-of-contract claim. *See* ECF No. 114, at 2.

# ARGUMENT

Defendants' belated argument that the *Noerr-Pennington* doctrine immunizes their bad-faith campaign is meritless on multiple levels.

*First*, Orszag has pleaded facts establishing a valid tortious-interference claim that preceded the sham litigation that was the capstone of the campaign. FTI lured Orszag into fake negotiations to keep him from leaving and competing (as was his right); then it ambushed him with a bogus "cause" termination that placed a non-compete cloud over his head and made competition infeasible if not impossible. *Noerr-Pennington* cannot immunize that conduct; it protects only good faith petitioning activity. FTI and Gunby are simply wrong to claim that the sham lawsuit is the only basis for the tortious-interference claim. (Point I.)

*Second*, Orszag also has plausibly pleaded that FTI's case is just that—a sham—which guts Defendants' *Noerr-Pennington* argument in any event. The Court correctly held that the FTI lawsuit is valid support for the tortious-interference claim. ECF No. 112 at 22-23. That lawsuit can be and is "objectively baseless" even though it was not dismissed. That is because the "facts" that supposedly undergird it are false in all material respects, as Orszag has alleged and as CL's Chairman testified under oath (which is why he demanded that FTI remove CL from its baseless complaint). The Court, in its dismissal ruling, found that Orszag had pleaded facts plausibly establishing that CL's Chairman was correct. FTI and Gunby have no basis for claiming now that CL's Chairman and the Court are wrong about the lawsuit. (Point II.)

## I. The Counterclaims Plausibly Plead Wrongful Conduct Supporting the Tortious-Interference Claim

As the Court explained in denying Defendants' motion to dismiss the tortious-interference claim, Orszag pleaded facts showing "(1) intentional and willful acts; (2) calculated to cause damage to [him] in [his] lawful business; (3) done with the unlawful purpose to cause

7

such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." ECF No. 112, at 21.

FTI and Gunby now argue that, because the Court found Orszag's allegations of fraud insufficient, the only wrongful conduct alleged by Orszag is the sham lawsuit. That is incorrect. The counterclaims lay out an entire scheme of other specific bad acts. To start, Defendants lured Orszag into fake negotiations with disingenuous assurances of intent to negotiate in "good faith" and with "transparency." Even if these statements are not sufficient for a fraud claim, they nonetheless amounted to wrongful conduct. *See Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc.*, 2006 WL 2572474, at *24-25 & n.43 (D. Md. Sept. 5, 2006) (dismissing fraud claims without prejudice, but refusing to dismiss tortious-interference claim because, regardless "whether [p]laintiffs can plead fraud with specificity," defendants' "intentional and fraudulent scheme to eliminate [plaintiff] as a competitor" constituted wrongful conduct).

The same is true of the invalid "Cause" termination, which—independent of any litigation—wrongfully stopped Orszag from leaving to start a new firm, as he had (transparently) reserved his right to do if negotiations failed. Sprung on him without notice (in violation of the parties' contract) and without opportunity to cure any alleged performance shortfalls (ditto), this "Cause" termination placed what appeared to be a contractually authorized one-year post-employment ban on any work by him in his field. Clients and potential employees would have been loath to join a new firm started in the dark shadow of the ban FTI claimed to have clamped on Orszag. Counterclaims ¶¶ 77-82. Defendants' invalid "Cause" termination sidelined Orszag as a competitor and effectively forced him to work only for them for a *year*—which he did, to FTI's great benefit. *Id.* ¶ 98. Because the bogus claim that Orszag had been fired for "Cause" tarnished his professional reputation and intentionally interfered with his professional livelihood and ability to rebuild his career, *id.* ¶ 147, it also amounted to wrongful conduct. *See, e.g., Doe*

8

*v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 371 (D. Md. 2017) (finding wrongful conduct sufficiently alleged where former employer spread "injurious falsehoods" that were "inten[ded] to interfere with [plaintiff's] professional livelihood and ability to rebuild her career").

