**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| FTI CONSULTING, INC., *Plaintiff*, v. JONATHAN M. ORSZAG, *Defendant*. | Case No. 8:23-cv-03200-BAH |
| JONATHAN M. ORSZAG, *Counterclaim Plaintiff*, v. FTI CONSULTING, INC. AND STEVEN H. GUNBY, *Counterclaim Defendants*. | |

**REPLY MEMORANDUM IN SUPPORT OF COUNTERCLAIM DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ..................................................................................................................................... 2

    I.    Mr. Orszag Fails to Show That FTI's Claims Are Baseless and the Sham Exception to the *Noerr-Pennington* Doctrine Applies. ........................................................................................ 2

    II.   Mr. Orszag Cannot Reimagine His Tortious Interference Claim in Order to Evade *Noerr-Pennington* Immunity............................................................................................................... 7

CONCLUSION................................................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Andrx Pharms., Inc. v. Elan Corp., PLC*,
   421 F.3d 1227 (11th Cir. 2005) .................................................................................... 4, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 4

*Ferguson v. Waid*,
   798 F. App'x 986 (9th Cir. 2020) ....................................................................................... 7

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
    335 F.3d 303 (4th Cir. 2003) ............................................................................................. 6

*Leading Tech. Composites, Inc. v. MV2, LLC*,
   2019 WL 4962312 (D. Md. Oct. 8, 2019) ......................................................................... 4

*Luxpro Corp. v. Apple, Inc.*,
   658 F. Supp. 2d 921 (W.D. Ark. 2009). ............................................................................ 5

*Martello v. Blue Cross and Blue Shield of Md., Inc.*,
   795 A.2d 185, 193–94 (Md. App. 2002) ........................................................................... 8

*Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*,
   404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) .................................................................. 2

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
   948 F. Supp. 2d 538 (D. Md. 2013) .................................................................................. 5

*Mosely v. Bd. of Educ. of Chi.*,
   434 F.3d 527 (7th Cir. 2006) ............................................................................................. 6

*Ningde Amperex Tech. Ltd. v. Zhuhai CosMX Battery Co., Ltd.*,
   2024 WL 83507 (E.D. Tex. Jan. 8, 2024) ......................................................................... 6

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) .......................................................................................................... 2, 7

**INTRODUCTION**

Because the *Noerr-Pennington* doctrine immunizes FTI's legitimate petitioning activity from attack, Mr. Orszag must show that each and every claim in FTI's lawsuit was baseless in order to invoke the sham exception and defeat immunity. But rather than try to identify allegations that might satisfy this requirement, Mr. Orszag instead turns the inquiry on its head, suggesting that because (in his view) he is right as to every disputed fact and FTI is wrong, FTI's lawsuit is necessarily baseless. This argument is unavailing. Regardless of how the factual disputes are ultimately resolved, Mr. Orszag has not satisfied his burden to show that all of FTI's claims are baseless. Indeed, he has never alleged that several of FTI's claims—including the one for breach of fiduciary duty based in part on his sharing of FTI's confidential information—are baseless.

Crucially, he also does not acknowledge, let alone reckon with, FTI's important successes in the litigation to date on issues central to its restrictive covenant claims. And he has no response at all to FTI's argument that this record amply confirms that FTI's claims were accepted by this Court as objectively well-founded. Those claims cannot be considered baseless following the Court's earlier rulings. Mr. Orszag therefore has not, and cannot, overcome *Noerr-Pennington* immunity, and his tortious interference claim must be dismissed.

Confronted with the prospect of *Noerr-Pennington* immunity, Mr. Orszag tries—and fails—to recast his tortious interference claim as based on an entire "constellation of facts" that gave rise to FTI's lawsuit. Mixing colorful metaphors, he now envisions the lawsuit as the "capstone of the campaign" waged by FTI and Mr. Gunby to cause him professional harm. Opp. 1-2, 7. That argument is belied by Mr. Orszag's Counterclaims, as limited by this Court's rulings. As this Court discerned, the tortious interference claim rested on (1) alleged fraudulent misrepresentations by FTI and Mr. Gunby, and (2) FTI's filing of an allegedly bad faith lawsuit. ECF No. 112 at 22. When the Court dismissed Mr. Orszag's fraud allegations, it explained that

going forward, only the predicate act of filing a "bad faith lawsuit" remained as a basis for the tortious interference claim.

