UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| FTI CONSULTING, INC.,<br><br>    *Plaintiff*,<br> v.<br><br>JONATHAN ORSZAG,<br><br>    *Defendant*.<br><br>JONATHAN ORSZAG,<br><br>    *Counterclaim Plaintiff*,<br> v.<br><br>FTI CONSULTING, INC. &<br>STEVEN GUNBY,<br><br>    *Counterclaim Defendants*. | Case No. 8:23-cv-03200-BAH |

**JOINT STATUS REPORT**

  Plaintiff-Counterclaim Defendant FTI Consulting, Inc. and Counterclaim Defendant Steven H. Gunby, and Defendant-Counterclaim Plaintiff Jonathan Orszag, respectfully submit this Joint Status Report in response to the Court's Order dated December 18, 2025, ECF No. 162. The parties met and conferred via video conference on December 22, 2025.

  The parties have reached agreement on search terms for emails for both extended periods (i.e., December 21, 2024, to March 31, 2025, for communications with Dr. Israel, and December 21, 2024, to February 28, 2025, for communications with everyone else covered by the RFPs at issue). The parties have not, however, been able to reach agreement on the method or scope of review for text messages for either of the extended periods.

A.  **FTI's Position**

The parties have agreed to search terms for Requests for Production Nos. 1, 3, and 4 for the extended date range.  For emails between Mr. Orszag and individuals other than Dr. Israel, Mr. Orszag will review 10,616 documents.  As to Dr. Israel, Mr. Orszag will review 115 documents. These numbers are significantly lower than the 88,000 document hits referenced at the hearing.

The parties have not reached agreement as to Request for Production No. 2, which concerns Mr. Orszag's text communications with seven individuals, including Dr. Israel.  Before the December 18 hearing, Mr. Orszag had agreed to perform a linear review of text messages—i.e., with no search terms—through December 20, 2024.  Mr. Orszag had not asserted an undue burden argument with reviewing such text messages and, in the meet and confer on December 22, 2025, his counsel confirmed that he will still perform a linear review of such messages through December 20, 2024.

But, for the text messages with those seven individuals from December 21, 2024, through February 28, 2025 (texts with individuals other than Dr. Israel) or March 31, 2025 (texts with Dr. Israel), Mr. Orszag has refused to perform a linear review and insists that FTI propose search terms for this period of text messages on the grounds that this additional review is unduly burdensome. Before 11:25 a.m. on the day of this filing, Mr. Orszag, through counsel, had not provided the number of additional text messages for this period or the total number of text messages he has already agreed to review linearly.  Instead, his counsel had estimated—based on an "extrapolation" from Mr. Orszag—that the additional review may be around 3,000 or 4,000 additional text messages in total, across all seven individuals.  FTI requested on multiple occasions that Mr. Orszag provide the actual number of messages, including with each individual.  At 11:25 a.m. this morning, Mr. Orszag's counsel revealed that the number of messages across all individuals was

2

5,868 messages. In response, FTI again asked for the number of messages between each individual and Mr. Orszag. Mr. Orszag declined to provide that information.

Although the review of these messages is not an undue burden, FTI offered that Mr. Orszag could limit his review of these messages, for everyone except Dr. Israel, to the period ending January 31, 2025, while reserving its rights to ask for further review through February 28, 2025. As to Dr. Israel—and without knowing the actual number of messages at issue with Dr. Israel—FTI asked that a linear review continue through March 31, 2025, due to the vital importance of those messages to evaluate the losses of Compass Lexecon clients and professionals. As FTI explained, search terms are particularly unsuited to text messages because such messages are informal and thus less likely to hit on search terms, which is why the parties had previously agreed to a linear review.

Mr. Orszag has resisted FTI's proposal, citing the burdens on him to perform a "filter review"—*i.e.*, to remove or redact underlying client confidential information from his texts, before the texts are turned over to his counsel for a responsiveness review. For example, his counsel recently described the burden for Mr. Orszag to review two to three additional months of text messages as "a massive and necessary undertaking to protect clients."

FTI therefore proposed a further accommodation: Because Mr. Orszag's burden argument is based on his personal review of these text messages for client confidentiality, FTI proposed a court-appointed filter review to screen these messages for client confidentiality to avoid the added burdens claimed by Mr. Orszag. Under FTI's proposal, each side would split the costs for such court-appointed review. Mr. Orszag has not accepted FTI's proposal for a court-appointed review.

