UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| FTI CONSULTING, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>JONATHAN M. ORSZAG,<br><br>*Defendant*.<br><br>JONATHAN M. ORSZAG,<br><br>*Counterclaim Plaintiff*,<br><br>v.<br><br>FTI CONSULTING, INC. AND<br>STEVEN H. GUNBY,<br><br>*Counterclaim Defendants*. | Case No. 8:23-cv-03200-BAH |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
LEAVE TO FILE THIRD AMENDED COMPLAINT**

Since filing its Second Amended Complaint in January 2024, FTI has learned that Jonathan Orszag did not act alone to raid Compass Lexecon by diverting its professionals and clients to his new, competing firm, Econic Partners, LLC ("Econic"). Dr. Mark Israel, while serving as Compass Lexecon's President from January 2024 through March 2025, secretly conspired with Mr. Orszag to undermine Compass Lexecon from within and advance Econic's interests at Compass Lexecon's and FTI's expense. The two did so in multiple ways, including by misappropriating FTI's trade secrets and confidential business information and by steering numerous Compass Lexecon clients, professionals, and business matters to Econic. These acts

severely damaged FTI and Compass Lexecon to the tune of hundreds of millions of dollars in lost revenue, clients, and employees and threaten ongoing harm to Plaintiffs' interests. The proposed Third Amended Complaint thus states additional claims against Mr. Orszag and adds Dr. Israel and Econic as defendants. It also adds Compass Lexecon LLC as a plaintiff based on its status as a contracting party and employer under the employment agreements breached by Dr. Israel.

In accordance with the modified scheduling order, ECF No. 126, which permits the parties to move to amend or join necessary parties through January 2, 2026, FTI seeks the Court's leave to file its proposed Third Amended Complaint. Good cause to amend exists based on facts and documents discovered by FTI as part of its ongoing investigation and discovery efforts in this case. Moreover, most of the alleged acts forming the basis for Plaintiffs' new claims, as described further below and alleged in the proposed pleading, had not yet occurred when the operative complaint was filed. As more fully set forth below, the amendment is supported by credible allegations and is not futile, and Mr. Orszag will not be prejudiced by a timely amendment consistent with the current Scheduling Order. No depositions have yet been conducted since the Court issued the Scheduling Order allowing for general discovery. Further, joinder of Compass Lexecon, Dr. Israel, and Econic is necessary to promote a just, efficient, and complete resolution of the parties' dispute.

I.  **BACKGROUND**

    A.  **Factual Background.**

FTI initially brought this action against Mr. Orszag on November 20, 2023, the day FTI terminated him for his sweeping efforts to undermine FTI and seize for himself Compass Lexecon's business through breaches of his fiduciary duty of loyalty and his contractual restrictive covenants. ECF No. 3. Upon further investigation after the filing of the original complaint, FTI uncovered additional information regarding Mr. Orszag's misconduct, who has since set up a competing firm, Econic, which he has used as a platform to raid hundreds of FTI's consulting

2

professionals and draw away dozens of its clients. Third Amended Complaint ("TAC"), ¶¶ 3-4. Mr. Orszag was in the midst of taking these actions when FTI filed its second amended complaint, with the Court's leave, on January 9, 2024. ECF No. 24-2. At the time, FTI thought it was only being attacked from the outside.

Unbeknownst to FTI, Dr. Mark Israel, who became President of Compass Lexecon in January 2024 and served in that role until March 31, 2025, worked from within to undermine FTI and Compass Lexecon. TAC, ¶ 5. At least as early as May 2024, Dr. Israel purloined FTI and Compass Lexecon's trade secret revenue information, whose distribution was confidential and strictly limited even within Compass Lexecon, and sent that information to Mr. Orszag on at least four occasions while Mr. Orszag was finalizing his efforts to launch Econic. *Id*. at ¶¶ 7, 125-127, 181. These restricted reports contained extensive aggregations of data about FTI and Compass Lexecon's professionals, clients, finances, and operations, which provided critical insight for Mr. Orszag to understand the latest trends about Compass Lexecon's revenues across the organization. *Id*. By accessing, sharing, using, and disclosing FTI's and Compass Lexecon's trade secrets and other confidential information, Mr. Orszag and Dr. Israel sought to advance Econic's interests and their personal interests over the interests of FTI and Compass Lexecon. *Id*. at ¶ 190.

