## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| FTI CONSULTING, INC., | |
| *Plaintiff*, | |
| v. | Case No. 8:23-cv-03200-BAH-AAQ |
| JONATHAN M. ORSZAG, | |
| *Defendant*. | |

JONATHAN M. ORSZAG,

        *Counterclaim Plaintiff*,

    v.

FTI CONSULTING, INC. AND
STEVEN H. GUNBY,

        *Counterclaim Defendants*.

## OPPOSITION TO FTI CONSULTING INC.'S
## MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ......................................................................................................................1

BACKGROUND ........................................................................................................................4

LEGAL STANDARD .................................................................................................................8

ARGUMENT ..............................................................................................................................9

      FTI's Proposed Amendment Is Unduly Delayed and Unfairly Prejudicial ........................9

      A.      FTI Unduly Delayed:  Parties and Claims Cannot Be Added Under
             Current Schedule; All "New" Allegations Were Known to FTI by
             No Later Than April 2025 ...........................................................................9

      B.      A Fourth Amendment of FTI's Complaint Would Unfairly
             Prejudice Orszag ......................................................................................14

CONCLUSION ..........................................................................................................................20

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946 (9th Cir. 2006) ..................12, 13

*Daulatzai v. Maryland*, 606 F. Supp. 3d 252 (D. Md. 2022), *aff'd*, 97 F.4th 166
    (4th Cir. 2024)...........................................................................................................12

*Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir. 1980)........................................20

*Deasy v. Hill*, 833 F.2d 38 (4th Cir. 1987) ....................................................8, 9, 14, 15

*E.I. DuPont De Nemours & Co. v. Kolon Corp.*, 2015 WL 11017999
    (E.D. Va. Jan. 30, 2015)............................................................................................18

*Elat v. Ngoubene*, 993 F. Supp. 2d 497 (D. Md. 2014) ...............................................17

*Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383 (10th Cir. 1987)...........................12

*First Nat'l Bank v. Master Auto Serv. Corp.*, 693 F.2d 308 (4th Cir. 1982) ................11

*Flowers v. Kia Motors Fin.*, 105 F.4th 939 (7th Cir. 2024)..........................................12

*Foman v. Davis*, 371 U.S. 178 (1962) ...........................................................................8

*Forstmann v. Culp*, 114 F.R.D. 83 (M.D.N.C. 1987) ...............................................9, 17

*Havtech, LLC v. AAON Inc.*, 2022 WL 2987076 (D. Md. July 28, 2022)......................8

*HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005 (4th Cir. 1996).....................9

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653 (9th Cir. 2020)..............18

*Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) ...........................................................17

*Layani v. Ouazana*, 2025 WL 1569965 (D. Md. June 3, 2025)....................................12

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922
    (4th Cir. 1995)..............................................................................................................8

*Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 4278352 (S.D.N.Y. June 8, 2018)....................17

*Nat'l Bank of Washington v. Pearson*, 863 F.2d 322 (4th Cir. 1988)................8, 16, 20

*NationsMart Corp. Sec. Litig.*, *In re*, 130 F.3d 309 (8th Cir. 1997)..............................12

*Nichols v. Dwyer*, 2022 WL 4587841 (E.D. Mich. Sept. 29, 2022) ........................8, 13

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502
(4th Cir. 1992) ................................................................................................16

*Pine Mt. Oil & Gas, Inc. v. Equit. Prod. Co.*, 446 F. Supp. 2d 643 (W.D. Va. 2006) ....................10

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081 (9th Cir. 2025)..................18

*Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945 (S.D.N.Y. 1983), *aff'd*,
730 F.2d 910 (2d Cir. 1984)............................................................................12

*Smith v. Angelone*, 111 F.3d 1126 (4th Cir. 1997) ...............................................15, 16

*Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222 (4th Cir. 2025) ........................................18

*Terran Biosciences, Inc. v. Compass Pathfinder Ltd.*, 2025 WL 1928014
(D. Md. July 11, 2025)......................................................................................16

**RULES**

Fed. R. Civ. P.:

Rule 4(d)(3) ................................................................................................3

Rule 12 ....................................................................................................3, 5

Rule 12(b)(2) ...........................................................................................16

Rule 12(b)(6)........................................................................................8, 16

Rule 15 ....................................................................................................5, 7

Rule 15(a) .................................................................................................8

**OTHER MATERIALS**

61A Am. Jur. 2d *Pleadings* § 664...........................................................................16

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
(3d ed. 2010) ........................................................................................10, 15

## INTRODUCTION

The Proposed Third Amended Complaint ("PTAC") is not an amendment.  It is an entirely new complaint.  It has 244 new or rewritten paragraphs.  It has 28 new claims.  It adds back a plaintiff that insisted on being dismissed (Compass Lexecon) and adds two new defendants.  And it expands the one-year time period at issue in the current case by more than a year.  Launching this new case at the last possible hour is a tactical effort by FTI Consulting, Inc. ("FTI") to prolong the litigation, all as part of its documented *business* strategy to use this litigation to impede competition.  After more than two years of litigation entirely about actions that occurred *prior* to November 20, 2023, Mr. Orszag is entitled to prompt resolution – not further delay.