FTI and Gunby are simply wrong to argue (at 1) that only fraud or sham litigation can support a tortious-interference claim. "[W]hat is wrongful conduct is 'incapable of precise definition.'" *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 694 (D. Md. 2012) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994)). Overt wrongdoing (e.g., fraud) can constitute wrongful conduct, but the term is not limited to rigidly categorized torts or crimes: "'in fact, conduct that is quite subtle, nevertheless, can be improper or wrongful.'" *E.g., Sprint Nextel Corp. v. Simple Cell, Inc.*, 2013 WL 3776933, at *4 (D. Md. July 17, 2013) (quoting *Macklin*, 639 A.2d at 119). Wholly apart from FTI's litigation, the scheme set forth in Orszag's counterclaims amply satisfies that standard. The motion should be denied for that reason alone. *See id.* (denying motion to dismiss and noting that whether conduct is wrongful "[g]enerally" must be decided "on a 'case by case basis'") (quoting *Nat. Design. Inc. v. Rouse Co.*, 485 A.2d 663, 675 (Md. 1984)); *see also Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, 2015 WL 164718, at *6 (D. Md. Jan. 12, 2015) (similar where, "at this stage, [plaintiff] has plausibly alleged wrongful conduct"); *Paccar*, 905 F. Supp. 2d at 694-96 (whether conduct is wrongful "must be determined based on the facts and circumstances at hand"; motion to dismiss tortious-interference counterclaim denied).

II.     **The *Noerr-Pennington* Defense Is Both Irrelevant and Unsupported**

Because the facts regarding Defendants' wrongful scheme provide ample support for the tortious-interference claim, and *Noerr-Pennington* has no relevance to conduct other than legitimate petitioning activity, the Court need not even consider *Noerr-Pennington* on this

afterthought motion. *See Luxpro Corp. v. Apple, Inc.*, 658 F. Supp. 2d 921, 928–29 (W.D. Ark. 2009) (rejecting *Noerr-Pennington* defense of conduct that was no "part of [the] right to petition the court"). But even if the sham-litigation allegations were the *only* allegations of bad conduct here (and they are not), the motion provides no basis for reversing the Court's prior ruling that the litigation was baseless and can support the counterclaim. *See* ECF No. 112, at 22-23 (Orszag "has alleged," among other things, that the lawsuit was filed "baselessly for the purpose of causing him financial and reputational damage").

Defendants are wrong to assert that "the application of *Noerr-Pennington* . . . is a question of law that is appropriately decided at this stage of litigation." Mot. at 5 (cleaned up). "[T]he *Noerr-Pennington* doctrine is an affirmative defense," and rarely is that defense upheld based on the pleadings. *Waugh Chapel S., LLC v. United Food & Com. Workers Union Local 27*, 728 F.3d 354, 359-60 (4th Cir. 2013); *see also*, *e.g.*, *Takeda Pharm. Co. v. Zydus Pharm. (USA) Inc.*, 358 F. Supp. 3d 389, 394-95 (D.N.J. 2018) (collecting many cases). Only where "'all facts necessary to the affirmative defense clearly appear *on the face of the complaint*'" can the defense prevail at this stage. *I-Minerals USA, Inc. v. Zielke*, 2015 WL 5457840, at *4 (W.D.N.C. Sept. 16, 2015) (quoting *Waugh Chapel*, 728 F.3d at 360) (emphasis in *Waugh Chapel*).[1] FTI and Gunby do not even acknowledge, much less satisfy, that demanding standard.

---

[1] Many of Defendants' cases are distinguishable for that reason. *See Biltmore Co. v. NU U, Inc.*, 2016 WL 7494474, at *4 (W.D.N.C. Dec. 30, 2016) (Mot. at 7-8) (defendant's own "allegations and admissions actually tend to substantiate the [p]laintiff's position that it has stated a claim on which it may prevail"); *RE/MAX LLC v. M.L. Jones & Assocs., Ltd.*, 2013 WL 4647517, at *4 (E.D.N.C. Aug. 29, 2013) (Mot. at 8) (plaintiff "failed to plausibly allege" objective baselessness; "probable cause to file" the action was apparent from the complaint); *Arnett Physician Grp., P.C. v. Greater LaFayette Health Servs., Inc.*, 382 F. Supp. 2d 1092, 1097 (N.D. Ind. 2005) (Mot. at 11 n.3) (collateral attack on pending state-court proceedings); *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F. Supp. 2d 385, 387-89 (E.D. Va. 2002) (Mot. at 5) (abuse-of-process claim brought after defendant had prevailed in the underlying proceeding; plaintiff failed even to state a claim).