Mr. Orszag has never before invoked this "constellation of facts" theory to support his ever-expanding tortious interference claim, and he may not do so now to suit his need, particularly after the scope of the claim has been extensively litigated and addressed by the Court. Mr. Orszag is attempting to make an end run around the Court's order and revive his dismissed fraud allegations. This Court properly understood that Mr. Orszag's tortious interference claim continued to rest only on FTI's filing of its lawsuit. Absent any grounds for revisiting that ruling months later, the claim is barred under the *Noerr-Pennington* doctrine.

## ARGUMENT

**I.   Mr. Orszag Fails to Show That FTI's Claims Are Baseless and the Sham Exception to the *Noerr-Pennington* Doctrine Applies.**

Mr. Orszag does not dispute that *Noerr-Pennington* immunity bars his tortious interference claim as long as just one of FTI's claims against him is not objectively baseless. *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 62-63 (1993) (immunity attaches where the plaintiff had "a reasonable belief that there is a chance that *a claim* may be held valid upon adjudication") (cleaned up and emphasis added); *Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC,* 404 F. Supp. 2d 1214, 1222 (E.D. Cal. 2005) (holding that an entire "lawsuit" must be objectively baseless to defeat immunity, and an allegation "that a single claim" in a multi-count complaint is baseless does not suffice). To overcome immunity, therefore, Mr. Orszag accepts that he must allege facts plausibly showing that each of FTI's claims was baseless. Opp. 11. He has not done so.

1. To get around this pleading deficiency, Mr. Orszag makes the exaggerated argument that he "alleged, with particularity, facts showing that *everything* FTI claims as to the grounds for its

2

suit against him is false." Opp. 11-12 (emphasis added). In fact, he identifies four paragraphs that (in his view) "squarely allege that the 'lawsuit' is 'meritless,' 'baseless,' 'bad faith,' 'pretextual,' and 'improper.'" Opp. 11 (citing Counterclaims ¶¶ 1, 93, 122, 146). These are nothing more than conclusory labels that the Court should not credit. *See* ECF No. 122 ¶ 1 (alleging that Counterclaim Defendants were "prepar[ing] a bad-faith lawsuit"); *id.* ¶ 93 (alleging, "[o]n information and belief," that the Compass Lexecon Executive Committee "believed that the lawsuit was pretextual"); *id.* ¶ 122 (referencing "improper lawsuit and bad-faith termination scheme"). The fourth (¶ 146) appears to be a mistaken citation to an earlier version of Mr. Orszag's Counterclaims (ECF No. 86) and is identical to paragraph 122 in the operative amended counterclaims (ECF No. 122). None of these paragraphs alleges with any specificity why each of FTI's claims is baseless.

Labels aside, as this Court has concluded, Mr. Orszag never even challenged substantial aspects of FTI's case against him, much less alleged that all of FTI's claims were baseless. In his Counterclaims, Mr. Orszag never disputed critical facts underpinning FTI's breach of fiduciary duty claim. FTI alleged, in detail, that while still employed at Compass Lexecon, Mr. Orszag used confidential internal information to solicit outside investment for his competing business. *E.g.*, ECF No. 48 ¶ 76 ("The investor presentation . . . made clear that Mr. Orszag aspired to appropriate the *entire* Compass Lexecon business and operation away from FTI's control and inject it into a new corporate entity under his ownership and control"); *id.* ¶ 79 (outlining confidential information Mr. Orszag used in investor presentation). Mr. Orszag moved to dismiss that claim, but the Court denied that request, observing that he did "not appear to dispute" the existence of his duty or his alleged breach. *See* ECF No. 80 at 19-20. Mr. Orszag now insists (without citation) that his Counterclaims *do* allege that he never "misuse[d] CL confidential information." Opp. 2. In

3

fact, his Counterclaims make no mention of FTI's breach-of-fiduciary-duty allegations at all, let alone demonstrate that this claim is baseless.