Because text messages are a critical area of discovery on which FTI has been seeking production for well over a year, FTI finds it necessary to reengage the Court on its proposals,

including a court-appointed filter review, as a practical and reasonable way to address the claimed burdens on Mr. Orszag. FTI asks that Mr. Orszag complete a linear review of text messages, consistent with the parties' prior agreement.

### B. Mr. Orszag's Position

The Court ordered Mr. Orszag to provide additional discovery to FTI beyond the December 20, 2024 cutoff date Mr. Orszag had offered for FTI's RFPs 1-4, 8-9—extending the cutoff date to March 31, 2025, for Mr. Orszag's communications with Dr. Israel, and to February 28, 2025, for Mr. Orszag's communications with everyone else covered by these RFPs. *See* Order, ECF No. 162 (Dec. 18, 2025) ("Order"). The Court recognized that extending these cutoff dates would impose an additional burden on Mr. Orszag. *See* Ex. A, Hr'g Tr. 4:21-5:2 (Dec. 18, 2025) (agreeing that the proposed review would "double[] the review population for Mr. Orszag"); *id.* 23:7-10 (agreeing that any revised search terms must "not overly increase the burden on Mr. Orszag"). The Court also recognized that there were legitimate concerns about the relevance of the discovery sought beyond December 20, 2024, that must be balanced against that burden. *Id.* 13:7-9 ("It depends on what the nature of the claims are, the nature of the requests are and what the burden of the actual production is."); *id.* 19:7-9 ("[I]t seems unlikely just from a burden versus relevance perspective that there would be something entirely new during the subsequent period."). Accordingly, the Court ordered that the appropriate approach was to apply narrow search terms to communications in these extended periods to identify potentially relevant documents and reduce the burden on Mr. Orszag.

The Court's Order is clear: "[T]he parties shall, on or before December 22, 2025, meet and confer as to the appropriate search terms for the extended periods." And the Court expressly confirmed that search terms are the appropriate approach for all communications with Dr. Israel—

again, all communications, not limited to emails: "With regards to Dr. Israel, him specifically, that will be extended to the end of March, March 31st of 2025. Same process for those communications. You'll meet and confer, and you'll talk about search terms within the same time period. That seems fairly straightforward to me. We're talking about one individual, and so these search terms are going to have to be more limited than the other search terms because we are talking about Dr. Israel and Dr. Israel alone." Ex. A, Hr'g Tr. 34:11-18.

Consistent with the Court's rulings, Mr. Orszag asked FTI to propose search terms to apply to Mr. Orszag's communications in the extended periods. The parties have agreed on search terms to apply to *emails* in the extended periods, with Mr. Orszag agreeing to search terms that hit on 10,616 additional emails during the extended periods. But for text messages, FTI refused to propose search terms, instead insisting that Mr. Orszag review every single text message he exchanged with every individual covered by the RFPs at issue in the extended periods (a "linear review"). *See* Ex. B at 1, Emails Between L. Smith and I. Ventresca et al. (Dec. 23, 2025, 12:33 p.m.).[1]

A linear review of text messages is not relief FTI sought in its letter-motion, nor is it relief FTI sought or even mentioned at the December 18 hearing—and it is certainly not what the Court ordered. A linear review of text messages is unduly burdensome. Mr. Orszag has 5,868 text messages with the relevant individuals in the extended periods. Of those 5,868 text messages,

---

[1] In the parties' negotiations, *see* Ex. B at 4, 7, FTI has iterated on its demand in various ways, but all versions of its proposal would require Mr. Orszag to undertake a linear review of all his texts with Dr. Israel through March 31, 2025, and to undertake a linear review of at least some of his texts with the other individuals covered by these RFPs in the extended periods—in exchange for changes to the length of the extended periods for individuals other than Dr. Israel. Mr. Orszag is perplexed by FTI's willingness, in its various proposals, to backtrack on its need for the extended periods it told this Court were so essential, in exchange for linear review of text messages, which fails to narrow the review population to the most-likely-to-be-relevant communications.