In a perhaps even more egregious breach of trust, by November 2024, while continuing to serve as the President of Compass Lexecon, Dr. Israel had already agreed to accept an equity stake in Econic—valued by Mr. Orszag to be worth *tens of millions*. *Id*. at ¶ 6. Dr. Israel concealed this critical information from FTI's CEO and Compass Lexecon's Chairman, even as he negotiated a new contract with FTI and Compass Lexecon in December 2024. *Id.* at ¶¶ 128-132. In fact, after accepting this equity stake, Dr. Israel led his colleagues to believe that he was planning to scale back his consulting practice, engage in teaching, or become an independent contractor after his

term as Compass Lexecon's President ended. *Id.* at ¶ 133. Dr. Israel only revealed his true plan to join Econic when he announced his resignation as Compass Lexecon's President on March 31, 2025, and informed his colleagues by email that he would be joining Econic "as a Founding Partner and Member of the Board of Managers" the next day. *Id.* at ¶ 136. Had Dr. Israel informed FTI and Compass Lexecon's senior leaders that he had committed to join or accepted a financial interest in Econic, they would have immediately terminated his service as Compass Lexecon's President. *Id.* at ¶ 123.

Worse yet, while concealing his interest in Econic from senior leaders at FTI and Compass Lexecon, Dr. Israel actively worked with Mr. Orszag to undermine Compass Lexecon's business interests and advance the interests of Econic after that firm's public launch in February 2025. TAC, ¶ 138. In early February 2025, Dr. Israel informed Mr. Orszag that he viewed his "job" at Compass Lexecon as helping Compass Lexecon employees leave for Econic. *Id.* at ¶ 141. For example, Dr. Israel suggested to a Compass Lexecon professional that he should withhold billings for his time working for Compass Lexecon and instead bill that time to the client after joining Econic and transferring the matter to that firm. *Id.* Dr. Israel also aggressively steered business from Compass Lexecon to Econic on various occasions in February and March 2025, telling at least one of those clients "not [to] mention [to Compass Lexecon's Chairman] what you know of my plans vis-à-vis Econic." *Id.* at ¶ 142. Since joining Econic on April 1, 2025, Dr. Israel continues to violate his non-solicitation obligations, which remain in effect through March 31, 2026. *Id.* at ¶¶ 144-147.

Econic is vicariously liable for the tortious actions of its agents and co-conspirators—Dr. Israel and Mr. Orszag, who were both acting to advance Econic's interests while engaging in the misconduct at the heart of the proposed Third Amended Complaint. TAC, ¶ 1. Econic has thus been unjustly enriched. *Id.* at ¶¶ 230-233. It also is directly liable, along with Mr. Orszag, for

4

tortiously interfering with the contractual and fiduciary duties Dr. Israel owed to FTI and Compass Lexecon. *Id*. at ¶¶ 234-244.

These serious breaches of Mr. Orszag's and Dr. Israel's contractual and statutory duties, and unlawful actions by all three Defendants, have significantly harmed FTI and Compass Lexecon. Compass Lexecon has experienced a significant net loss in revenues from its top fifty clients, including multi-million-dollar losses in revenues from over a dozen of its largest clients since Econic's launch. Further, Compass Lexecon has lost well over a hundred professionals to Econic, and it has incurred higher expenses through retention costs and increased salaries due to Defendants' actions. *Id*. at ¶¶ 148-149. Recognizing the true building blocks of its business—its professionals and clients—FTI has been left with no choice other than to protect its business, employees, and clients by seeking to hold Mr. Orszag, Dr. Israel, and Econic accountable for their sweeping actions to raid Compass Lexecon's business for the benefit of Econic.

**B.     The Proposed Amendment.**

To obtain redress for this recently discovered activity—much of which post-dated FTI's current pleading—the proposed Third Amended Complaint (1) adds Dr. Israel and Econic as new defendants; (2) sets forth 10 additional counts against some or all defendants;[1] and (3) adds Compass Lexecon LLC as a plaintiff. Further, FTI has streamlined the existing allegations against Mr. Orszag while leaving intact all of its original claims against Mr. Orszag that have survived preliminary motions practice. The proposed Third Amended Complaint supplements and clarifies

---

[1] The additional claims are as follows: Count VI (Misappropriation of trade secrets in violation of the Defend Trade Secrets Act against Dr. Israel and Mr. Orszag), Count VII (Breach of confidentiality agreements against Dr. Israel and Mr. Orszag), Count VIII (Breach of the fiduciary duty of loyalty against Dr. Israel), Count IX (Breach of non-solicit provisions against Dr. Israel); Count X (Breach of non-compete provisions against Dr. Israel); Count XI (Fraud against Dr. Israel); Count XII (Unjust enrichment against Econic); Count XIII (Tortious interference against Mr. Orszag and Econic); Count XIV (Unfair competition against all defendants); Count XV (Civil conspiracy against all defendants).

certain facts and documents in further support of those claims, including based on evidence that FTI learned after the Second Amended Complaint was filed.