In 2021, long before any of the events at issue in this litigation occurred, the President and CEO of FTI, Counterclaim Defendant Steven Gunby, told the Chairman of FTI subsidiary Compass Lexecon that, if star rainmaker Jonathan Orszag ever tried to leave Compass Lexecon, he, Gunby, would "bury [him] in litigation."  ECF No. 30-6.  True to his word, Gunby made good on that threat in November 2023, after it had become apparent that Orszag could not be persuaded to stay and further enrich FTI.  Recognizing that Orszag had the contractual right to resign and compete immediately, and that others were likely to follow of their own accord, Gunby and FTI concocted a bogus "Cause" termination and a baseless lawsuit (seeking to impose a one-year non-compete obligation applicable *only* upon valid termination for Cause).  This was all instituted for the express purpose of "██████████████" as a competitor.  FTI's claims that its actions were justified, and Orszag's counterclaims that FTI acted deliberately and in bad faith to impair his legal rights, have for the past two years been the issues in this case.

But FTI has been in no hurry to have these claims litigated to resolution.  FTI has twice amended its claims, causing delay, and has sought to keep this litigation going through an

extended discovery period – i.e., at a glacial pace, as a lingering cudgel to use against Orszag in

the marketplace.  The Court has rejected FTI's efforts to drag things out.  ECF Nos. 125, 126.

But now, almost 800 days after the litigation was first filed, and just as written discovery in that

case has substantially concluded, FTI attempts once more to prolong it, this time by seeking to:

- Double the number of parties – from three to six, including one party (Compass Lexecon) that had insisted on being dropped from FTI's meritless case and was then dropped, as its Chairman has testified, *see* 1/23/26 M. Hansen Decl.,[1] Ex. A, Fischel Dep. Tr. 119:18-22 ("At one point I heard that we were named as a plaintiff, and I think I said that you have to get rid of that, obviously we're not a party to suing Jon, we would never agree to sue Jon.");

- More than double the time period at issue, expanding the case focused on the year preceding November 20, 2023, by more than 18 months (to April 2025); and

- More than quadruple the number of asserted claims against defendants from 8 to 34,[2] including complex and thinly supported new theories of trade secret theft, fraud, and conspiracy.

The dramatically expanded number of words (from 9,706 to 13,789) and pages (from 35

to 51), and the wholesale revision of the substantive allegations, give the game up:  This is an

"amendment" in name only; it is really a new case.  In literally the last hours that FTI could even

attempt to make any changes to its already twice-amended case, it seeks to file a new action with

barely a nod to its original allegations (many of which it has discarded, as the redline

demonstrates, *see* ECF No. 177-2).  FTI did this for obvious tactical reasons:  to prevent the

current case from being resolved on schedule and to keep the cloud of litigation over the head of

a feared competitor in the market.  The new claims are based on information that FTI has had for

---

[1] Exhibits referenced herein are attached to the Declaration of Mark C. Hansen filed contemporaneously with the Opposition.

[2] The 34 claims are calculated by adding each claim by each proposed plaintiff against each proposed defendant in the PTAC.  Even performing an analysis of purely the number of counts listed, the PTAC removes 3 counts and adds 10 new counts, effectively doubling the number of counts.

more than a year, and they are based substantially on documents from FTI's own email system that could have been – and plainly were – reviewed many months if not years ago.

If this unfairly delayed, last-minute gambit is successful, FTI will, contrary to what it assured Magistrate Judge Quereshi, disrupt the orderly process order by the Court and severely prejudice Orszag.  One of two things will happen.  *First*, under the current case schedule, fact discovery will close on March 23, before dispositive motions can be heard and decided – indeed, before the parties will even have answered or otherwise pleaded in response.  If amendment is allowed, and defendants waive service, they will not even be required to respond to the complaint for 60 days – well *after* the March 23 close of discovery.  *See* ECF No. 126; Fed. R. Civ. P. 4(d)(3).  Injecting an entirely new case involving new parties and claims at a time when they cannot possibly be subjected to discovery is manifestly unfair to all the putative defendants, and to Orszag.

*Second*, and more likely, the amendment will blow up the current schedule, which the Court set only after resolution of the parties' Rule 12 motions.  *See* ECF Nos. 109, 126.  With any realistic accounting for this and ensuing motions, the case will not be ready for a restart of discovery until late summer and probably later than that.  This will cause Orszag substantial expense and a new set of allegations to contend with, as well as protracted delay in the resolution of this dispute – including the counterclaims that he has sought to litigate expeditiously.  FTI will, if this effort succeeds, obtain the protracted schedule the Court denied and continue to attempt to use the pendency of its meritless lawsuit outside the judicial arena as a competitive constraint – "███████████." Ex. B, FTI_000006382.

In short, this "amendment" is unduly and unfairly delayed, and if it is allowed Orszag will suffer unfair and substantial prejudice.  FTI has no legitimate reason why it waited as long

as it did – no new facts have been uncovered in recent months, and FTI cannot legitimately claim otherwise. FTI cites *no* case from this or any other district that has permitted such an amendment in these circumstances, and we are aware of none. The amendment should be denied, and the parties ordered to complete discovery in the pending case in accordance with the current schedule (which has already reached substantial completion of written discovery and requires the completion of *all* remaining fact discovery only two months from today, by March 23).