Orszag's allegations amply demonstrate both that the purpose of the "lawsuit" was to hinder competition by "buy[ing] FTI time if Mr. Orszag decided to resign and launch a competing venture," Counterclaims ¶ 1, and that it is "objectively baseless." *See also id.* ¶ 105 (documenting Gunby's admissions the lawsuit was filed to prevent legitimate competition). Contrary to Defendants' assertions (at 8), Orszag pleads "that *all* of FTI's grounds for litigation lack merit." Indeed, the Counterclaims squarely allege that the "lawsuit" is "meritless," "baseless," "bad faith," "pretextual," and "improper." *E.g.*, Counterclaims ¶¶ 1, 93, 122, 146. No more is required. *See, e.g., I-Minerals USA*, 2015 WL 5457840, at *4 (finding that allegations of inadequate factual basis for claims would, "if ultimately credited by a finder of fact in this case," prove litigation to have been a "sham").

Indeed, the Court already found these allegations sufficient when it denied Defendants' motion to dismiss. Defendants previously asserted that FTI's lawsuit was "not 'groundless,'" relying on the same points they renew here. ECF No. 100-1, at 18. Rejecting that argument, the Court credited Orszag's allegations that the case was brought "baselessly for the purpose of causing him financial and reputational damage." ECF No. 112, at 22-23. The Court pointed to his allegations that the reason CL's "Executive Committee" washed its hands of this lawsuit within days after it was filed is that it "believed" the case is "pretextual." Counterclaims ¶ 93 (cited in ECF No. 112, at 22); *see also id.* ¶ 1 (CL Chairman's testimony that "what Mr. Orszag was doing was trying to further the best interests of Compass Lexecon in a way that was

---

Defendants' other cases were not decided on the pleadings. *See In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 149 (3d Cir. 2017) (Mot. at 7) (summary judgment); *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 403 (4th Cir. 2001) (Mot. at 5, 10) (same); *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 307-08 (4th Cir. 2003) (*passim*) (appeal from verdict after trial); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 557 (D. Md. 2013) (Mot. at 7) (decided after defendant had been "granted . . . a preliminary injunction"); *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 475 (E.D.N.Y. 2008) (Mot. at 11 n.3) (summary judgment).

11

perfectly appropriate") (cleaned up).  Having already lost the issue in their motion to dismiss, FTI and Gunby may not relitigate it now.  *See Bone v. Univ. of North Carolina Health Care Sys.*, 2021 WL 395547, at *10 (Feb. 4, 2021) (holding that, because a movant's "Rule 12(c) arguments largely repackage its rejected Rule 12(b)(6) arguments," that "circumstance alone justifie[d] denial of the Motion"), *report and recommendation adopted*, 2021 WL 3196437 (M.D.N.C. Mar. 31, 2021).

FTI and Gunby argue (at 6) that a lawsuit that passes Rule 11 standards cannot be "objectively baseless."  And they trumpet Orszag's failure to get FTI's complaint dismissed on the pleadings—when (of course) it had to be taken as true (even where false) for Rule 12 purposes.  *See* Mot. at 8-11.  But a lawsuit that lacks any valid factual basis—like FTI's here—is objectively baseless even if the (false) allegations suffice to defeat a motion to dismiss.  Orszag has alleged, with particularity, facts showing that everything FTI claims as to the grounds for its suit against him is false, and that the lawsuit is "baseless" and "pretextual"—that there is no factual support for it.  Those allegations must be taken as true, and taken as true establish that FTI's lawsuit is objectively baseless.  *See, e.g.*, *CSX Transp., Inc. v. Peirce*, 974 F. Supp. 2d 927, 942 (N.D.W. Va. 2013) (denying post-trial motion on *Noerr-Pennington* defense because the jury could have found the subject lawsuits were based on "fraudulently manufactured evidence"); *see also Waugh Chapel*, 728 F.3d at 365 ("[T]he fact that there may be moments of merit within a series of lawsuits is not inconsistent with a campaign of sham litigation, for 'even a broken clock is right twice a day.'") (quoting *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 810-11 (9th Cir. 1994)).