Mr. Orszag also has never meaningfully challenged FTI's claims for breach of contract based on two unpaid promissory notes. He did not move to dismiss those claims, nor does he now identify any factual allegations suggesting that these claims are baseless. *See* ECF Nos. 52, 80 at 10 (noting that Mr. Orszag never sought dismissal of several claims); *see also Leading Tech. Composites, Inc. v. MV2, LLC,* No. CCB-19-1256, 2019 WL 4962312, at *5 n.6 (D. Md. Oct. 8, 2019) (finding a "claim of baselessness . . . somewhat belied by the fact that" the party asserting it did not "file a motion to dismiss").

Mr. Orszag does not address any of these deficiencies, appearing to rest on his belief that generalized assertions of overall baselessness suffice. They do not. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

2. Remarkably, Mr. Orszag's opposition simply ignores that FTI has secured multiple favorable rulings from this Court on issues central to the restrictive covenants FTI seeks to enforce. He cannot dispute that these decisions confirm the objective reasonableness of FTI's action to enforce the restrictive covenants. He does not acknowledge, for example, the Court's decision granting FTI a critical declaratory judgment holding that Maryland, not California, law governs the restrictive covenants in his employment contract. ECF No. 49. Nor does he acknowledge that the Court has repeatedly found those covenants facially enforceable. *See* ECF No. 112 at 10-11; ECF No. 80 at 16-19. FTI's success in establishing the validity of those covenants underscores that it was eminently reasonable for FTI to file suit to enforce those provisions. *See Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005) (affirming grant of *Noerr-*

4

*Pennington* immunity where the party asserting it had "made a winning argument" and thus it was "manifest" that the proceedings "were not objectively baseless"); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 557 (D. Md. 2013) (holding, on a Rule 12(b)(6) motion, that lawsuit was not objectively baseless because "not only did the Court deny [defendant's] Motion to Dismiss, but it also granted [plaintiff] a preliminary injunction").[1]

By opting not to respond to FTI's argument about the significance of these rulings, Mr. Orszag has forfeited any further argument. Indeed, even Mr. Orszag's caselaw (at Opp. 10) supports this conclusion. One district court decision he cites concluded that *Noerr-Pennington* immunity applied where the party asserting it had successfully obtained preliminary injunctions and the opposing party "did not challenge" the proposition that these rulings proved that "the litigation was not objectively baseless." *See Luxpro Corp. v. Apple, Inc.*, 658 F. Supp. 2d 921, 928 (W.D. Ark. 2009).

3. When Mr. Orszag does invoke the Court's prior rulings, he does so selectively based on a misapprehension of what the Court actually held. Specifically, Mr. Orszag contends that when holding that he had adequately pleaded a tortious interference claim (at least on the "bad faith lawsuit" theory), the Court *also* "rule[d] that [FTI's] litigation was baseless." Opp. 10; *see also id.* 2, 11-12 (suggesting that in its ruling on FTI's motion to dismiss, the Court found Mr. Orszag's allegations about the "bad faith" lawsuit "sufficient" to find the lawsuit baseless). The Court made no such ruling because it did not have the *Noerr-Pennington* defense before it. Instead, the question before the Court was whether, assuming the truth of his allegations, Mr. Orszag had adequately

---

[1] Mr. Orszag mistakenly argues that *Metropolitan Regional* was not decided on the pleadings. Yet it was decided on a Rule 12(b)(6) motion. In its ruling, the court considered its own preliminary injunction ruling, just as this Court should consider FTI's partial declaratory judgment and the Court's rulings on the facial validity of the restrictive covenants.

5

pleaded his *own* claims for relief—not whether he had shown each of *FTI's* claims to be baseless. The Court's ruling thus provides no support for Mr. Orszag's argument that the baselessness of FTI's lawsuit has already been established.