Mr. Orszag would need to review at least 5,500 *personally* because of client confidentiality concerns—including in several cases in which *counsel who have appeared in this case* are directly adverse, raising serious potential conflict concerns if information is not properly screened.[2] This is on top of the thousands of emails from the extended periods Mr. Orszag must review personally for confidentiality issues. And it is further on top of the nearly 25,000 text messages and 2,200 emails that Mr. Orszag is already personally reviewing for the period prior to December 21, 2024. Mr. Orszag's ongoing confidentiality review has been massively burdensome and time-consuming and has confirmed that his communications contain mountains of confidential (and irrelevant) materials that cannot be shared with counsel without violating Protective Orders and client confidentiality agreements. Adding 5,500 more text messages to that review is untenable.[3]

As the Court already recognized—and ordered—search terms are the appropriate way to address this burden. Because FTI refused to propose any search terms for text messages for the extended periods, Mr. Orszag proposed a search string for text messages based on FTI's other search terms for the extended periods—but broader, in an effort at compromise, to address FTI's stated concerns about text messages being more informal.[4] Mr. Orszag informed FTI that this

---

[2] Mr. Orszag is also barred by Protective Orders entered in cases in which he serves as an expert from sharing confidential information with any third party, including his counsel in this litigation.

[3] FTI argued during the parties' meet-and-confer that text messages are easier to review than emails and thus thousands of text messages are easily and quickly reviewed. That is largely not true for Mr. Orszag. He routinely discusses detailed client matters with his teams by text, sending files and other substantive information that requires a careful and time-intensive review. That has been confirmed by his review of text messages in this case, which have required substantial redactions to protect client information before they could be shared with counsel.

[4] The search string Mr. Orszag proposed to run on text messages in the extended periods is: (engag* OR transition* OR (reach* w/3 out) OR "come with" OR join* OR move* OR "moving" OR plan* OR leav* OR hire* OR hiring OR employ* OR offer* OR equity OR valuation OR Goldman OR resign* OR depart*) AND (Econic OR newco OR "new co" OR CL OR "compass" OR "compass Lexecon").

6

search string hit on approximately 35% of the total text messages between Mr. Orszag and the individuals covered by the RFPs in the extended periods.[5]  Mr. Orszag sought to negotiate these search terms and further offered to consider any revisions to the search string FTI wanted to propose.  FTI rejected these search terms and refused to negotiate, insisting on a linear review.

One of FTI's stated bases for insisting on a linear review was that it suspects that "Mr. Orszag and Dr. Israel would have been communicating about the transition of specific clients and professionals to Econic during Q1-25, which is vital evidence that would not be amenable to discovery through the use of search terms due to the extent of individual variation."  Ex. B at 3.  While Mr. Orszag disputes that any such communications exist, and further disputes that any communications that did exist would be relevant to the issues in this case because Mr. Orszag was indisputably free to compete and solicit in Q1 2025, this is *precisely* the type of exercise that is well-suited to search terms.  Mr. Orszag asked FTI both by email and on the December 22 meet-and-confer why search terms could not be used for these "specific clients and professionals," and offered to add any proposed terms to capture any specific individual or client that FTI claimed to be concerned about.  FTI refused to explain why search terms could not be used, refused to provide any names, and refused to propose edits to Mr. Orszag's proposed search string.

FTI further argues that Mr. Orszag has already agreed to conduct linear review of text messages for the agreed-to review periods through December 20, 2024, so FTI is entitled to more linear review for the extended periods.  *First*, that is not accurate.  Mr. Orszag only agreed to conduct a linear review for one RFP (No. 2) and for a limited set of custodians.  For all other RFPs,

---

[5] Subsequent information from Mr. Orszag's e-discovery vendor indicates that the search string actually hits on approximately 49% of the total text messages between Mr. Orszag and the individuals covered by the RFPs in the extended periods.  That number remains high, and Mr. Orszag submits means there should be further narrowing of the search string.

7

the parties agreed to search terms to be run across emails *and text messages*. In other words, the pre-existing, agreed-to review protocol in this case already utilizes search terms for text messages. *Second*, Mr. Orszag only agreed to conduct a linear review in the earlier periods with the understanding that the linear review was limited to the period of January 1, 2023, to December 20, 2024. His agreement to that linear review was an effort at compromise, and was the absolute maximum burden he believed he could reasonably undertake. And, as he predicted, the burden of that linear review has proven significant. Increasing that burden by thousands of text messages through the linear review that FTI now seeks is unduly burdensome and disproportionate to the needs of this case. It is also wholly inconsistent with the Court's Order.[6]