## II.     ARGUMENT

Federal Rule of Civil Procedure ("Rule") 15(a) provides that "the court should freely give leave [to amend] when justice so requires." *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002). The Fourth Circuit has directed trial courts "to liberally allow amendment," *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010), as such approach promotes the resolution of cases on their merits, *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) (reversing denial of motion). Thus, so long as "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. And leave should be denied "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Franks*, 313 F.3d at 193 (quotation marks and citation omitted).

With respect to the permissive joinder of parties, under Federal Rule of Civil Procedure 20(a)(1), persons "may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Similarly, under Rule 20(a)(2) persons "may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." In the court's exercise of its discretion to permit joinder, the Supreme Court has stated that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the

6

parties; joinder of claims, parties and remedies is strongly encouraged." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

>  A. **FTI's proposed amendment is not futile.**

A proposed amendment is not futile unless it is "clearly insufficient or frivolous on its face" or "if the [proposed amended] complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). But unless the amendment is clearly insufficient on its face, it is premature for the court to engage in the Rule 12(b)(6) analysis. *See Sulton v. Baltimore Cnty.*, Civ. No. SAG-18-2864, 2021 WL 82925, at *3 (D. Md. Jan. 11, 2021) (noting that requiring every plaintiff seeking leave to amend to demonstrate that the claims withstand a Rule 12(b)(6) motion would render superfluous the Fourth Circuit's definition of a futile claim and would be contrary to its well-established policy to liberally allow amendment); *Abuarqob v. Castro*, Civ. No. 24-3467-BAH, 2025 WL 3539203, at *6 (D. Md. Dec. 10, 2025) (Hurson, J.) (same).

Here, the proposed amendment is more than sufficient and thus plainly not futile. The new allegations and claims against Mr. Orszag, Dr. Israel, and Econic are serious, substantial, and grounded on detailed sources of evidence, including information obtained during preliminary discovery from Mr. Orszag and third parties, as well as through FTI's continuing investigation. The allegations in the proposed pleading also plausibly set out the statutory, common law, and contractual violations that have occurred.

For its claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"), against Mr. Orszag and Dr. Israel, FTI has identified at least four highly confidential and sensitive origination reports containing information about Compass Lexecon revenues earned over certain time periods in 2024 that Dr. Israel impermissibly shared with Mr. Orszag. The reports include confidential

7

information about fees by originator, details about total revenues for specific client-matters, and revenues earned by each expert for those matters. TAC, ¶ 181. This information, in the hands of a competitor, would allow the competitor to target recruitment and business development efforts based on extensive real-time information about the productivity and profitability of Compass Lexecon professionals, as well as the relative importance of key Compass Lexecon clients. Courts in this district have, accordingly, repeatedly found, such sensitive, confidential information to constitute a trade secret. *See Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 132 (D. Md. 2020) (holding that operating reports of retirement community properties were trade secrets where they included "year-to-date profitability of each Brightview community" and "[t]he value of this detailed information to a competitor looking to open a community in a same or similar geographical area is evident"); *Philips N. Am. LLC v. Hayes*, No. CV ELH-20-1409, 2020 WL 5407796, at *8 (D. Md. Sept. 9, 2020) (explaining that "business plans, pricing and cost information, and customers lists for companies operating in competitive sales industries derive independent economic value from their confidentiality"). FTI also took reasonable measures to maintain these reports as confidential, including restricting their distribution, and Mr. Orszag and Dr. Israel each signed confidentiality agreements. *See* TAC, ¶¶ 57, 195, 197; *Samuel Sherbrooke Corp. v. Mayer*, 159 F.4th 252, 257 (4th Cir. 2025) (noting that what may constitute "reasonable measures" to protect a trade secret must be considered in light of its nature and the context in which it exists, and that the existence of a confidentiality provision is sufficient to allege reasonable efforts to maintain secrecy).

As FTI has alleged, at the time Dr. Israel shared FTI's confidential information with Mr. Orszag, Mr. Orszag was an independent contractor in active litigation with FTI and seeking to start his own competing firm to take over Compass Lexecon. Dr. Israel thus had no appropriate business

8

purpose for sharing these trade secrets—and doing so could only have been for the improper and unlawful purpose of assisting Mr. Orszag build his competing venture, Econic, in which Dr. Israel had agreed to take a valuable ownership stake. *Brightview*, 441 F. Supp. 3d at 132 (holding that, when "employee . . . downloaded [trade secrets] for the purpose of furthering his own budding senior living community development venture, [employee] misappropriated those documents").