## **BACKGROUND**

After serious issues inflamed the relationship between FTI and its subsidiary (e.g., secret FTI agreements that prevented Compass Lexecon from working on important matters and evasive refusals to come clean about those questionable bargains), the Chairman of Compass Lexecon and many of its leading consultants threatened to resign. ECF No. 122 ¶ 6. In an attempt to avert that catastrophic outcome, Jonathan Orszag, a member of the four-person Compass Lexecon Executive Committee, sought to negotiate a restructuring of the FTI-Compass Lexecon relationship with FTI CEO Gunby. *Id.* ¶¶ 67-68; PTAC ¶¶ 97-100. He did so with support from the entire Executive Committee. *See* PTAC ¶ 103 (referring to "similar threats" made in 2022); ECF No. 18-4 (showing transmission of PowerPoint containing those "threats" made on behalf of "Mark, Jon, Jorge, and Dan").

As part of these efforts, Orszag was transparent with Gunby: if an acceptable restructuring could not be achieved, he would leave and others would likely follow, given the widespread dissatisfaction and the need for support personnel to stay connected to the star expert consultants who provided them with work. PTAC ¶¶ 100, 102. And as Orszag's contract permitted expressly, he could and would compete. ECF No. 122 ¶ 1; ECF No. 18-3, Employment Agreement § 17(c) ("For the sake of clarity, the parties agree that, unless Employee is terminated

for Cause per the terms of this Agreement, there will be no non-compete restrictions . . . applicable to him following the termination of his employment.").

FTI was not honest about its intentions in the "negotiations" that followed.  We now know that its Board of Directors flatly rejected any restructuring by no later than September 2023.  *See* PTAC ¶ 101.  Yet even after that Gunby continued to lead Orszag on, with promises of "transparency" and good-faith negotiation, through November 2023.  *See* ECF Nos. 18-5, 18-6.  Then, without notice or any effort to identify any basis for complaint with any of Orszag's actions, much less to give him any opportunity to "cure" any supposedly wrongful actions as required by their contract, FTI ambushed him on November 20, 2023, with a letter informing him that he had been terminated for incurable "cause" (purportedly imposing a one-year non-compete obligation) and a simultaneous lawsuit filed in state court, alleging that Orszag had improperly solicited Compass Lexecon employees and had acted contrary to his contractual and fiduciary duties to FTI.  *See* PTAC ¶ 106; ECF No. 1-1.

The filing in state court was a delaying tactic.  Orszag could and obviously would remove the case to federal court on diversity grounds, which FTI did not and could not contest.  ECF No. 1.  After removal, FTI delayed again by amending its complaint not once but twice, first on December 1, 2023, and then on June 18, 2024 – after the Court granted FTI's first Rule 15 motion over Orszag's objection.  *See* ECF Nos. 1-1, 7, 48.

On January 17, 2025, after resolution of Rule 12 motions, Orszag filed his answer, affirmative defenses, and counterclaims against FTI and Gunby.  *See* ECF Nos. 87, 88, 89.  FTI and Gunby moved to dismiss those claims.  *See* ECF No. 100.  In the middle of the April 2025 briefing on their motion, FTI sought to commence discovery seeking to "uncover evidence to support its existing claims against Mr. Orszag as well as grounds to add former employees of

Compass Lexecon as additional defendants in this action." ECF No. 104-1, at 3. But FTI went

a step further, setting out *the very same allegations* that it only now, nearly nine months later,

seeks to incorporate into its proposed complaint. *Compare id.* at 2 ("former employees of

Compass Lexecon – while still employed there – appear to have sent Mr. Orszag confidential

data concerning revenue generation by individual employees as well as internal appraisals of

employee performance"), *with* PTAC ¶ 181 ("Mr. Orszag and Dr. Israel improperly accessed,

shared, used, or disclosed, without permission, data aggregations showing extensive, detailed

information about Compass Lexecon's financial performance, personnel performance, and

client-matters").

 The Court denied FTI's motion and instructed that the Court's "general practice is to

refrain from entering a scheduling order [commencing discovery] until all defending parties have

answered the operative pleadings (including the complaint and any counter or crossclaim), which

necessarily requires waiting until after resolution of any motion to dismiss, including a motion to

dismiss a counterclaim." ECF No. 109, at 2. On July 24, 2025, the Court denied in part and

granted in part FTI and Gunby's motion to dismiss. *See* ECF Nos. 112, 113.

 On August 20, 2025, the Court issued a Scheduling Order aimed at expedient resolution

of the merits. *See* ECF No. 120 (ending fact discovery on January 2, 2026). FTI immediately

objected and sought a far lengthier schedule. *See* ECF No. 125 (FTI seeking end of fact

discovery on June 12, 2026; Orszag seeking to retain January 2, 2026, as the date for completion

of discovery). The Court issued a modified Schedule setting March 23, 2026, as the final day of

fact discovery. *See* ECF No. 126.

 Since the contested schedule was entered, the parties have undertaken extensive

discovery based on the claims and counterclaims in the existing case. The parties substantially

completed document production on January 23, 2026.[3]  More than 43 third parties have been

subpoenaed, and more than a dozen have produced or are in the process of producing documents.