At any rate, while it may "sometimes [be] possible to decide whether a lawsuit was objectively baseless 'as a matter of law'" (i.e., where all the facts necessary to that analysis are present on the face of the pleadings), it is *not* possible where (as here) the pleaded facts establish

12

the sham litigation, and Defendants simply claim that they will contest those facts. *Azurity Pharm., Inc. v. Bionpharma Inc.*, 650 F. Supp. 3d 269, 280 (D. Del. 2023) (quoting and distinguishing *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 63 (1993), on which Defendants rely *passim*, on that basis). Here, as in *Azurity*, "[w]hether th[is] lawsuit[ ] w[as] in fact objectively baseless remains an issue for factual development"; that issue cannot be resolved on the pleadings. *Id.* at 281; *see also I-Minerals USA*, 2015 WL 5457840, at *5 (holding "dismissal based on the assertion of the *Noerr–Pennington* affirmative defense inappropriate at this stage in the proceedings").

## CONCLUSION

The Court should deny Defendants' Motion.

DATED: October 27, 2025

Respectfully submitted,

By: */s/ Mark C. Hansen*

Mark C. Hansen (Bar No. 12266)
James M. Webster, III (Bar No. 23376)
David L. Schwarz (admitted *pro hac vice*)
Lillian V. Smith (admitted *pro hac vice*)
Kevin D. Horvitz (admitted *pro hac vice*)
Rachel A. DeLisle (admitted *pro hac vice*)
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: mhansen@kellogghansen.com
Email: jwebster@kellogghansen.com
Email: dschwarz@kellogghansen.com
Email: lsmith@kellogghansen.com
Email: khorvitz@kellogghansen.com
Email: rdelisle@kellogghansen.com

*Counsel for Defendant and Counterclaim Plaintiff Jonathan M. Orszag*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 27, 2025, the foregoing document was filed through the ECF system, which caused a copy of the document to be served on all registered participants identified on the Notice of Electronic Filing. Additionally, the following counsel have been served with sealed and unredacted copies of the Opposition to Counterclaim Defendants' Renewed Dismissal Motion:

William J. Murphy
Daniel P. Moylan
Kirk E. MacKinnon Morrow
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
Tel.: (410) 949-1146
Fax: (410) 659-0436
wmurphy@zuckerman.com
dmoylan@zuckerman.com
kmackinnonmorrow@zuckerman.com

Caroline J. Mehta
Ezra B. Marcus
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel.: (202) 778-1800
Fax: (202) 822-8106
cmehta@zuckerman.com
emarcus@zuckerman.com

Brian L Stekloff
Jolee Porter
Jeremy S. Barber
Kosta Stojilkovic
WILKINSON STEKLOFF LLP
2001 M Street, N.W., 10th Floor
Washington, D.C. 20036
Tel.: (202) 847-4030
Fax: (202) 847-4005
Email: bstekloff@wilkinsonstekloff.com
Email: jporter@wilkinsonstekloff.com
Email: jbarber@wilkinsonstekloff.com
Email: kstojilkovic@wilkinsonstekloff.com

Ivano M. Ventresca
ZUCKERMAN SPAEDER LLP
2100 L Street, N.W., Suite 400
Washington, D.C. 20037
Tel.: (202) 778-1800
Fax: (202) 822-8106
iventresca@zuckerman.com

*Counsel for Plaintiff and Counterclaim Defendant FTI Consulting, Inc.
and Counterclaim Defendant Steven H. Gunby*

*/s/ Mark C. Hansen*
Mark C. Hansen

*Counsel for Defendant and
Counterclaim Plaintiff Jonathan M. Orszag*