Mr. Orszag further misapprehends how courts define "baselessness." He insists that because the facts as he alleged them must be taken as true—and in fact, he contends, *are* true—while all those alleged by FTI are false, the lawsuit is necessarily baseless. Opp. 2, 12. But as the Fourth Circuit explained when rejecting a similar claim in a license dispute, "[t]he mere existence of a possible defense to [a] claim does not render the lawsuit a sham." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003) (noting also that it is "irrelevant" whose arguments ultimately prevail). And, as in *IGEN*, FTI has "reasonable arguments" in support of its positions—including arguments that the Court has adopted. *See id.* The operative question is whether the party asserting baselessness can establish that "no reasonable litigant" in its opponent's position "could have expected to succeed" on its claims. *Id.* And as discussed above, Mr. Orszag's own litigation choices along with this Court's rulings in FTI's favor confirm that it was reasonable for FTI to believe its claims would succeed.

4. Finally, Mr. Orszag suggests that this motion comes both too early and too late. His contention that it should have been filed earlier (Opp. 1, 2, 7) is incorrect. *Noerr-Pennington* is properly raised in a Rule 12(c) motion because it is an affirmative defense. *See Ningde Amperex Tech. Ltd. v. Zhuhai CosMX Battery Co., Ltd.,* No. 2:22-CV-00232-JRG, 2024 WL 83507, at *1 (E.D. Tex. Jan. 8, 2024) (a request for *Noerr-Pennington* immunity is "appropriately brought as a motion pursuant to Federal Rule of Civil Procedure 12(c) or as a Rule 56 motion for summary judgment"); *Mosely v. Bd. of Educ. of Chi.,* 434 F.3d 527, 533 (7th Cir. 2006) ("the earliest possible time to consider [an affirmative defense] would normally be after the answer has been

filed, if it is possible to decide the issue through a Rule 12(c) motion for judgment on the pleadings").

Mr. Orszag's suggestion that the motion is premature is also wrong. As the Supreme Court has explained, where "there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law." *PRE*, 508 U.S. at 63. And Mr. Orszag relegates to a footnote several cases from within the Fourth Circuit that have granted *Noerr-Pennington* immunity based on Rule 12 motions. Opp. 10 n.1. Consistent with those decisions, appellate courts have affirmed Rule 12(c) dismissals based on *Noerr-Pennington*. *See, e.g.*, *Ferguson v. Waid*, 798 F. App'x 986, 988 (9th Cir. 2020); *Andrx Pharms*, 421 F.3d at 1234. This Court may dismiss Mr. Orszag's tortious interference claim on the same ground.

## II. Mr. Orszag Cannot Reimagine His Tortious Interference Claim in Order to Evade *Noerr-Pennington* Immunity.

Seeking to distract the Court from the tortious interference claim that he pleaded and this Court analyzed, Mr. Orszag devotes the bulk of his opposition to arguing that his tortious interference claim sweeps in the "entire scheme" allegedly perpetrated by FTI and Mr. Gunby to cause him professional harm. *See* Opp. 1-9. Indeed, he now insists that the entire "constellation of facts" underlying the dispute "establish[es] the wrongful-conduct element of his claim" and that the lawsuit itself was merely the culmination of FTI's wrongful "campaign" against him. *Id.* at 2, 7. In his telling, the *Noerr-Pennington* doctrine is therefore irrelevant, because the tortious interference claim stretches to include conduct far beyond just the filing of FTI's lawsuit.

However, this Court should apply *Noerr-Pennington* based on the claim Mr. Orszag actually pleaded, as limited by the Court's prior rulings. Mr. Orszag clearly identified two factual bases for his tortious interference claim: (1) the same alleged misrepresentations underlying his fraud claim, and (2) FTI's purportedly "bad faith" filing of its lawsuit against him. ECF No. 86

7

¶ 144; Opp. to Mot. to Dismiss (ECF No. 102 at 35) ("Defendants' final argument . . . that they did not use wrongful means fails for the same reason as their argument against Mr. Orszag's fraud claim fails."). On FTI's motion, the Court dismissed the fraud claim and further ruled that "even though [it had] determined that Orszag did indeed fail to state a claim for fraud, his tortious interference claim can still move forward based on Orszag's additional allegations that FTI pursued a 'bad faith' lawsuit against him." ECF No. 112 at 22.