Mr. Orszag therefore stands on his objection to conducting linear review of text messages in the extended periods and respectfully requests that the Court enforce its previous Order that search terms be used on all communications in the extended periods. More specifically, Mr. Orszag respectfully requests that the Court order FTI to propose further narrowing revisions to the search terms Mr. Orszag proposed for text messages. If FTI will agree to a few modest revisions to these search terms to bring the hit counts down from their current total (about 49% of

---

[6] FTI's suggestion that the parties use a court-appointed special master to conduct confidentiality review to reduce the burden on Mr. Orszag, raised for the first time on the parties' December 22 meet-and-confer, is not a serious proposal. *First*, it is far too late in the discovery process to propose something like this, which would take weeks if not months to set up, if it could be set up at all. The parties have been discussing these confidentiality issues since at least 2024 and FTI has recognized why it is something Mr. Orszag needs to do. If FTI wanted to propose this, the time to do so was years ago. *Second*, such a proposal is highly unlikely to be possible or workable. Mr. Orszag would need to obtain client and court approval in every case in which he is engaged, as would Dr. Israel, for permission to violate existing confidentiality agreements and Protective Orders. That is unlikely to be forthcoming, but even if it were, it would take months. And it would still require one person to review thousands of communications—without any of the necessary background or knowledge to assess or address confidentiality issues—leading to delay and mistakes. There is no alternative to Mr. Orszag personally conducting this review to protect client confidences and to comply with Protective Orders to which he is bound, and any burden inquiries must account for these efforts he must undertake.

all texts) to something in the range of 30-35% of all texts, Mr. Orszag does not anticipate any further disputes or need for the Court's intervention.

Date: December 23, 2025

KELLOGG, HANSEN, TODD
  FIGEL & FREDERICK, P.L.L.C.

*/s/ Mark C. Hansen* (*with permission*)
Mark C. Hansen (Bar No. 12266)
James M. Webster, III (Bar No. 23376)
David L. Schwarz (admitted *pro hac vice*)
Lillian V. Smith (admitted *pro hac vice*)
Kevin D. Horvitz (admitted *pro hac vice*)
Rachel A. DeLisle (admitted *pro hac vice*)
1615 M Street, NW, Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
mhansen@kellogghansen.com
jwebster2@kellogghansen.com
dschwarz@kellogghansen.com
lsmith@kellogghansen.com
khorvitz@kellogghansen.com
rdelisle@kellogghansen.com

*Counsel for Defendant/Counterclaim Plaintiff Jonathan M. Orszag*

Respectfully submitted,

ZUCKERMAN SPAEDER LLP

*/s/ Ivano Ventresca*
William J. Murphy (Fed. Bar No. 00497)
Daniel P. Moylan (Fed. Bar No. 26476)
Sara Alpert Lawson (Fed. Bar No. 31011)
Kirk MacKinnon Morrow (Fed. Bar No. 31703)
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 332-0444 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com
slawson@zuckerman.com
kmackinnonmorrow@zuckerman.com

Ivano Ventresca (Fed. Bar. No. 26835)
Ezra Marcus (admitted *pro hac vice*)
2100 L Street, NW, Suite 400
Washington, D.C. 20037
(202) 778-1800 (office)
(202) 822-8106 (fax)
iventresca@zuckerman.com
emarcus@zuckerman.com

WILKINSON STEKLOFF LLP

Brian L. Stekloff (Fed. Bar No. 26835)
Kosta Stojilkovic (admitted *pro hac vice)*
Jolee Porter (admitted *pro hac vice)*
2001 M Street NW, 10th Floor
Washington, D.C. 20036
(202) 847-4000 (office)
(202) 847-4005 (fax)
bstekloff@wilkinsonstekloff.com
kstojilkovic@wilkinsonstekloff.com
jporter@wilkinsonstekloff.com

Jeremy Barber (admitted *pro hac vice*)
130 W. 42nd Street, 24th Floor
New York, New York 10036
(212) 294-8910 (office)
(202) 847-4005 (fax)
jbarber@wilkinsonstekloff.com

2

*Counsel for Plaintiff/Counterclaim Defendant  
FTI Consulting, Inc. and Counterclaim  
Defendant Steven H. Gunby*

3

## CERTIFICATE OF SERVICE

I certify that today I caused a copy of the foregoing to be filed in this matter through the Court's CM/ECF system, causing a copy to be served on all registered participants identified on the Notice of Electronic Filing.

Date: December 23, 2025

> */s/ Ivano Ventresca*
> Ivano Ventresca
>
> *Counsel for FTI Consulting, Inc.*