      Similarly, the breach of restrictive covenant claims, breach of fiduciary duty claim, and fraud claim against Dr. Israel are substantial and not futile. As to fraud, courts apply a relaxed pleading standard to fraud by omission cases, and FTI has alleged "'a baseline level of particularity' that rises above 'conclusory allegations of fraud.'" *Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 326–27 (D. Md. 2021) (citation omitted). Here, for example, FTI has alleged concrete factual allegations explaining how Dr. Israel, throughout late 2024 and until his resignation from Compass Lexecon on March 31, 2025 withheld from the leaders of FTI and Compass Lexecon his agreement to take a significant interest in Econic and his actions to steer Compass Lexecon's clients and professionals to Econic, all the while continuing to serve as Compass Lexecon's President—at the exact time that Mr. Orszag and Econic were raiding Compass Lexecon's clients and employees. Dr. Israel had a duty to disclose that information, and his failure to do so created an irreconcilable conflict of interest. *Insurance Co. of North America v. Miller*, 765 A.2d 587, 597 (Md. 2001) ("One of the primary obligations of an agent to his or her principal is to disclose any information the principal may reasonably want to know."). FTI would not have permitted Dr. Israel to remain in his role of President of Compass Lexecon had it known of his conflicted interest.

      The proposed amendment also catalogs Dr. Israel's extensive efforts to steer professionals and clients to Econic, all while serving as Compass Lexecon's President, and in plain violation of

9

his fiduciary duties and restrictive covenants. During that time, Dr. Israel took intentional steps to benefit Econic, causing significant harm to FTI and Compass Lexecon. For example, in February and March 2025, Dr. Israel steered and referred multiple clients and professionals to Econic, even going so far as to ask at least one client to conceal Dr. Israel's own plans from FTI and to ask at least one professional to hold his time on a Compass Lexecon client matter so that that time could be billed to the client after the professional had joined Econic. TAC, ¶¶ 141-143.

The proposed amendment thus alleges claims against Mr. Orszag, Dr. Israel, and Econic to obtain redress for the multiple ways in which they have violated their statutory and contractual duties, unlawfully conspired, unfairly competed, and were unjustly enriched. These detailed claims are not frivolous and are far from insufficient.

This Court also has subject matter jurisdiction over the action, as well as supplemental jurisdiction, based on the DTSA claims against Mr. Orszag and Dr. Israel. Similarly, the Court has personal jurisdiction over each defendant. Mr. Orszag has never challenged personal jurisdiction and cannot given the terms of his employment agreement. Dr. Israel is a Maryland resident. Econic, while an out of state defendant, is amenable to personal jurisdiction because of its acts taken through Dr. Israel, a Maryland resident, and Mr. Orszag (each subject to personal jurisdiction in Maryland), to harm FTI and Compass Lexecon, both Maryland companies.

> **B.     The proposed amendments will cause no prejudice to Mr. Orszag.**

The amendment is proposed in good faith to promote a just, efficient, and complete resolution of the dispute on the merits and not for any purpose of delay. The request for leave to file the proposed amendment is timely and in accordance with the Court's Modified Scheduling Order. *See* ECF No. 126. It will not prejudice Mr. Orszag, who is proceeding with document

discovery and depositions, nor will it prejudice the proposed new defendants.[2] As courts have explained, where, as here, a defendant is "from the outset made fully aware of the events giving rise to the action," allowing an amendment, even one that adds a new claim or legal theory, does not prejudice the defense. *Davis*, 615 F.2d at 613.

Here, Mr. Orszag was and has been fully aware of the events described in the proposed amendment. As discussed, FTI only recently discovered evidence of certain actions taken by Mr. Orszag and Dr. Israel, many of which took place after the second amended complaint was filed. In particular, FTI has only learned through recent discovery and further investigation about concerted efforts by Mr. Orszag, Dr. Israel, and Econic to unfairly compete with FTI and Compass Lexecon by misappropriating FTI's trade secrets and by leveraging Dr. Israel's role as President of Compass Lexecon in 2024 and early 2025 to undermine Compass Lexecon from within.[3]

Moreover, while prejudice may result where the addition of a new legal theory necessitates additional discovery, courts typically find that such prejudice exists only when an "amendment is offered shortly before or during trial." *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 118-19 (4th Cir. 2013). Absent such timing, any additional cost or burden to conduct additional discovery and prepare new defenses generally does not suffice to show prejudice. *See Crago v. Capital Advantage Finance and Develop. Inc.*, 242 F.R.D. 341, 347 (D.S.C. Jan. 3, 2007).