On December 1, 2025, FTI informed Orszag that it intended to amend its complaint to

add new parties and new claims and indicated that it would file a Rule 15 motion "before the

holidays."  But FTI refused to tell Orszag (or the Court) whom it planned to add or what the new

claims would be.  FTI then pulled down all scheduled depositions and refused to schedule any

additional depositions until some unknown future point in time.  Orszag's counsel protested and

sought relief from Magistrate Judge Quereshi.  When FTI filed its brief in that dispute on

December 12, it finally revealed that it actually intended to seek leave to add Mark Israel as a

party and to add undisclosed new claims against Orszag as well.  FTI continued to hide the

ball as to whether it planned to add Econic as a third party.  *See* Ex. C, 12/18/25 Disc. Hr'g

Tr. 28:9-18 ("The only defendant we have determined to add in the proposed amendment is

Dr. Israel. . . .   I'm not suggesting that somebody else will be added. . . .  So I don't want to

suggest that anyone else will be added.").

At the discovery hearing on that dispute on December 18, 2025, Magistrate Judge

Quereshi ordered that all the FTI-postponed depositions be completed between January 5 and

February 12, 2026.  *See* ECF No. 162.  FTI represented, in response to the Court's questions, that

no matter what its planned third amended complaint would contain, "[i]t would not be a basis to

change anything" in the schedule.  12/18/25 Disc. Hr'g Tr. 28:22-23.  Indeed, FTI reassured

---

[3] To date, Orszag has served 23 (of the available 25) document requests, 11
interrogatories, and 43 third-party subpoenas.  FTI has likewise served 18 document requests, 23
(of the available 25) interrogatories, and 11 third-party subpoenas.  Both sides have produced
thousands of documents, and third parties have also produced documents in response to the
parties' subpoenas.  The parties' interrogatories have been negotiated (and at times litigated)
extensively, with both sides serving many rounds of responses and amended responses.

Magistrate Judge Quereshi that FTI's proposal would "leave[ ] ample time in discovery under the current schedule." *Id.* at 31:25-32:1.

On January 2, 2026, the very last day on which leave for any amendment could be sought, and nearly a year after learning the information that supposedly provides the basis for its new allegations, FTI filed the instant motion seeking to transform and protract this case, making clear that it had been far from honest with the Court.

## **LEGAL STANDARD**

A motion to amend under Rule 15(a) "may be denied when it has been unduly delayed and when allowing [the amendment] would prejudice the nonmovant." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 941 (4th Cir. 1995). Critical factors to consider here are "undue delay, bad faith or dilatory motive on the part of the movant, . . . [and] undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) ("A motion to amend under Rule 15(a) may be denied where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant."); *Nat'l Bank of Washington v. Pearson*, 863 F.2d 322, 327-28 (4th Cir. 1988) (denying motion to amend due to undue delay, prejudice, and bad faith); *Nichols v. Dwyer*, 2022 WL 4587841, at *5 (E.D. Mich. Sept. 29, 2022) (undue delay and "lack of due diligence" in investigating potential new claims supported denial of leave to amend).[4]

---

[4] The PTAC is defective in numerous respects, and Orszag reserves all rights under Federal Rule of Civil Procedure 12(b)(6) to move to dismiss if amendment is permitted. *See*, *e.g.*, *Havtech, LLC v. AAON Inc.*, 2022 WL 2987076, at *4 (D. Md. July 28, 2022). This is the procedure the Court followed with FTI's Second Amended Complaint. *See* ECF Nos. 47 (granting leave to file Second Amended Complaint), 52 (Orszag's Motion To Dismiss Second Amended Complaint).

## ARGUMENT

### FTI's Proposed Amendment Is Unduly Delayed and Unfairly Prejudicial

FTI's motion should be denied because FTI unduly delayed in seeking leave to amend and because Orszag will be unfairly prejudiced by that delay and the rewriting of the case just as discovery is set to close. *See Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (denial is appropriate where there is undue delay and prejudice); *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996) ("Delay . . . can be a sufficient reason for denial of leave when accompanied by . . . prejudice to the non-movant.").

**A.     FTI Unduly Delayed:  Parties and Claims Cannot Be Added Under Current Schedule; All "New" Allegations Were Known to FTI by No Later Than April 2025**

The delay here is undue for two related but independently sufficient reasons.  First, it comes at a time when it would add numerous parties and claims to the case after the close of fact discovery.  Second, the amendment is based on information known to FTI for many months, if not years, and comes largely from documents on FTI's *own computer system* that were always available to it.

*1.     The amendment comes too late.*  FTI has already been permitted to amend *twice*. Its prior amendments modified its claims but did not expand the case dramatically.  The case has proceeded to (and substantially through) discovery.  Discovery will close before all parties are before the Court if amendment is permitted.[5]  That alone establishes that the amendment comes too late.  *See Forstmann v. Culp*, 114 F.R.D. 83, 87 (M.D.N.C. 1987) ("[D]efendant will be substantially prejudiced if the court grants leave to amend.  Discovery in this action is now

---

[5] If amendment were to be allowed *today* (January 23), and defendants were to *immediately* agree to waive service, no responsive pleading would be due until March 23 – the date discovery in this case closes.  Amendment cannot be allowed to add an entirely new case against new parties that cannot be tested in discovery.  FTI cites no court that has allowed this.

closed."); *Pine Mt. Oil & Gas, Inc. v. Equit. Prod. Co.*, 446 F. Supp. 2d 643, 649-51 (W.D. Va. 2006) (denying leave for prejudicial and undue delay).