Mr. Orszag mischaracterizes that ruling as having "upheld the claim that FTI and Gunby had tortiously interfered with Orszag's business opportunities *based on their campaign to cause him professional harm*." Opp. 6 (emphasis added). Not so. The Court's ruling was clear that the only surviving tortious interference theory rested on FTI's purported bad faith litigation. *See* ECF No. 112 at 22. The Court did not allow that a sweeping "campaign" before and after the lawsuit's filing might be shoehorned into Mr. Orszag's claim. This is unsurprising given that this brief is the first time Mr. Orszag has advanced this version of his claim before the Court. Mr. Orszag cannot now revise the Court's ruling to fit his revised theory, any more than he can recast the Counterclaims themselves. Both are clear that his claim now rests only on the allegation of bad faith litigation.[2]

Perhaps sensing his difficulty, Mr. Orszag next contends that FTI erroneously argued that "only fraud or sham litigation can support a tortious interference claim." Opp. 9. In fact, it was *Mr. Orszag* who presented those two acts as the grounds for his tortious interference claim. FTI's point is simply that Mr. Orszag has not pleaded other tortious conduct. Similarly, Mr. Orszag's

---

[2] Mr. Orszag likewise cannot leverage this new "wrongful campaign" theory to revive his fraud claim. Maryland law is clear that once that claim was dismissed, that basis for the tortious interference claim fell away. *See Martello v. Blue Cross and Blue Shield of Md., Inc.*, 795 A.2d 185, 193–94 (Md. App. 2002) (dismissing tortious interference claim where it was "dependent on a contingency and the contingency never came to pass").

insistence that conduct constituting tortious interference need not "rise to the level of fraud" is also a red herring. Opp. 2. Whether misconduct short of fraud could support a hypothetical tortious interference claim is beside the point when Mr. Orszag's claim rests on no such allegation. In any event, the Court already rejected Mr. Orszag's allegations that he was deceived—so it is irrelevant whether the alleged misconduct is viewed as fraud or some lesser form of misrepresentation.

## CONCLUSION

For all the reasons stated herein and in the supporting memorandum, the Court should grant Counterclaim-Defendants' motion for judgment on the pleadings.

ZUCKERMAN SPAEDER LLP

*/s/ William J. Murphy*
William J. Murphy (Fed. Bar No. 00497)
Daniel P. Moylan (Fed. Bar No. 26476)
Kirk E. MacKinnon Morrow (Fed Bar No. 31703)
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 949-1146 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com
kmackinnonmorrow@zuckerman.com

Ivano Ventresca (Fed. Bar No. 30763)
2100 L Street NW, Suite 400
Washington, DC 20036
(202) 778-1800 (office)
(202) 822-8106 (fax)
iventresca@zuckerman.com

WILKINSON STEKLOFF LLP

Brian L. Stekloff (Fed. Bar No. 26835)
Kosta Stojilkovic (admitted *pro hac vice*)
Jolee Porter (admitted *pro hac vice*)2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000 (office)

9

(202) 847-4005 (fax)
bstekloff@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com

Jeremy Barber (admitted *pro hac vice*)
130 W. 42nd Street, 24th Floor
New York, NY 10036
(212) 294-8910 (office)
(202) 847-4005 (fax)
jbarber@willkinsonstekloff.com

*Counsel for FTI Consulting, Inc. & Steven Gunby*

10

## **CERTIFICATE OF SERVICE**

I certify that on November 10, 2025, I caused the foregoing paper to be served via CM/ECF on all counsel of record.

                                                    */s/ William J. Murphy*
                                                   William J. Murphy

                                                 *Counsel for FTI Consulting, Inc. & Steven Gunby*