---

[2] As FTI recently informed Magistrate Judge Quereshi in correspondence and a recent discovery conference on December 18, 2025, FTI consents to Dr. Israel and Econic's participation in depositions starting in January and February, subject to a full reservation of their rights and defenses as part of anticipated motions practice on the pleading amendment.

[3] Under Fed. R. Civ. P. 15(d), a district court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." In the Fourth Circuit, Rule 15(d) motions to supplement a complaint are generally considered "[s]o useful . . . and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears." *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963); *see also Bethesda Ford, Inc. v. Ford Motor Co.*, 572 F. Supp. 623, 635 (D. Md. 1983). Because much of the Third Amended Complaint consists of allegations based on subsequent events, to the extent Rule 15(d) might apply to this Motion, that standard is readily met.

Here, the parties are still in the midst of document discovery and the proffered amendment is timely under the Court's schedule. At the time the current Scheduling Order was entered, Mr. Orszag understood that it may permit adding new parties (and consequently new claims) through January 2, 2026. Should the schedule be insufficient to conduct and complete additional discovery, that is easily remedied by modifying the scheduling order. *See Creekmore v. Truist Bank*, Civ. No. 2:24-cv-209, 2024 WL 4862983, at *5 (E.D. Va. Nov. 21, 2024) (finding that to the extent the proposed amendment would necessitate additional discovery, modifying the scheduling order would cure any prejudice). Allowing the amendment would thus not prejudice Mr. Orszag.

### C. Compass Lexecon, Mark Israel, and Econic Partners should be joined as parties.

"Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Aleman v. Chugach Support Servs. Inc.*, 485 F.3d 206, 218 n. 5 (4th Cir. 2007) (internal quotes omitted). That purpose is served by permitting the joinder of Compass Lexecon (as plaintiff), and Mark Israel and Econic Partners (as defendants). Because the claims brought by Compass Lexecon, and against Mark Israel and Econic Partners arise from the same transactions and occurrences as those involving FTI and Mr. Orszag, and there are questions of law and fact common to both plaintiffs and all three defendants, permissive joinder is proper. *See, e.g., Abuarqob*, 2025 WL 3539203, at *5 (granting joinder of two new plaintiffs who claimed to be victims of the same identity theft scheme alleged against defendants); *Jenkins v. Getachew*, Civ. No. 21-2364-BAH, 2024 WL 4711898, at *4 (D. Md. Nov. 7, 2024) (Hurson, J.) (granting joinder of three new defendants in the middle of the discovery period).

### III. CONCLUSION

For the foregoing reasons, this Court should grant FTI's Motion for Leave to File Third Amended Complaint.

Dated: January 2, 2026                               Respectfully submitted,

                                                                                    */s/ William J. Murphy*

William J. Murphy (Fed. Bar No. 00497)
Daniel P. Moylan (Fed. Bar No. 26476)
Sara Alpert Lawson (Fed. Bar No. 31011)
Kirk E. MacKinnon Morrow (Fed Bar No. 31703)
**ZUCKERMAN SPAEDER LLP**
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 949-1146 (office)
(410) 659-0436 (fax)
wmurphy@zuckerman.com
dmoylan@zuckerman.com
slawson@zuckerman.com
kmackinnonmorrow@zuckerman.com

Ivano Ventresca (Fed. Bar No. 30763)
2100 L Street NW, Suite 400
Washington, DC 20036
(202) 778-1800 (office)
(202) 822-8106 (fax)
iventresca@zuckerman.com

Amy E. Philip (*pro hac vice* pending)
485 Madison Avenue, 19th Floor
New York, NY 10022
(212) 704-9600 (office)
(212) 704-4256 (fax)
aphilip@zuckerman.com

*Counsel for FTI Consulting, Inc. & Steven Gunby*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2026, the foregoing document was filed in this matter through the Court's CM/ECF system, causing a copy to be served on all registered participants identified on the Notice of Electronic Filing.

          */s/ William J. Murphy*

William J. Murphy (Fed. Bar No. 00497)

*Counsel for Plaintiff and Counterclaim Defendant FTI Consulting, Inc. & Counterclaim Defendant Steven H. Gunby*