> **2.    The amendment was not sought when FTI became aware of the supposed factual bases for amendment.**    It is black-letter law that a party seeking to amend to add claims to an existing case should act as soon as it becomes aware of the need for amendment. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1488, at 764 (3d ed. 2010) ("Wright & Miller") (collecting cases) ("[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent.  A party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time.").

This case has been pending since November 20, 2023 – for more than two years.  The "facts" that supposedly undergird the last-minute amendment are *not* newly discovered.  FTI has known of them for months if not years.  *See* Ex. D (alleged source for FTI claims and date FTI had that information).  What is particularly telling is that most if not nearly all of the information supposedly warranting amendment comes from FTI's own files or from witnesses within FTI's control.  The proposed new trade secrets and confidential information claims, for example, are based on email communications between Orszag and Israel *found on FTI's email server*, some from as early as May 2024 (20 months ago) and the most recent from October 2024 (15 months ago)*.

FTI alleges that Orszag and Israel were communicating – when both were Compass Lexecon employees or contractors – about revenue generation by Compass Lexecon professionals.  *See* PTAC ¶¶ 181-182.  They were communicating in that capacity in the late spring and through fall 2024, regarding a dispute within the firm about credit for revenue

generation, and they were doing so on the company server – which FTI was indisputably monitoring throughout the relevant period, as it has admitted in a recent discovery dispute.[6] *See* ECF No. 187, at 1-2 (admitting that FTI began "reviewing Mr. Orszag's emails stored on FTI's server" immediately after it terminated Orszag's employment in November 2023).

FTI has known of these communications for more than a year, and FTI referenced these exact claimed facts and the potential for new claims based on them in an April 2025 filing. *See* ECF No. 104-1, at 2-3 (foreshadowing claims that "former employees of Compass Lexecon – while still employed there – appear to have sent Mr. Orszag confidential data concerning revenue generation by individual employees as well as internal appraisals of employee performance"). FTI has no explanation for why it did not seek to amend its claims shortly after it became aware of this supposedly wrongful conduct more than a year ago – before the Court had adopted any schedule.

What is apparent is that FTI chose for tactical reasons to delay amendment until a time when it would be impossible to conduct discovery on the dramatically expanded allegations under the existing case schedule. Leave for an amendment seeking to add these parties and claims could and should have been sought many months ago but was not. Even then, the timeliness would have been an issue given the late stage of the case. But an amendment now, when adding new parties and claims cannot be accommodated by the case schedule, is obviously untimely. In these circumstances, courts in this circuit and elsewhere deny leave to amend. *See First Nat'l Bank v. Master Auto Serv. Corp.*, 693 F.2d 308, 314 (4th Cir. 1982) (affirming denial of motion for leave to amend because it was "a tactic to gain an unnecessary continuance and to

---

[6] FTI generally reviewed the emails on its server with some regularity, at least as it applies to this litigation, because – at a minimum – FTI referenced emails from fall 2024 in a spring 2025 filing. *See* ECF No. 104-1, at 2-3.

reopen discovery" and plaintiff "had not obtained any information that it previously had not known of or had access to"); *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) ("[C]ourts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend.").

Courts in this district have held that a "three-month delay" between a party learning of the need to alter its pleading and seeking leave to amend amounts to undue delay.  *See Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 261-62 (D. Md. 2022), *aff'd*, 97 F.4th 166 (4th Cir. 2024); *see also Layani v. Ouazana*, 2025 WL 1569965, at *3 (D. Md. June 3, 2025) (denying leave to amend where plaintiffs "offer no good cause why they could not have acted diligently to attempt to amend the complaint when they learned about the destroyed records in November, 2024, instead of waiting until May, 2025").  And other federal courts have held that an eight-to-ten-month delay from the time obtaining a fact and the motion to amend is presumptively unreasonable.  *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("[A]n eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable."); *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 944-45 (7th Cir. 2024) (eight months); *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 322-23 (8th Cir. 1997) (ten months); *see also*, *e.g.*, *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 952 (S.D.N.Y. 1983) (when "a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay"), *aff'd*, 730 F.2d 910 (2d Cir. 1984) (per curiam) (cleaned up).

Even giving FTI the most generous possible reading of the record, it knew of its claims by April 2025 *at the very latest*, yet waited an additional *nine months* to seek leave to amend. That is just too late.[7]

There is no merit to FTI's claim (at 2, 10) that all it needed to do was comply with the "no later than" deadline of the Scheduling Order.  Even when a motion for leave to amend is filed within the deadlines set in a Rule 16 scheduling order, that does not make the motion timely. *See AmerisourceBergen*, 465 F.3d at 953 ("In assessing timeliness, we do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order.  Rather, in evaluating undue delay, we also inquire whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." (cleaned up)).

FTI suggests (at 11 n.2) that amendment presents no issue because it posits that all parties (and not-yet parties) will simply agree to conduct and complete all necessary discovery, *immediately*, on scores of new and untested claims that are not in the case and may never be in the case.  That is a fantasy.  The putative defendants have not even answered a complaint, have not been heard on their challenges to the complaint or to the Court's jurisdiction, and have not participated in or had any access to document discovery.  FTI's notion that Israel and Econic would forgo their rights and sprint headlong into ongoing depositions – after written discovery

---

[7] FTI's suggestion (at 11) that it only "recently" learned of the evidence of the core facts supporting its proposed new claims is belied by the facts.  Exhibit D presents a table of the new theories advanced by FTI and when each fact was known to FTI.  Moreover, to the extent FTI only learned of information recently that has always been in its possession – i.e., witness interviews, documents on its servers – it cannot excuse its undue delay by citing its own failure to conduct a reasonable investigation.  *See Nichols v. Dwyer*, 2022 WL 4587841, at *5 (E.D. Mich. Sept. 29, 2022) (undue delay and "lack of due diligence" in investigating potential new claims supported denial of leave to amend).  FTI has had two years to interview witnesses and monitor emails in its possession.

has closed without their participation – is simply unrealistic and disregards the proposed new defendants' due process rights.[8]

If amendment is allowed, therefore, a new schedule – a do-over in substance – will be required. Which makes it pellucid that FTI has delayed unduly in seeking this amendment for tactical reasons, to stretch this case out into the distant future.

FTI's argument (at 11) that Orszag was "fully aware of the events" set out in the PTAC is neither accurate nor relevant. FTI's hints did not require Orszag to radically restructure his case plan to accommodate spectral possibilities. *See Deasy*, 833 F.2d at 41 ("Hinting at a claim in an expert witness statement leaves the opposing party guessing at one's real intentions. . . . [D]efendant could quite sensibly have decided not to commit her resources to a shadowy claim that plaintiff may or may not have been serious about raising."). Orszag could not have been expected to shadowbox FTI's potential new claims throughout discovery to date on the theory that one day FTI might amend to add possible new claims or parties.

## B.    A Fourth Amendment of FTI's Complaint Would Unfairly Prejudice Orszag

The last-minute proposed amendment would unfairly prejudice Orszag for two independent but related reasons, even if the schedule were to be redone to permit discovery into the welter of new parties and claims. First, it would dramatically expand the case, requiring him to spend substantial sums and great effort to address these expansive new issues. Second, it would inevitably and substantially delay the day of reckoning for FTI and Gunby that Orszag has sought, with expedition, since the case was filed more than two years ago.

*1.    Amendment would dramatically expand this case.* The existing case presents claims (and counterclaims) between FTI and Orszag during the year that preceded his ambush

---

[8] And 60 days would in any event be inadequate for discovery on the multiplicity of parties and claims that FTI is seeking to inject into the case.

firing. The proposed amendment adds a new plaintiff Compass Lexecon (which previously demanded to be dropped from the case), two new defendants, and 28 new claims. It focuses primarily on Israel and his actions in 2024 and 2025 and also makes allegations against the firm that Orszag helped to found and launch in February 2025 (Econic). It injects complex new claims such as civil conspiracy and federal trade secret violations. *See* PTAC ¶¶ 179-195 (Count VI), 251-255 (Count XV).

These are "belated claims" that – if permitted – would "change the character of [the] litigation"; amendment to add such claims "are not favored." *Deasy*, 833 F.2d at 42 (denying belated amendment under similar circumstances); s*ee Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997) (affirming denial of leave to amend where the new claims "would have required the State to argue a whole new set of claims, based on completely new theories"); 6 Wright & Miller § 1487, at 716-20 (if an amendment "is proposed late enough" and requires the opponent "to engage in significant new preparation" or results in the "added expense and the burden of a more complicated and lengthy trial," prejudice may be established).

    **2.**    ***Amendment would delay resolution of the existing case for years.*** If amendment is allowed and the claims survive, Orszag (and Israel and Econic) cannot possibly complete (or, for Israel and Econic, even start) discovery on the current schedule. *See supra* p. 9 n.5. Orszag has sought from the start of this litigation expeditiously to clear his name and obtain relief on his counterclaims. Granting the amendment would preclude this.

FTI does not grapple with what would necessarily have to occur if amendment is allowed: once all parties appear, once dispositive motions have been filed, briefed, and ruled upon, the Court would need to enter an entirely new discovery schedule – a restart or redo – pushing the case far out into the future. If the Court were to rule on amendment the day after

FTI files its reply brief (February 6), defendants would not be required to respond until 60 days

later (April 6).  Assuming, as is almost certain, the defendants would challenge the allegations as

deficient under Rule 12(b)(6) and (for Econic) Rule 12(b)(2), briefing on their motions would

likely be completed no earlier than June, and the Court's ruling could come any time after that.

Assuming, as is also likely, that defendants would file counterclaims after any ruling upholding

some or all of FTI's amended case, FTI would likely move to dismiss some or all of those.

Briefing and decision on that motion would likely kick the can down the road into late fall 2026

or even 2027 – and only *then* would discovery start under the Court's stated practice of requiring

all parties and claims to be present before issuing a scheduling order.  *See* ECF No. 109, at 2

("It is the undersigned's general practice . . . to refrain from entering a scheduling order until all

defending parties have answered the operative pleadings (including the complaint and any

counter or crossclaim), which necessarily requires waiting until after resolution of any motion to

dismiss, including a motion to dismiss a counterclaim.").

    The necessary and sweeping restart of discovery would cause substantial prejudice.

*See Smith*, 111 F.3d at 1134 (affirming denial of leave to amend where "[t]he district court

certainly would have had to schedule another hearing, and perhaps order more discovery"); *Nat'l

Bank of Washington v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988) (affirming denial of leave to

amend as "it would have been manifestly unfair to make Pearson . . . conduct discovery a second

time in order to meet NBW's newly asserted defense"); *Terran Biosciences, Inc. v. Compass

Pathfinder Ltd.*, 2025 WL 1928014, at *10 (D. Md. July 11, 2025) ("A court may find undue

prejudice sufficient to justify denying leave to amend if a new claim or defense would . . .

'significantly delay the resolution of the dispute'" (quoting 61A Am. Jur. 2d *Pleadings* § 664));

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 506 (4th Cir.

1992) ("Although Rule 15(a) indicates that leave to amend should be freely given when justice so requires, the rule does not afford plaintiffs a tool to engage in the litigation of cases one theory at a time." (cleaned up)).

FTI's argument (at 11) that only amendments sought on the eve of trial can be prejudicial finds no support in the case law. The Fourth Circuit has broadly ratified the commonsense view that, the further a case has progressed, the more prejudice will be suffered by allowing amendment. *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc) ("A moment's reflection reveals . . . that the further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant or that a court will find bad faith on the plaintiff's part."). Courts will consider whether "significant discovery" has been conducted and whether the new claims will require additional discovery in determining whether an amendment would be prejudicial. *Id.* at 428; *see also Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014) (directing courts to "take into account the stage of the proceedings, such as whether the parties have completed discovery" (cleaned up)).

Both elements are present here – significant discovery has been undertaken and will have been completed before any responsive pleading has been filed by the defendants. And FTI's proposed pleading would obviously require extensive additional discovery. *See Forstmann*, 114 F.R.D. at 87 ("[D]efendant will be substantially prejudiced if the court grants leave to amend. Discovery in this action is now closed."); *Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018) ("The degree of potential prejudice a motion to amend may cause is evaluated against the overall progress of the litigation: the closer to the end of

discovery or the closer to trial a motion to amend is filed, the more likely that it will cause prejudice and delay to the nonmoving party.").[9]

Allowing the proposed amendment (actually a new case and not a mere amendment) at this point would only divert the case into complicated, expensive side-shows likely to result in a return to the parties and claims now before the Court. FTI fails to address the fact that Israel may seek to compel arbitration of any FTI claims against him, and, if he chooses to do so, that would inject the need for further motion practice and, of course, the delay FTI improperly seeks. If he chooses *not* to do so, his presence in the case destroys complete diversity (he and FTI are Maryland residents). The afterthought federal trade secret claim, which FTI wisely chose not to make before – even when it claimed that its purported confidential information had been misappropriated – is unsupported by any of the necessary facts and is likely to be dismissed, such that there would be no subject-matter jurisdiction over the remaining state-law claims against Israel. Econic – just incorporated in November 2024 and opened for business in early 2025 – does not do business in Maryland and will presumably contend that it is not subject to

---

[9] The asserted trade secret claim alone dramatically expands the case. The burden of litigating a federal trade secrets case is fundamentally different – and enormously more burdensome – than a state-law contract and tort case (which this case has been for the past two years). *See*, *e.g.*, *E.I. DuPont De Nemours & Co. v. Kolon Corp.*, 2015 WL 11017999, at *3 (E.D. Va. Jan. 30, 2015) (describing "multimillion dollar" spend in litigating trade secrets claim); *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 230 (4th Cir. 2025) (describing trade secrets claims as "the type of claim that has the potential to seriously disrupt ordinary business relationships"). Trade secrets cases nearly always require specific expert testimony, intrusive third-party discovery, and mountains of written discovery. *Cf. Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1088 (9th Cir. 2025) ("[F]or both sides, the conventional order of pleadings, initial disclosures, and first-round discovery may not be enough to set the stage for future factual development of a trade-secret claim."). Even the identification of the trade secrets at issue – the threshold step – is a time-intensive, iterative process. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) (describing trade secrets identification as "an iterative process" where parties "refine[ ]" trade secrets claims through discovery).

personal jurisdiction there, leading to further complication and delay.  These complexities are further support for *not* transforming the pending case into something very different as it closes in on the completion of discovery on the claims that the Court has permitted to proceed.

*          *          *

While the Court need not make a finding of bad faith here, the record nonetheless supports one.  FTI conducts its business by a playbook that uses (abuses) the judicial system in efforts to stymie competition.  On no fewer than nine recent occasions FTI has sought to cripple competition from employees who sought to leave for better opportunities.[10]  The mere existence of the case serves that wrongful purpose.  FTI regularly (and improperly) sends the message to clients and employees that they should steer clear of Orszag and Econic because of "litigation risk" that makes any association with them perilous.

Discovery has revealed Defendant Gunby planned as early as the fall of 2023 to make "███████" any separation by Orszag, and FTI openly discussed ██████████████████████ ███████████████████████████████.  Ex. E, FTI_000027783.  One FTI executive made the ominous threat that the litigation could have "█████████████████████████████████." *Id.* Internal discussions focus on using the litigation to "████████████" and attempts to "██████ ███████████████████████████████" using the "████████████████" as a scare tactic.

_____

[10] Since 2010, FTI has sued at least nine different employees in the United States – in addition to Orszag – for leaving FTI to work for competitors.  *See*, *e.g.*, *FTI Consulting, Inc. v. Westerman*, No. 1:24-cv-01055 (D.D.C. Apr. 12, 2024); *FTI Consulting, Inc. v. Poer*, No. 1:24-cv-02035 (D.D.C. July 12, 2024); *FTI Consulting, Inc. v. Gamble*, No. 24-C-19-2857 (Md. Cir. Ct. May 14, 2019); *FTI LLC v. Berkeley Res. Grp.*, No. 16-15363CA01 (Fla. Cir. Ct. Miami-Dade Cnty. June 23, 2016); *FTI LLC v. Duffy*, No. 1684CV03176 (Mass. Super. Ct. Oct. 17, 2016); *FTI Consulting, Inc. v. Rinaudo*, No. 2015/653886 (N.Y. Sup. Ct. Dec. 22, 2015); *FTI LLC v. Flynn*, No. 2015/653109 (N.Y. Sup. Ct. 2015); *FTI LLC v. Holder*, No. 2015-CA-4598-B (D.C. Super. Ct. June 23, 2015); *FTI Consulting, Inc. v. Sloane*, No. 2013/651368 (N.Y. Sup. Ct. Apr. 16, 2013).

*See* Ex. F, FTI_000006255; Ex. G, FTI_000006308; Ex. H, FTI_000008558.  FTI persisted with

this strategy even when subordinates questioned whether ████████████████████████████

████████████████████.”  Ex. I, FTI_000025486.  At one recent deposition, a Compass

Lexecon executive admitted FTI's corporate strategy: to slow down Econic and Orszag.  *See* Ex.

J, Coppi Dep. Tr. 83:10-17 (agreeing that he, a co-lead of Compass Lexecon Europe, “████████

████████████████████████████████████████████████████████████████

███████████████████████”).  FTI is using this litigation in furtherance of that

strategy.  FTI has even gone so far as to send legal filings to the press before filing them with the

Court, leveraging this litigation to attack Econic for public relations purposes.

This is all part of the "litigation strategy" to "bury" Orszag (and now Israel and Econic)

in litigation instead of competing.  *See* ECF No. 30-6 (Apr. 22, 2021 email).  That is bad faith.

*See also Pearson*, 863 F.2d at 328 ("'design by dilatoriness to harass the opponent'" serves as

grounds for denial of motion for leave to amend (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d

606, 613 (4th Cir. 1980))); ECF No. 30-7 (December 2022 email confirming threat of litigation);

ECF No. 30-8 (October 7, 2023 email indicating that FTI reiterated to other Compass Lexecon

employees that it intended to sue Orszag if he ever left the company and started a new venture);

Ex. K, FTI_000007395 (████████████████████████████████████).

## CONCLUSION

For all these reasons, the Court should deny the motion for leave to amend.

DATED:  January 23, 2026                    Respectfully submitted,

                                        By:   */s/ Mark C. Hansen*_____

                                              Mark C. Hansen (State Bar No. 12266)
                                              James M. Webster, III (State Bar No. 23376)
                                              David L. Schwarz (admitted *pro hac vice*)
                                              Lillian V. Smith (admitted *pro hac vice*)
                                              Kevin D. Horvitz (admitted *pro hac vice*)
                                              Collin R. White (admitted *pro hac vice*)
                                              Rachel Anderson DeLisle (admitted *pro hac vice*)
                                              Brenna L. Darling (admitted *pro hac vice*)
                                              Alexander N. Gosanko (admitted *pro hac vice*)
                                              Caroline Shoaibi (admitted *pro hac vice*)
                                              KELLOGG, HANSEN, TODD,
                                                FIGEL & FREDERICK, P.L.L.C.
                                              1615 M Street, N.W., Suite 400
                                              Washington, D.C. 20036
                                              Tel.: (202) 326-7900
                                              Fax: (202) 326-7999
                                              Email: mhansen@kellogghansen.com
                                              Email: jwebster@kellogghansen.com
                                              Email: dschwarz@kellogghansen.com
                                              Email: lsmith@kellogghansen.com
                                              Email: khorvitz@kellogghansen.com
                                              Email: cwhite@kellogghansen.com
                                              Email: rdelisle@kellogghansen.com
                                              Email: bdarling@kellogghansen.com
                                              Email: agosanko@kellogghansen.com
                                              Email: cshoaibi@kellogghansen.com

                                              *Counsel for Defendant and*
                                              *Counterclaim Plaintiff Jonathan M. Orszag*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 23, 2026, the foregoing document was filed in this matter through the Court's CM/ECF system, causing a copy to be served on all registered participants identified on the Notice of Electronic Filing.

*/s/ Mark C. Hansen*
Mark C. Hansen

KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.

*Counsel for Defendant and*
*Counterclaim Plaintiff Jonathan M. Orszag*
